**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IBM CORPORATION, | ) |
| | ) |
| Plaintiff. | ) |
| | )   Case No. 7:22-cv-09910-VB |
| v. | ) |
| | ) |
| MICRO FOCUS INTERNATIONAL PLC | ) |
| and MICRO FOCUS (US), INC. | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT MICRO FOCUS (US), INC.'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO DISQUALIFY KIRKLAND & ELLIS AS PLAINTIFF'S
COUNSEL**

# TABLE OF CONTENTS

I. Introduction ................................................................................................................1

II. Nature and Stage of Proceedings ...............................................................................3

III. Statement of the Facts ................................................................................................3
    A.    Kirkland Represents Micro Focus .................................................................3

    B.    Kirkland Provides Counsel to Micro Focus on Finance and IP-Related Matters and Has Access to Micro Focus's Confidential Business Information Relevant to the Present Litigation ................................5

    C.    Micro Focus Never Consented to Kirkland Representing IBM in this Litigation ................................................................................................9

IV. Argument ..................................................................................................................10
    A.    Micro Focus and IBM are Both Current Clients of Kirkland .....................10

    B.    Kirkland Should be Disqualified Due to its Violation of the Ethical Rules ............................................................................................................11

V. Conclusion ................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*First NBC Bank v. Murex, LLC*, 259 F. Supp. 3d 38 (S.D.N.Y. 2017) .................................. passim

*GSI Commerce Sols., Inc. v. BabyCenter, LLC*, 618 F.3d 204 (2d Cir. 2010) .............................. 11

*IBM Corp. v. Levin*, 579 F.2d 271 (3d Cir. 1978) ................................................................. 10, 12

*Kabi Pharmacia AB v. Alcon Surgical, Inc.*, 803 F. Supp. 957 (D. Del. 1992) ........................... 15

*Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201 (S.D.N.Y. 2009) ........................ 11, 14

*Parallel Iron, LLC v. Adobe Sys. Inc.*, No. 12-874-RGA, 2013 WL 789207 (D. Del. Mar. 4, 2013) .................................................................................................................................... 11

*Stratagem Dev. Corp. v. Heron Int'l N.V.*, 756 F. Supp. 789 (S.D.N.Y. 1991) ........................... 10

*United States v. Miller*, 624 F.2d 1198 (3d Cir. 1980) ................................................................. 11

**Rules**

Delaware Lawyers' Rules of Professional Conduct 1.7 ................................................. 1, 2, 9, 10

New York State Rule of Professional Conduct 1.7 ........................................................ 1, 2, 9, 10

I.      INTRODUCTION

Defendant Micro Focus (US), Inc. ("Micro Focus US"), by and through its attorneys, brings this motion to disqualify the Kirkland & Ellis LLP law firm ("Kirkland") from representing Plaintiff IBM Corporation ("IBM") in this matter.

Kirkland filed this copyright and breach of technology license agreement litigation against Micro Focus US and Micro Focus International Plc[1] ("Micro Focus Plc") (collectively, "Micro Focus"), relating to allegations that Micro Focus US's software makes improper use of IBM's intellectual property ("IP"). However, Kirkland is currently acting as Micro Focus US's counsel that advises it on a variety of issues—including such matters as Micro Focus US's IP-related transactions and agreements secured by IP, financial matters such as debt transactions (including those secured by IP), and the single most important event presently occurring at Micro Focus, its pending sale to Open Text Corporation.[2] Declaration of Christopher Swiss in Support of Defendant Micro Focus (US), Inc.'s Motion to Disqualify Kirkland & Ellis as Plaintiff's Counsel ("Swiss Decl.") at ¶¶ 14, 19-20. Indeed, with the OpenText transaction scheduled to close in the coming months, Micro Focus finds itself needing to consult with Kirkland – the very law firm suing it in this case – to discuss ongoing legal advice it has received from Kirkland. *Id.* at ¶ 22. This conflict of interest is no mere technicality. This is a grave and unjustifiable ethical violation.

The Delaware Lawyers' Rules of Professional Conduct ("DLRPC"), the New York State Rule of Professional Conduct 1.7 ("NYRPC"), and the American Bar Association Model Rules

---

[1] Micro Focus International Plc is making a limited appearance in this action to challenge personal jurisdiction.

[2] Certain information cited herein comes from confidential and/or privileged documents. Examples include the retainer agreement between Kirkland and Micro Focus, and the invoices sent by Kirkland to Micro Focus. Should the Court find it useful in deciding this motion, Micro Focus can provide these documents to the Court under seal or *in camera*.

of Professional Conduct all forbid Kirkland from being directly adverse to its client without such knowing consent.[3] In such circumstances, disqualification should be granted without movant needing to make any showing of prejudice. But make no mistake, Kirkland's conflict of interest does prejudice Micro Focus US. Micro Focus is litigating a technology-related IP case against a law firm that has been advising it on technology-related IP transactions. The value of certain technology and IP will be an issue in this litigation. The attorneys whom Micro Focus relies on for advice relating to transfers of IP and the use of agreements secured by IP for financings are at Kirkland.  Kirkland has been performing such work for Micro Focus throughout 2022, including as recently as August when it corresponded with Micro Focus regarding an IP-related security package. *Id.* at ¶ 18. The harm Kirkland's conflict of interest creates cannot be understated.

Moreover, as publicly available news reports indicate—and as Micro Focus believes is the impetus for this litigation—on August 25, 2022, Micro Focus announced that it had reached an agreement to sell itself to a subsidiary of Open Text Corporation (a transaction that has not yet closed). The resulting company, in the words of OpenText's press release, will be "one of the world's largest software and cloud businesses with a tremendous marquee customer base, global scale and comprehensive go-to-market"—in other words, a serious competitor to IBM. In the run up to this major event, Micro Focus has needed to consult with its long-standing debt and credit

---

[3] The retainer agreement between Micro Focus and Kirkland recites that it is governed by the laws of Delaware according to its choice of law provision. However, because this Court's local rules apply the New York State Rules of Professional Conduct, both Delaware and New York Rules will be analyzed. However, there is no meaningful conflict of laws, because Kirkland's conduct is prohibited, and requires disqualification, under either state's laws. *Compare* NYRPC 1.7 ("[A] a lawyer shall not represent a client if a reasonable lawyer would conclude that . . . the representation will involve the lawyer in representing differing interests." *with* DLRPC 1.7 ("[A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest" which exists when "the representation of one client will be directly adverse to another client").

facility counsel at Kirkland (who invoiced Micro Focus for work as recent as September 2022)—but that law firm is now adverse to it. *Id.* at ¶¶ 18-23.

Kirkland's knowledge of Micro Focus's IP, finances, and strategic business operations gives IBM an unfair advantage in terms of its overall litigation strategy (which, again, involves IBM suing Micro Focus on baseless claims at a time when a major transaction is pending), and it specifically gives IBM a leg up when it comes to damages and related financial issues that will be a part of this alleged copyright infringement case. Indeed, it is possible that Micro Focus could call attorneys from Kirkland as witnesses on matters relating to, at minimum, damages.

Thus, Kirkland contemporaneously represents both IBM and Micro Focus, which constitutes a concurrent conflict of interest and prejudices the fairness of these proceedings. Micro Focus US respectfully requests that Kirkland and its attorneys be disqualified from representing IBM in this matter.

## II.     NATURE AND STAGE OF PROCEEDINGS

On November 21, 2022, IBM commenced this action against Micro Focus by filing its complaint, in which it alleges a breach of contract and copyright infringement by Micro Focus. D.I. 1. The complaint was filed by Kirkland attorneys, who are admitted to practice in New York by this state's Bar and through *pro hac* vice application. That *pro hac* vice application was granted on November 23, 2022. D.I. 13. Micro Focus has not responded to the complaint to date.

## III.    STATEMENT OF THE FACTS

Kirkland has represented Micro Focus since at least 2016. Swiss Decl. at ¶ 6. Indeed, Micro Focus received its most recent invoice from Kirkland on October 27, 2022, for time billed in September 2022. *Id.* at ¶ 18.

### A.     Kirkland Represents Micro Focus

3

Throughout its representation, Kirkland has provided Micro Focus with advice relating to debt and credit facilities, and related IP transactions, as well as on tax matters. *Id.* at ¶¶ 6, 8-23. Kirkland has also been Micro Focus's counsel of record in several litigations—including a patent litigation—although those particular litigations are over. More significantly, and more recently, Kirkland has been playing an integral role in advising Micro Focus on issues relating to the OpenText acquisition, a momentous deal for Micro Focus and the industry. *Id.* at ¶¶ 19-21. For example, Kirkland has been advising Micro Focus on the impact this deal would have on Micro Focus's debt, and has been helping to structure Micro Focus's finances (which include IP-secured financings) accordingly. *Id.* at ¶¶ 20-21. Through this representation, Kirkland gained access to Micro Focus's highly-sensitive business information. *Id.* at ¶¶ 20, 23.

Kirkland's representation, however, has not been limited to financial issues. Rather, it has included advice from attorneys in its IP practice group. *Id.* at ¶¶ 11, 14-16, 18. For example, Kirkland recently counseled Micro Focus regarding its IP in relation to debt and financings. *Id.* at ¶¶ 14-16, 18. This involved a coordinated effort between Kirkland's debt and finance team, led by Osaro Aifuwu, and its IP team, Aaron Lorber and Rob Soneson. *Id.* These Kirkland teams worked together to review IP connected to various security agreements. *Id.* This is reflected in Kirkland's April 2022 invoice, which expressly included time billed on IP-specific tasks. *Id.* at ¶ 15. Kirkland also billed Micro Focus for IP-related work on its May 31, 2022 invoice. *Id.* at ¶ 16. That work included correspondence between Kirkland's debt and finance team with Kirkland's IP team about the IP security agreements and next steps. *Id.* In its latest invoice, sent October 24, 2022, Kirkland billed Micro Focus for correspondence on an IP security package request. *Id.* at ¶ 18.

4

Kirkland and Micro Focus's attorney-client relationship is reflected in a Master Retention Agreement from November of 2021 ("2021 Agreement"), which refers back to and incorporates a retention letter dated August 1, 2016 ("2016 Agreement"). *Id.* at ¶ 7. Micro Focus retained Kirkland in the 2016 Agreement to represent it in its acquisition of Hewlett Packard Enterprise's software business. *Id.* at 6; *see also* https://www.kirkland.com/news/press-release/2016/09/kirkland-represents-micro-focus-on-acquisition-of ("Kirkland's Press Release"). This transaction was valued at $8.8 Billion, demonstrating the significant role it played in Micro Focus's business. *See* Kirkland's Press Release. According to Kirkland's Press Release fourteen Kirkland employees worked on the deal, including two IP partners. *See* Kirkland's Press Release. Notably, five of Kirkland's attorneys who worked on that deal have also been providing advice and counseling relating to the OpenText deal, including IP Partner, Aaron Lorber. Swiss Decl. at ¶ 15; Kirkland Press Release.

These Kirkland engagement agreements remain in effect to date, and have never been terminated. Swiss Decl.at ¶¶ 7, 13. Section 14 of the 2021 Agreement states that either Micro Focus or the Firm may terminate this Agreement upon prior written notice to the other. *Id.* at ¶ 7. No such written notice has ever been provided to Micro Focus. *Id.* at ¶ 13. Indeed, the first time it learned of Kirkland's adverse representation was when it reviewed the complaint in this matter and came to realize that Kirkland was representing IBM in this lawsuit against Micro Focus. *Id.* at ¶¶ 4-5.

### B.     Kirkland Provides Counsel to Micro Focus on Finance and IP-Related Matters and Has Access to Micro Focus's Confidential Business Information Relevant to the Present Litigation

Kirkland attorneys work closely with various Micro Focus personnel, including Micro Focus's Group Treasurer. *Id.* at ¶¶ 2, 21. For example, this summer Kirkland advised Micro Focus on a $100 million debt buy-back deal. *Id.* at ¶ 12. Through that work, Kirkland accessed

5

Micro Focus's confidential business information, such as Micro Focus's financial structure, business strategies, and market position. *Id.*

Of particular note, Kirkland's counsel and advice relates to financial and debt-related matters connected to the single biggest business current issue at Micro Focus: its pending acquisition by OpenText. *See* https://www.prnewswire.com/news-releases/opentext-to-acquire-micro-focus-international-plc-301612801.html; *see also* Swiss Decl. at ¶¶ 19-21. Upon closing, this deal stands to enhance OpenText's position in certain markets. Swiss Decl. at ¶ 20. To illustrate Kirkland's role as a key advisor to Micro Focus on issues relating to this acquisition, on August 26, 2022, the day after the deal was announced publicly, Micro Focus sought Kirkland's advice on the structuring of financial matters relating to and/or impacted by this deal. *Id.* at ¶ 21. Kirkland's advice was sought for the purpose of presentations made to the highest levels of Micro Focus's management team. *Id.*

Kirkland also drafted a credit agreement for the OpenText deal and has been providing advice relating to the impact of certain provisions in the OpenText agreement—and how they may impact Micro Focus's finances. *Id.* at ¶¶ 21-22. Kirkland further performed a review of the guarantor list that supports the credit agreement for the OpenText deal. *Id.* at ¶ 18. The invoice for this work was sent to Micro Focus on October 24, 2022. *Id.* at ¶ 18.

Kirkland's relationship with Micro Focus goes even deeper. For example, Kirkland and Micro Focus exchanged correspondence on September 8, 2022, relating to encumbrances of an entity owned by Micro Focus. Kirkland also advises Micro Focus regarding tax matters. *Id.* Kirkland's role as Micro Focus's attorneys goes even deeper. Kirkland advised Micro Focus when it restructured on two separate occasions in 2018 and 2020. *Id.* at ¶ 11. This type of work involved closed analysis of debt-related contractual provisions to avoid triggering automatic debt

buy-back clauses. *Id.* Restructuring also included Kirkland providing advice on internal IP cross-licensing. *Id.* This involved a review of Micro Focus's entire IP structure and licenses. *Id.* Thus, Kirkland has worked intricately close with Micro Focus, analyzing and advising on its corporate structure and IP licensing.

It is also noteworthy that Kirkland has represented Micro Focus in several significant litigations, including patent and technology-related litigations. For example, Kirkland represented Micro Focus US in *Wapp Tech. Ltd. Partnership et al. v. Micro Focus International PLC et al.*, in which Micro Focus was accused of patent infringement. No. 4:18-cv-469 (E.D. Tex.), ECF 1. In this suit Wapp accused products acquired from Hewlett Packard Enterprise Company, including the very products Kirkland helped Micro Focus to acquire in 2016, of infringing Wapp's patents. *Id.* at ¶¶ 22-26, 40-41. Kirkland entered an appearance on behalf of Micro Focus US on March 18, 2021. *Id.* at ECF 469. Shortly thereafter Kirkland assisted with the preparation of a sealed brief opposing the enhancement of damages. *See id.* at ECF 479 (moving to seal Defendants' Opening Brief Opposing Enhancement of Damages and accompanying exhibits). The reason this brief was filed under seal was because "Defendants' filing relies on and discloses Defendants' information that is designated as confidential business and technical information." *Id.* It is, thus, quite clear that Kirkland has knowledge of "confidential business and technical information" relating to Micro Focus's technology, IP-practices and related financial and business matters that has not been disclosed to the public. *Id.* at ¶ 9.

On May 23, 2018, Micro Focus Plc was sued in the Northern District of California pursuant to §§ 11, 12(a)(2) and 15 of the Securities Act and 15 U.S.C. §§ 77k, 77l(a)(2) and 77o. *Schmitt et al. v. Micro Focus International PLC et al.*, No. 3:18-cv-03066 (N.D. Cal. May 23,

7

2018), ECF 1. On July 19, 2018, two Kirkland attorneys entered an appearance on behalf of Micro Focus Plc. *Id.* at ECF 8, 9. That same day Kirkland filed a motion to transfer the case pursuant to a forum selection clause. *Id.* at ECF 12. A review of that motion shows Kirkland's familiarity with its corporate structure and financial documents. *See id.* at pp. 9-12 (discussing a forum selection clause in American Depositary Shares of Micro Focus Plc); 17-20 (discussing the transfer factors); *see also* Swiss Decl. at ¶ 8. The fact that Kirkland filed a motion to transfer on behalf of Micro Focus Plc carries weight because the analysis of the transfer factors necessarily involves a behind-the-scenes look into a company's structure. The case was subsequently transferred to the Southern District of New York by stipulation where Kirkland continued its representation of Micro Focus Plc. *In re Micro Focus International PLC Securities Litigation*, No. 1:18-cv-06763 (S.D.N.Y. July 27, 2018), ECF 25; *see also id.* at ECF 26-29. The district court action concluded when Kirkland won a motion to dismiss on behalf of Micro Focus Plc. *Id.* at ECF 104. The decision was ultimately appealed to the Second Circuit, where Kirkland continued its representation. *See In re Micro Focus International*, Docket No. 20-03686 (2d Cir. Oct 27, 2020); Swiss Decl. at ¶ 8. Kirkland continued representing Micro Focus Plc in that litigation through June 17, 2022. *In re Micro Focus International PLC Securities Litigation*, No. 1:18-cv-06763 (S.D.N.Y. July 27, 2018), ECF 166.

      Kirkland also represented Micro Focus Plc in a California state court case alleging violations of §§ 11, 12(a)(2) and 15 of the Securities Act and 15 U.S.C. §§ 77k, 77l(a)(2) and 77o. *In re Micro Focus International PLC Securities Litigation*, No. 18CIV1549, (Cal. Sup. Ct. San Mateo Mar. 28, 2018). Much like in *Schmitt*, Kirkland challenged venue on behalf of Micro Focus Plc which would have included a review of its corporate structure and operations. *In re Micro Focus Int'l PLC Secs. Litig.*, (Cal. Super. Ct. San Mateo July 6, 2018) at pp. 9-10, 13-15

(discussing a forum selection clause in American Depositary Shares of Micro Focus Plc); 17-19 (discussing the transfer factors); *see also* Swiss Decl. at ¶ 10.

Thus, Kirkland has been a long-standing and current advisor to Micro Focus, and Micro Focus has every right to expect Kirkland's loyalty. Swiss Decl. at ¶¶ 6, 13-14. Through its relationship with Micro Focus throughout the years, Kirkland has had access to Micro Focus's highly confidential business information such as its financial structure and position, confidential changes to those structures and positions, and confidential information relating to Micro Focus's business strategies and initiative, and confidential information regarding the OpenText deal. *Id.* at ¶¶ 8-12, 20, 23.

There is the potential for great harm if confidential information pertaining to the OpenText deal falls into IBM's hands. *Id.* at ¶ 23. And, with specific reference to this litigation, Micro Focus's business performance, operations, and strategies are likely to relate to myriad issues, including damages and Micro Focus's alleged breach.

### C.   Micro Focus Never Consented to Kirkland Representing IBM in this Litigation

Micro Focus first learned that Kirkland was going to be involved in this case only after IBM filed its complaint and related papers. *Id.* at ¶ 5. Kirkland did not obtain Micro Focus's consent, written or otherwise, for Kirkland to take a position directly adverse to Micro Focus. *Id.* Rather, via letter sent November 27, 2022, and through its counsel in a teleconference on December 7, 2022, Micro Focus informed Kirkland that it expressly did not consent to Kirkland's role in the litigation and asked for Kirkland to withdraw from the litigation. Therefore, the exception to the prohibition of representing current clients adverse to each other does not apply. *See* NYRPC 1.7(b) (allowing representation of adverse clients if all four factors are met, including written consent); *see also* DLRPC 1.7(b) (same).

9

## IV. ARGUMENT

### A. Micro Focus and IBM are Both Current Clients of Kirkland

The language of NYRPC is explicit: "[A] a lawyer shall not represent a client if a reasonable lawyer would conclude that . . . the representation will involve the lawyer in representing differing interests." NYRPC 1.7; *see also* DLRPC 1.7(a)-(1) ("[A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest" which exists when "the representation of one client will be directly adverse to another client"). A lawyer may only represent a client when there is a concurrent conflict of interest if all four listed exceptions are met, including that "each affected client gives informed consent, in writing." NYRPC at (b); DLRPC at (b). An attorney who fails to observe his obligation of undivided loyalty to his client injures his profession and demeans it in the eyes of the public." *IBM Corp. v. Levin*, 579 F.2d 271, 283 (3d Cir. 1978). In fact, "a court may disqualify an attorney for failing to avoid even the appearance of impropriety." *Id.*; *see also Stratagem Dev. Corp. v. Heron Int'l N.V.*, 756 F. Supp. 789, 792 (S.D.N.Y. 1991). The Second Circuit has held that "any doubt should be resolved in favor of disqualification." *First NBC Bank v. Murex, LLC*, 259 F. Supp. 3d 38, 56 (S.D.N.Y. 2017).

First, it is clear that IBM is a current client of Kirkland by virtue of Kirkland filing the complaint in this litigation. It is also clear that Micro Focus is a current client of Kirkland, as described above. *See also* Swiss Decl. at ¶¶ 6-7, 13-22. The parties' signed a retention letter dated August 1, 2016, and a supplemental retention letter in November 2021. *Id.* at ¶¶ 6-7. There has been no termination of that agreement and Micro Focus reasonably believes it is owed Kirkland's loyalty. *Id.* at ¶¶ 7, 13. And there can be no reasonable dispute that IBM and Micro Focus are adverse in this matter, putting Kirkland in a position where it is representing one current client (IBM) in a litigation adverse to another current client (Micro Focus).

10

Therefore, Kirkland has breached its duty of loyalty by representing two clients whose interests are directly adverse to one another. It is prima facie improper for Kirkland to continue its representation of two current clients in this matter.

### B. Kirkland Should be Disqualified Due to its Violation of the Ethical Rules

Indeed, "it is prima facie improper for an attorney to simultaneously represent a client and another party with interests directly adverse to that client." *First NBC*, 259 F. Supp. 3d at 56; *see also Parallel Iron, LLC v. Adobe Sys. Inc.*, No. 12-874-RGA, 2013 WL 789207, at *4 (D. Del. Mar. 4, 2013) ("Because the interest sought to be protected by Rule 1.7 is one of loyalty, a *per se* rule of disqualification should be applied when that rule is breached."). In this situation, it is no defense for the law firm to contend that the matters of concurrent representation are unrelated. *First NBC*, 259 F. Supp. 3d at 57. Further, ("[I]t will not suffice to show that the two matters upon which an attorney represents existing clients are unrelated.").

When a firm violates Rule 1.7, disqualification should follow. *Parallel Iron*, 2013 WL 789207, at *4; *see also United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980) ("[D]isqualification ordinarily is the result of a finding that a disciplinary rule prohibits an attorney's appearance . . . ."). This is so even when the conflicted law firm is not in possession of any confidential information that is relevant to the instant suit. *Parallel Iron*, 2013 WL 789207, at *4; *see also First NBC*, 259 F. Supp. 3d at 57 ("Where a concurrent representation is found, it will 'not suffice to show that the two matters upon which an attorney represents existing clients are unrelated.'") (citing *GSI Commerce Sols., Inc. v. BabyCenter, LLC*, 618 F.3d 204, 209 (2d Cir. 2010).

While courts have limited discretion when deciding whether disqualification is the proper remedy, "where the per se rule applies, as it does here, that discretion, if it exists at all, is narrowly confined." *Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201, 213 (S.D.N.Y.

11

2009). In the Second Circuit, after finding that two adverse parties are, concurrently represented, the conflicted firm has the heavy burden to show the absence of an actual or apparent conflict in loyalties. *First NBC*, 259 F. Supp. 3d at 68 (citing *GSI Commerce*, 618 F.3d at 209). However, this is "a burden so heavy that it will **rarely be met**." *First NBC*, 259 F. Supp. 3d at 68 (citing *GSI Commerce*, 618 F.3d at 209) (emphasis added).

      Kirkland cannot overcome its "heavy burden" of showing that there is no actual or apparent conflict in loyalties. First, Kirkland created, at a minimum, the appearance of disloyalty to Micro Focus. *See First NBC*, 259 F. Supp. 3d at 68 (finding that the filing of the complaint against its client created at least the appearance of disloyalty and allowing tis representation to continue would "put the Court's imprimatur on it"). IBM's complaint is replete with accusations of theft and deceitful behavior by Micro Focus. *See* D.I. 1 at ¶ 1("purposefully breached the terms of those agreements to suit Micro Focus's own ends"), ¶ 5 ("This illegal opportunism, willful infringement, and blatant breach of Micro Focus's contractual obligations"), ¶ 38 ("flagrantly flouted the terms" of agreements), ¶ 39 ("brazen disregard of IBM's intellectual property"). Each of these punitive and hyperbolic accusations were made by Kirkland, Micro Focus's own attorneys. Moreover, as discussed above, Kirkland has represented Micro Focus, its entities, and employees in numerous lawsuits ranging from finance related matters to patent infringement. Swiss Decl. at ¶¶ 8-10. In the public eye, Kirkland has now gone from representing Micro Focus to suing it. At a bare minimum this creates an appearance of disloyalty by Kirkland which is all that is required for disqualification. *See First NBC*, 259 F. Supp. 3d at 68 (finding that the filing of the complaint against its client created at least the appearance of disloyalty and allowing tis representation to continue would "put the Court's imprimatur on it"); *IBM*, 579 F.2d at 283.

Second, Kirkland has gained access to significant confidential information as a result of its counseling of Micro Focus in connection with IP-related transactions and the OpenText deal. Swiss Decl. at ¶¶ 20, 23. Not only has Kirkland had access to technical information, but it has scrutinized Micro Focus's IP in order to value it for agreements secured by IP. *Id.* at ¶¶ 14-16, 18, 22-23. The knowledge Kirkland gained in its assessment is likely to be relevant to issues in the present litigation, including, at minimum, damages, good faith and discovery. Indeed, these Kirkland lawyers may even be called as witnesses in this litigation, which would further implicate the ethical rules against a lawyer serving as a witness before a tribunal before which that lawyer is an advocate.[4]

The cross-pollination of relevant information between Kirkland's finance and debt team with its IP team opens the door to a substantial risk of disclosure of confidential information. Kirkland's debt and finance team has become privy to Micro Focus's IP and Kirkland's IP team gained confidential information concerning Micro Focus's finances. *Id.* at ¶¶ 16, 23. Even an inadvertent disclosure of confidential information of this type would severely prejudice Micro Focus against IBM. *Id.* at ¶ 23. The only way to mitigate that risk and avoid a taint on this lawsuit is to disqualify Kirkland.

Third, Kirkland has had access to Micro Focus's confidential information about its business strategies, IP, operations, and financial structure, including any future changes to its operations and finances. The *Wapp* case is a prime example of this. There, Kirkland moved to

---

[4] *See* NYRPC 3.7(a) ("A lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact unless: (1) the testimony relates solely to an uncontested issue; (2) the testimony relates solely to the nature and value of legal services rendered in the matter; (3) disqualification of the lawyer would work substantial hardship on the client; (4) the testimony will relate solely to a matter of formality, and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; or (5) the testimony is authorized by the tribunal.").

13

seal a brief relating to damages because the filing "relie[d] on and disclose[d] Defendants' information that is designated as confidential business and technical information." *Wapp Tech. Ltd. Partnership*, No. 4:18-cv-469 (E.D. Tex.), ECF 479. In other words, Kirkland has reviewed Micro Focus's confidential financial information in the context of IP litigation, and analyzed that confidential technical information with an eye towards damages. Both of these subjects are relevant to the present lawsuit with IBM.

The information Kirkland gained throughout its representation of Micro Focus is likely relevant to many relevant topics including, but not limited to, damages, discovery, personal jurisdiction, and Micro Focus's technology. IBM's complaint also accuses Micro Focus of willful copyright infringement. This puts Micro Focus's state of mind, its good faith efforts, and corporate culture at issue. *Cf. First NBC*, 259 F. Supp. 3d at 72. Micro Focus's confidential information, to which Kirkland had access, bear on all of these topics. Therefore, Kirkland cannot overcome its "heavy burden" of showing that there is no actual or apparent conflict in loyalties.

Conversely, disqualification of Kirkland will not result in any undue prejudice to IBM. Although prejudice is not a factor considered by the courts, *See Merck*, 670 F. Supp. 2d at 213 (doubting whether discretion applies where the per se rule applies but still addressing factors that would inform any exercise of discretion), IBM can point to no prejudice since this case is in its early stages. As of the submission of this motion, Micro Focus's deadline to respond to IBM's complaint has not arrived. Also, there has not been an initial conference and discovery has not begun. Therefore, new counsel for IBM will not need to spend excessive time and effort getting up to speed on the issues in this case.

Finally, Micro Focus US does not gain any tactical advantage by filing this motion. The case is in its infancy, and Micro Focus US has filed this motion promptly and made its objection to being sued by Kirkland known, in good faith, by its letter sent November 27, 2022, and teleconference December 7, 2022. *See, e.g. First NBC*, 259 F. Supp. 3d at 74 (finding that there was no basis to find the disqualification motion was for tactical reasons where the moving party made its objection immediately known); *see also Kabi Pharmacia AB v. Alcon Surgical, Inc.*, 803 F. Supp. 957, 964 (D. Del. 1992) (finding that even a delay of one year with discovery nearing completion did not impair the party's ability to litigate). Micro Focus US has not, and will not, gain any tactical advantage by pursuing its right to loyal representation.

**V.      CONCLUSION**

Micro Focus has been Kirkland's client for at least six years, continuing through the filing of the present lawsuit. Micro Focus never gave informed consent for Kirkland to appear adverse to it by representing IBM. Kirkland has breached its duty of loyalty to Micro Focus by representing IBM in a lawsuit adverse to Micro Focus while Micro Focus is an active client. Therefore, Micro Focus US respectfully requests this Court grant its Motion to Disqualify Kirkland & Ellis as Plaintiff's Counsel.

Respectfully submitted,

Dated: December 9, 2022

*/s/Marcella Ballard*
VENABLE LLP
Timothy J. Carroll*
227 West Monroe Street, Suite 1900
Chicago, IL 60606
Tel: 312.820.3400
Fax: 312.820.3401
TJCarroll@Venable.com

VENABLE LLP
Marcella Ballard

15

        Maria R. Sinatra
        1270 Avenue of the Americas, 24th Floor
        New York, NY 10020
        Tel.: 212-307-5500
        Fax: 212-307-5598
        MBallard@Venable.com
        mrsinatra@venable.com

        VENABLE LLP
        Manny J. Caixeiro
        2049 Century Park East, Suite 2300
        Los Angeles, CA 90067
        Tel: 310.229.9900
        Fax: 310.229.9901
        mjcaixeiro@Venable.com

        *Pro Hac Vice Motion pending*

        *Attorneys for Micro Focus International Plc,*
        *and Micro Focus (US), Inc.*