Dale M. Cendali
Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-6460
dale.cendali@kirkland.com
joshua.simmons@kirkland.com

James John Lomeo (*pro hac vice*)
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
Telephone:  (512) 678-9100
Facsimile:  (512) 678-9101
james.lomeo@kirkland.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IBM CORPORATION,<br><br>               Plaintiff,<br><br>- against -<br><br>MICRO FOCUS (US), INC.<br><br>               Defendant. | Case No.  22-cv-9910<br><br>ECF Case<br><br>**DEMAND FOR JURY TRIAL** |

**FIRST AMENDED COMPLAINT**

Plaintiff IBM Corporation ("IBM" or "Plaintiff"), by and through its attorneys, Kirkland & Ellis LLP, for its First Amended Complaint, hereby alleges against Defendant Micro Focus (US), Inc. ("Defendant" or "Micro Focus") as follows:

## NATURE OF THE ACTION

1. IBM brings this lawsuit to protect valuable intellectual property that is critical to IBM's powerful and innovative mainframe systems and that has been stolen by Micro Focus. Micro Focus made the willful decision to copy and steal IBM's software in violation of copyright law. Moreover, Micro Focus entered into contracts with IBM to benefit from IBM's developer programs and get access to IBM's technology, and then purposefully breached the terms of those agreements to suit Micro Focus's own ends. This violates IBM's intellectual property rights, undermines the investments it has made in software innovation, and unfairly deprives IBM of revenues attributable to its software. Micro Focus's actions must be stopped.

2. As part of IBM's mission to innovate continuously for its customers, IBM provides critical mainframe systems for the business needs of, for example, the world's banks, airlines, and many government agencies. IBM's systems provide unparalleled reliability, scalability, and security. As a result, users rely on them for their most critical computational workloads. IBM mainframe systems are composed, in part, of IBM's proprietary computers and software, and they are designed to meet the changing needs of IBM's customers. For example, as customers increasingly seek to use IBM's systems for Internet-based applications, IBM has developed technology that allows customers to create web services that extend their mainframe application programs using IBM computer programs. Those IBM programs make it possible for data from the web-services applications to be used by mainframe applications and vice versa.

3. Another way IBM serves its customers' needs is through its collaboration with third-party software developers, like Micro Focus. Through these relationships, the developers obtain substantially discounted access to IBM products, software, and other benefits. In exchange for these benefits, the developers enter into contracts with IBM that govern the developers' use of the IBM products and software. Put simply, the developers promise to use

their access to these IBM products and software to develop software applications for the IBM mainframe systems and promote the use of those systems. The developers also promise not to misuse IBM's software, including by reverse engineering IBM's software or putting it to purposes not expressly authorized by IBM.

4. Micro Focus is one such developer. Yet, IBM has learned that Micro Focus has copied IBM's computer programs without authorization and breached its agreements that it previously entered into with IBM. Specifically, it recently came to IBM's attention that Micro Focus copied IBM's copyrighted program to create a derivative software application that Micro Focus not only promotes heavily worldwide, but also has used and presently uses in direct violation of its agreements with IBM.

5. This illegal opportunism, willful infringement, and blatant breach of Micro Focus's contractual obligations leaves IBM with no choice but to seek injunctive and monetary relief from this Court.

## THE PARTIES

6. Plaintiff IBM is a New York corporation with its principal place of business in this District at 1 Orchard Road, Armonk, New York 10504. It is qualified to do business and is doing business in the State of New York.

7. Upon information and belief, Defendant Micro Focus is a Delaware corporation with its principal place of business at 700 King Farm Boulevard, Suite 400, Rockville, Maryland, 20850-5736.

8. Upon information and belief, Micro Focus, along with other related entities, created software called Micro Focus Enterprise Server and Micro Focus Enterprise Developer (collectively, "Micro Focus Enterprise Suite" or the "Accused Works") by using its developer access to copy IBM's CICS Transaction Server for z/OS ("CICS® TS") software. Micro Focus

published, distributed, and promoted the Accused Works, and Micro Focus continues to do so today.

## JURISDICTION AND VENUE

9. This civil action seeking damages, injunctive relief, and other equitable relief, arises under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq* and New York state law.

10. This Court has subject matter jurisdiction over IBM's claims for copyright infringement pursuant to 28 U.S.C. §§ 1331 and 1338. Additionally, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum or value of $75,000, and the action is between a New York citizen and a citizen of Delaware and Maryland.

11. This Court has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367.

12. This Court has personal jurisdiction over Defendant because it has purposefully directed its activities at the United States, and at New York in particular; has purposefully availed itself of the benefits of doing business in New York; has established a continuing presence in New York; and as further alleged below, promotes and distributes the Accused Works in the State of New York. For example, upon information and belief, Defendant solicits talent from the State of New York, including job postings targeting New York City employees, including positions in Defendant's information technology, sales, and engineering departments.

13. Upon information and belief, Defendant conducts extensive and ongoing business with customers in the United States and the State of New York. Specifically, it has distributed the Accused Works in the State of New York to at least the following New York-based companies, each of with whom Defendant has entered into contracts: Deutsche Bank USA, McGraw Hill Education, New York State Division of Criminal Justice, and Citi Bank. Further,

Defendant advertises and markets the Accused Works in the State of New York, including without limitation on their website, which is accessible in the State of New York.

14. Upon information and belief, Defendant also has directed its unlawful activities at IBM, knowing and intending that IBM would be harmed by Defendant's conduct in the United States and primarily in the State of New York, where IBM has its principal place of business. Indeed, Defendant's agreements with IBM specifically indicate that they will be governed by New York law.

15. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400 because this is a judicial district in which a substantial part of the events giving rise to the claims occurred, and/or in which IBM's injury was suffered.

**ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

**I.     IBM creates and invests in innovative computer programs, including its CICS® TS.**

16. Founded over a century ago, IBM continues to be one of the world's leading technology companies, pioneering the field of information technology and working at the forefront of a worldwide industry that revolutionizes the way in which enterprises, organizations, and people operate and thrive.

17. IBM promotes a model that emphasizes collaboration with its developers to promote innovation, cost-reduction, and productivity.

18. IBM's server and hybrid cloud offerings include IBM mainframe systems. These powerful systems allow for the extremely reliable and secure processing of vast amounts of data at fast speeds and can process up to one trillion web transactions per day. IBM's mainframe systems boast unequaled reliability, scalability and security, and provide customers with effective and secure computing services for their large-scale data-processing needs. IBM's mainframe systems include both the mainframe server, the latest of which is the IBM z16 server,

and an extensive suite of associated IBM-developed operating systems and other IBM software. IBM's industry-leading mainframe systems are used for various mission-critical applications by the world's banks, airlines, and many government agencies, among others.

19. One of the mainframe offerings that IBM has developed is called the zSystem, a family of industry leading servers that embody continuing investment and modernization. For example, the new IBM z16 server uses on-chip AI inferencing and industry-first quantum safe technologies. Other features include simplified compliance, flexible capacity, and a smaller energy footprint that reduces costs. IBM has invested enormous amounts of time, money, energy, and resources into developing its cutting-edge IBM zSystems servers.

20. IBM's mainframe systems do not just offer innovative hardware—IBM's software also is highly innovative. IBM's current z16 servers can run multiple operating systems including IBM's flagship z/OS® operating system. One of the many ways IBM mainframe offerings excel is by offering a general-purpose application server and transaction processing subsystem called the CICS Transaction Server for z/OS, or "CICS® TS," for its z/OS® operating system environment.

21. CICS® TS helps to unleash the full potential of IBM's mainframe systems by providing services for running applications online, by request, at the same time as many other users are submitting requests to run the same applications, using the same programs and resources such as files and databases. A CICS® TS application is a collection of related programs that together perform a business operation, such as processing a travel request or preparing a company payroll.

22. As mobile and networked devices became ubiquitous, the need for cross-platform capabilities grew. CICS® TS enables CICS® TS applications to communicate with these

non-CICS® systems. This innovation enables IBM's customers' applications to work online and across various platforms—protecting IBM's customers' investment in their IBM mainframe systems.

23. One way the CICS® TS enables this cross-platform capability is its support for web services. Given the widespread use of networked devices, it is helpful to make various services accessible via various types of networks. CICS® TS Web Services and related components are part of the CICS® TS computer program and enable IBM's mainframe system customers to provide access to their existing CICS® TS applications from other platforms over a network.

24. CICS® TS Web Services uses a "web service binding file," known as WSBIND file, to expose CICS® TS programs as web services and maps data received or sent by the networked device to the application data structures that reside on the mainframe. Simply put, IBM's WSBIND file enables CICS® TS application service access via a network.

25. IBM's WSBIND file contains unique designs and architectural features as well as structures internal to IBM to enable this important and innovative data mapping solution.

**II.     IBM's innovative CICS® TS is protected by copyright.**

26. The innovative CICS® TS is of great value to not only IBM, but also its customers. It is the product of IBM's investment of vast resources—including time, effort, talent, creativity, and money. The software embodies a series of original, creative choices by IBM and constitutes copyrightable subject matter under the copyright laws of the United States.

27. IBM holds the copyrights for CICS® TS (the "Works"). Attached as **Exhibit A**, and incorporated by reference, are copies of Certificates of Registration issued by the Copyright Office for the Works, including CICS® TS Web Services and related components. Those

certificates show the date upon which IBM applied for the Certificate of Registration, the date on which the certificate was issued, and the registration number assigned.

28. The Works—which feature uniquely expressed source code, object code, structure, architecture, modules, algorithms, data structures, and control instructions—are creative computer programs that were the product of engineering discretion and substantial skills, resources, and creative energies. The Works also are of great value to IBM and remain integral to the daily business operations of much of its IBM mainframe system customer base.

29. IBM is the sole owner and proprietor of all right, title, and interest in and to the copyrights in the Works. The copyrights in the Works are presently valid and subsisting and were valid and subsisting at all times affecting the matters complained of herein.

### III. IBM partners with third parties to collaboratively develop innovative solutions for their mutual customers; Micro Focus is one such third party.

30. Over the years, IBM has created a number of opportunities for third parties—large and small—to collaborate with IBM to help improve, promote, and expand the digital products and services available to their mutual customers. When IBM and its third parties are united in their goal to bring innovation to their customers, this partnership benefits all involved: IBM, the third parties, and particularly their mutual customers. For example, third-party developers receive substantially discounted access to IBM products and software programs. This facilitates robust industry engagement and development for products and services that run on IBM mainframe servers. IBM also offers a number of other valuable benefits to its partners, including education and training, and personalized support.

31. Given the significant time, effort, energy, and resources that IBM has invested in the development of its software and these developer relationships, IBM takes care to provide contractual limitations on those developers' access and use of its technology.

32.     Specifically, developers who participate in the IBM PartnerWorld program ("PartnerWorld") agree to the IBM PartnerWorld Agreement and Value Package Attachment (the "PartnerWorld Agreement").  Along with other agreements, the PartnerWorld Agreement sets the terms under which developers are permitted to use IBM's computer programs.  These terms ensure that IBM and its developers are aligned in their goals: to promote innovative solutions for their mutual customers.

33.     IBM's z/OPD Developer Discount Program ("Developer Discount Program") similarly provides benefits to third party developers and grants them access to IBM's valuable mainframe software.  Participants in the Developer Discount Program receive access to IBM copyrighted software, including the Works.  In exchange, IBM's developers agree to three different agreements detailing the limited scope of their access and use: (1) IBM's Client Relationship Agreement (the "CRA"); (2) Attachment for Developer Discount – IBM Z (the "CRA Attachment"); and (3) Addendum to the Attachment for Developer Discount for IBM Z (the "CRA Addendum").

34.     Through these agreements, participants in the Developer Discount Program agree to comply with the terms of the limited license granted to them, and "not us[e] any of the elements of the Program or related licensed material separately from the Program."  CRA § 1.b.4.  Participants are prohibited from "reverse assembling, reverse compiling, translating, or reverse engineering" IBM's software.  CRA § 1.b.3; *see also* CRA Attachment § 5.a.4.  Further, IBM's developers promise not to use their preferred access and the IBM software licensed to them under the Developer Discount Program to undermine IBM's mainframe systems, and instead use their access solely to develop or enhance software that runs on IBM's mainframe

platform and otherwise only for the mutual benefit of the parties and their customers.  CRA Attachment §§ 2.f, 2.j, 5.b.

35.     Micro Focus has been a member of PartnerWorld, and it was a member of the Developer Discount Program.  Micro Focus agreed to the terms in the Partner World Agreement, the CRA, the CRA Attachment, and the CRA Addendum.  These agreements, or predecessor agreements not materially different from these agreements, were in force at all times affecting the matters complained of herein.  Micro Focus had access to at least IBM's copyrighted CICS® TS software when the aforementioned agreements were in force, and Micro Focus generally has had access to IBM software for nearly the last two decades.  Upon information and belief, Micro Focus copied at least the IBM CICS® TS software sometime within this access period, and it continues to make and distribute copies of at least the IBM CICS® TS software today as part of its Accused Works.

36.     Although developers participating in these programs are given the opportunity to access and use valuable IBM software, the aforementioned restrictions make clear that such use is not unlimited.  In order to protect its valuable software, IBM relies on its developers' contractual agreements.  Yet, as discussed below, IBM has come to learn that Micro Focus flagrantly flouted the terms of at least these agreements to create the Accused Products that Micro Focus then used and promoted to gain financially at IBM's expense.

**IV.     Micro Focus copied IBM's copyrighted software and breached its agreements.**

37.     Upon information and belief, Micro Focus created the Micro Focus Enterprise Suite by copying IBM's copyrighted Works, and it promotes and uses its infringing software for financial gain.  Micro Focus's actions were taken in brazen disregard of IBM's intellectual property rights and Micro Focus's contractual obligations to IBM.

38. Micro Focus's Enterprise Suite offers a web services implementation ("Micro Focus Web Services") that includes a WSBIND file for mapping data. Upon information and belief, Micro Focus's WSBIND file copies from IBM's WSBIND file. Moreover, the numerous similarities in the file indicate that other portions of Micro Focus Enterprise Suite were copied from IBM as well. The similarities contained in the parties' WSBIND files include at least the following:

- Micro Focus's WSBIND file contains near identical architecture and design to IBM's CICS® TS WSBIND file.

- Micro Focus's WSBIND file uses IBM internal structures that are not available outside of IBM.

- For a given input schema or data structure, the log file generated from the Micro Focus Enterprise LS2WS utility is nearly identical to the log file generated by IBM's CICS® TS LS2WS utility.

- The Micro Focus utility processing reflected in the log file exhibits the same configuration, program sequence, program elements, program optimizations, defects and missing features as the corresponding CICS® TS utility programs.

- Micro Focus's WSBIND file is encoded in EBCDIC—like IBM's—yet, Micro Focus has no need for using that encoding as it uses an ASCII environment.

These striking similarities indicate that Micro Focus copied elements of IBM's copyrighted Works to create a derivative work in at least Micro Focus Enterprise Developer and Micro Focus Enterprise Server. There is no way such extensive similarity could arise through attempts to meet similar functional requirements, or as a result of coincidence.

39. These similarities also indicate that Micro Focus reverse engineered at least a portion of the CICS® TS software in contravention of Micro Focus's various contractual obligations to IBM. Upon information and belief, Micro Focus used its access to IBM's CICS® TS software to study or analyze IBM's CICS® TS software to learn the details of its design, construction, and operation.

40. Upon information and belief, Micro Focus's copying and reverse engineering significantly reduced the development time and cost required to create the Micro Focus Enterprise Suite. Micro Focus abused its status as an IBM developer and the associated favorable access to IBM's CICS® TS to create its software.

41. To be clear, there is no legitimate reason for Micro Focus to have copied IBM's computer program. Without copying from IBM, Micro Focus had a broad range of design and architectural choices that would have allowed it to create software that offers the same features as the Micro Focus Enterprise Suite. Instead, it chose to use IBM's technology without permission and in contravention of its agreements with IBM.

42. Upon information and belief, Micro Focus's brazen theft, use, and promotion of its infringing software occurred while the aforementioned agreements, or predecessor agreements not materially different from these agreements, to which Micro Focus agreed as a developer in IBM's programs were in effect, and such actions violate these agreements.

43. Further and upon information and belief, Micro Focus misused its access in the Developer Discount Program to undermine IBM's mainframe systems in direct contravention of its contractual obligations.

44. IBM terminated Micro Focus's involvement in the Developer Discount Program by sending a Notice of Non-Renewal on May 31, 2021, and Micro Focus's membership ended by August 31, 2022.

45. Upon information and belief, Micro Focus worked with related entities to commit the aforementioned acts.

46. IBM cannot stand idle while a licensee exceeds the grant of its license and blatantly disregards its contractual obligations by reverse-engineering and copying IBM's copyrighted software, creating a derivative work, and then promoting and profiting from that pirated software. To be clear, IBM welcomes legitimate and fair competition as a catalyst for innovation and progress. IBM cannot sit silent, however, when competition is in the form of surreptitious and unlawful copying of its hard-earned, developed, and copyrighted software. IBM brings this suit to protect its intellectual property and hold Micro Focus accountable for breaching its contractual obligations to IBM and to recover its damages.

**V.    IBM was, and continues to be, harmed by Micro Focus's breach and infringement.**

47. IBM has been harmed, and continues to be harmed, by Micro Focus's breach and willful infringement of its intellectual property rights.

48. Upon information and belief, Micro Focus (1) profits commercially by infringing IBM's intellectual property, (2) reduces and causes substantial harm to the value of the Works, and (3) wrongfully deprives IBM of revenue and profit in using its pirated software for financial benefit. As a result, IBM has been damaged by Micro Focus's conduct in an amount to be determined according to proof at trial.

49. Upon information and belief, unless enjoined by this Court, Micro Focus intends to continue to infringe upon IBM's copyrights and otherwise to profit from IBM's Works. Accordingly, IBM has suffered irreparable harm and will continue to suffer irreparable harm

unless Micro Focus is enjoined from using and promoting its infringing software. IBM has no adequate remedy at law to redress all of the injuries that Micro Focus has caused and intends to cause by its conduct. IBM will continue to suffer irreparable damage until Micro Focus's actions alleged above are enjoined by this Court.

## CLAIM FOR RELIEF

### COUNT I
### Copyright Infringement (17 U.S.C. § 101 *et seq.*)

50. Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

51. The Works are original, creative works and copyrightable subject matter under the copyright laws of the United States.

52. IBM is the owner of valid copyrights in the Works, and the Register of Copyrights has issued Valid Certificates of Registration as indicated in **Exhibit A**.

53. IBM has complied in all respects with 17 U.S.C. §§ 101 *et seq.*, and has secured the exclusive rights and privileges in and to the copyrights in its CICS® TS software.

54. By its actions, alleged above, Micro Focus has infringed and will continue to infringe IBM's copyrights in and relating to IBM's CICS® TS software by, *inter alia*, reproducing, redistributing, and creating derivative works based on the Works without any authorization or other permission from IBM. Moreover, Micro Focus provided the Accused Works to its customers knowingly and, by doing so, materially contributed to the infringing use of those works. Micro Focus has and had the right and ability to stop or limit such infringing use, and it chose not to do so because it profited from the use of the Accused Works. Likewise, Micro Focus worked with related entities to develop and sell the Accused Works, which itself constituted a direct infringement. Micro Focus materially contributed to that use by its related

entities, as well as profited from it while declining its right and ability to stop or limit it. As a result, in addition to Micro Focus's direct liability for its own actions, it is indirectly liable for any infringement by its related entities and customers.

55. Micro Focus's infringement of IBM's copyright has been deliberate, willful, and in utter disregard of IBM's rights.

56. Upon information and belief, as a direct and proximate result of its wrongful conduct, Micro Focus has obtained benefits to which Micro Focus is not entitled.

57. As a direct and proximate result of Micro Focus's wrongful conduct, IBM has been substantially and irreparably harmed in an amount not readily capable of determination. Unless restrained by this Court, Micro Focus will cause further irreparable injury to IBM.

58. IBM is entitled to injunctive relief enjoining Micro Focus, its agents and employees, and all persons acting in concert or participation with it, from engaging in any further infringement of IBM's copyrighted CICS® TS software.

59. IBM is further entitled to recover from Micro Focus the damages and attorney's fees and costs it has sustained and will sustain, and any gains, profits and advantages obtained by Micro Focus as a result of its acts of infringement as alleged above. At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by IBM, but will be established according to proof at trial. IBM also is entitled to recover statutory damages for Micro Focus's willful infringement of its copyrights.

## COUNT II
### Breach of Contract

60. Plaintiff IBM repeats and realleges each and every allegation above as if fully set forth herein.

61. IBM and Micro Focus entered into various contracts governing their relationship, including but not limited to: the PartnerWorld Agreement; the CRA; the CRA Attachment; and the CRA Addendum.

62. In these agreements, IBM and Micro Focus agreed New York state law governs these contracts.

63. Micro Focus also agreed to comply with the terms of the limited license granted to them, and "not us[e] any of the elements of the Program or related licensed material separately from the Program." CRA § 1.b.4.

64. Micro Focus also agreed not to "reverse assembl[e], reverse compil[e], translat[e], or reverse engineer[] the Program." CRA § 1.b.3; *see also* CRA Attachment § 5.a.4.

65. Further, IBM's developers promise not to use their preferred access and the IBM software licensed to them under the Developer Discount Program to undermine IBM's mainframe systems, and instead use their access solely to develop or enhance software that runs on IBM's mainframe platform and otherwise for the mutual benefit of the parties and their customers. CRA Attachment §§ 2.f, 2.j, 5.b.

66. As consideration for these agreements, IBM provided Micro Focus with discounts in exchange for Micro Focus's development and promotion of one or more software applications that will run on IBM's mainframes. Micro Focus had access to at least the CICS® TS software as a result of its execution of at least these agreements and its membership in IBM's programs.

67. As described above, Micro Focus breached at least these provisions of these agreements through, at a minimum, misusing its preferred access to IBM software and resources to reverse engineer and otherwise use IBM's CICS® TS software to develop Micro Focus's Enterprise Suite and using its preferred access to undermine IBM's mainframe system. Upon

information and belief, Micro Focus used its access to IBM's CICS® TS software to study or analyze IBM's CICS® TS software to learn the details of its design, construction, and operation. Upon information and belief, Micro Focus' analysis included observations of the operation of IBM's CICS® TS software that did not include acts of copying the software. This unlawful conduct occurred while these provisions were in force.

68. As a direct and proximate result of these breaches, IBM has sustained damages, including but not limited to the value of the software taken and the loss of business. The agreements permit IBM to recover these damages under the circumstances alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff IBM respectfully requests judgment against Defendant Micro Focus as follows:

A. Finding that Micro Focus has infringed IBM's copyrights in the Works;

B. Finding that Micro Focus breached its contractual obligations under at least the PartnerWorld Agreement, CRA, CRA Attachment, and CRA Addendum;

C. Finding a substantial likelihood that Micro Focus will continue to infringe IBM's intellectual property and breach IBM's agreements unless enjoined from doing so;

D. Issuing a preliminary and/or permanent injunction enjoining Micro Focus and its agents, servants, employees, attorneys, successors and assigns, and all persons, firms and corporations acting in concert with it, from: (1) directly or indirectly infringing IBM's copyrights, including, but not limited to, reproducing, distributing creating derivative works based upon, publicly performing or displaying any of IBM's computer programs; and (2) continuing to breach the agreements with IBM by, among other things, copying IBM's software and using its pirated software for its own financial benefit;

E.   Ordering Micro Focus to render a full and complete accounting to IBM for Micro Focus's profits, gains, advantages or the value of the business opportunities received from the foregoing acts of infringement;

F.   Entering judgment for IBM against Micro Focus for all damages suffered by IBM and for any profits or gain by Micro Focus attributable to the infringement of IBM's Works;

G.   Entering judgment against Micro Focus for monetary damages to compensate IBM for the harms described above, which may include the value of the software taken, IBM's lost profits, unjust enrichment and disgorgement of profits, and expenses incurred by IBM in investigating Micro Focus's misconduct;

H.   Entering judgment for IBM against Micro Focus for statutory damages based upon Micro Focus's willful acts of infringement pursuant to the Copyright Act, 17 U.S.C. § 101 *et seq.*;

I.   Awarding IBM costs and disbursements of this action, including reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505;

J.   Awarding IBM pre-judgment and post-judgment interest, to the fullest extent available, on the foregoing; and

K.   Grant such other, further, and different relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands trial by jury on all issues so triable in this action.

Dated:  January 6, 2023

/s/ *Joshua L. Simmons*
Dale M. Cendali
Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-6460
dale.cendali@kirkland.com
joshua.simmons@kirkland.com

James John Lomeo (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
Telephone:  512) 678-9100
Facsimile: (512) 678-9101
james.lomeo@kirkland.com

*Attorneys for Plaintiff*