**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IBM CORPORATION,

          Plaintiff.

v.

MICRO FOCUS (US), INC.

          Defendant.

Case No. 7:22-cv-09910-VB

Judge Vincent L. Briccetti

**FILED UNDER SEAL**

**KIRKLAND & ELLIS LLP'S OPPOSITION TO**
**MICRO FOCUS'S MOTION TO DISQUALIFY COUNSEL**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

BACKGROUND ..................................................................................................2

    A.     Micro Focus Retains Kirkland and Consents to Future Conflicts. ..........................2

    B.     Kirkland Represents Micro Focus in Matters that Are Not Substantially Related to the Present Dispute. ...................................................................5

    C.     Kirkland's Representation of IBM.........................................................6

ARGUMENT ....................................................................................................7

I.     Micro Focus Consented to Kirkland Representing Direct Adversaries in Litigation..................................................................................9

    A.     Advance Waivers Are Ethically Permissible and Routinely Upheld.....................9

    B.     The Waiver Here Easily Satisfies the Ethical Requirements.............................13

    C.     This Matter is Not "Substantially Related" to Kirkland's Representation of Micro Focus. ..................................................................................16

          1.     The *Wapp* litigation is not substantially related to this litigation. .............20

          2.     The prior securities litigation is not substantially related to this litigation. ..................................................................................20

          3.     Kirkland's prior transactional, debt and restructuring work is not substantially related to this litigation. ......................................................21

          4.     Kirkland's collateral advice about the effect of a pending merger on existing financing is not substantially related to this litigation............22

II.    Even in the Absence of an Advance Waiver, Disqualification Is Unwarranted. ...............22

CONCLUSION.................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

*Abdo v. Fitzsimmons*, No. 17-CV-00851, 2017 WL 6997936 (N.D. Cal. July 7, 2017) ............... 8

*Bd. of Educ. of N.Y. v. Nyquist*, 590 F.2d 1241 (2d Cir. 1979) ........................................ 7

*Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759 (2d Cir. 1990) ............................... 7

*Bos. Sci. Corp. v. Johnson & Johnson Inc.*, 647 F. Supp. 2d 369 (D. Del. 2009) ........................ 24

*Dunlap v. State Farm Fire & Cas. Co.*, No. 504, 2008 WL 2415043 (Del. May 6, 2008) .......... 23

*Elonex I.P. Holdings, Ltd. v. Apple Comput., Inc.*, 142 F. Supp. 2d 579 (D. Del. 2001) ............. 23

*Emps. Ins. Co. of Wausau v. Munich Reinsurance Am., Inc.*, No. 10 Civ. 3558,
2011 WL1873123 (S.D.N.Y. May 16, 2011) ........................................................ 19

*End of Rd. Tr. v. Terex Corp.*, No. 99-477, 2002 WL 242464 (D. Del. Feb. 20, 2002). .......... 8, 24

*Fisons Corp. v. Atochem N. Am., Inc.*, No. 90 civ. 1080, 1990 WL 180551
(S.D.N.Y. Nov. 14, 1990) ............................................................................ 13

*Galderma Laboratories, L.P. v. Actavis Mid Atlantic LLC*,
927 F. Supp. 2d 390 (N.D. Tex. 2013) ................................................ 12, 13, 15, 16

*Gen. Cigar Holdings, Inc. v. Altadis, S.A.*, 144 F. Supp. 2d 1334 (S.D. Fla. 2001) .................... 13

*Government of India v. Cook Indus., Inc.*, 569 F.2d 737 (2d Cir. 1978) ..................................... 18

*Hickman v. Burlington Bio-Med. Corp.*, 371 F. Supp. 2d 225 (E.D.N.Y. 2005) .......................... 18

*HLP Properties, LLC v. Consol. Edison Co.*, No. 14 Civ. 01383, 2014 WL 5285926
(S.D.N.Y. Oct. 16, 2014) .............................................................................. 23

*In re Appeal of Infotechnology, Inc.*, 582 A.2d 215 (Del. 1990) ..................................... 8

*In re Boy Scouts*, 630 B.R. 122 (D. Del. 2021) ................................................... 8, 23, 25

*In re Fisker Automotive Holdings, Inc. Shareholder Litigation*, No. 13-2100,
2018 WL 3991470 (D. Del. Aug. 20, 2018) ............................................... 12, 15, 16

*Indig v. Village of Pomona*, No. 18 CV 10204 (VB), 2019 WL 2482202
(S.D.N.Y. June 14, 2019) ........................................................................ 7, 22

**Cases Continued** **Page**

*Kennecott Copper Corp. v. Curtiss-Wright Corp.*, No. 78-cv-1295
(S.D.N.Y. Apr. 11, 1978) .................................................................................. 13

*Macheca Transp. Co. v. Phila. Indem. Co.*, 463 F.3d 827 (8th Cir. 2006) ................................... 24

*Med. Diagnostic Imaging, PLLC v. CareCore Nat'l, LLC*, 542 F. Supp. 2d 296
(S.D.N.Y. 2008) ................................................................................................ 18

*Nestor v. Putney Twombly Hall & Hirson, LLP*, 153 A.D.3d 840 (N.Y. App. Div. 2017) ........... 8

*Network Apps, LLC v. AT&T Mobility LLC*, 598 F. Supp. 3d 118 (S.D.N.Y. 2022) .................. 20

*NRT Tech. Corp. v. Everi Holdings Inc.*, No. 19-804, 2021 WL 765758
(D. Del. Feb. 26, 2021) .................................................................................... 18

*Olajide v. Palisades Collection, LLC*, No. 15-CV-7673, 2016 WL 1448859
(S.D.N.Y. Apr. 12, 2016) ........................................................................... 18, 19

*Purgess v. Sharrock*, 33 F.3d 134 (2d Cir. 1994) ........................................................... 22

*Regalo Int'l, LLC v. Munchkin, Inc.*, 211 F. Supp. 3d 682 (D. Del. 2016) ........................... 18, 19

*Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381
(S.D.N.Y. 2010) .......................................................................................... 20, 21

*Rohm & Haas Co. v. Dow Chem. Co.*, No. CIV.A. 4309, 2009 WL 445609
(Del. Ch. Feb. 12, 2009) .................................................................................. 23

*Scantek Med., Inc. v. Sabella*, 693 F. Supp. 2d 235 (S.D.N.Y. 2008) .................................. 7, 21

*Scienton Technologies, Inc. v. Comput. Assocs. Int'l, Inc.*, No. CV 04-2652,
2007 WL 9724689 (E.D.N.Y. May 23, 2007) ................................................... 20

*Sonos, Inc. v. D & M Holdings Inc.*, No. 14-1330, 2015 WL 5277194
(D. Del. Sept. 9, 2015) .............................................................................. 18, 20

*Streichert v. Town of Chester*, No. 19-CV-7133, 2021 WL 735475
(S.D.N.Y. Feb. 25, 2021) ..................................................................... 17, 20, 21, 25

*TQ Delta, LLC v. 2WIRE, Inc.*, No. CV 13-1835, 2016 WL 5402180
(D. Del. Sept. 26, 2016). .................................................................................. 24

*Unanue v. Unanue*, No. CIV.A. 204-N, 2004 WL 602096 (Del. Ch. Mar. 25, 2004) ...... 22, 23, 24

**Cases Continued**                                                                      **Page**

*United States v. Abdelaziz*, No. CR 19-10080, 2020 WL 618697 (D. Mass. Feb. 10, 2020) ....... 13

*United States v. Hatfield*, No. 06-CR-0550, 2009 WL 3806300
   (E.D.N.Y. Nov. 13, 2009) ................................................................................ 13, 16

*United States v. Miller*, 624 F.2d 1198 (3d Cir. 1980) ................ 23

*Vestron, Inc. v. Nat'l Geographic Soc'y*, 750 F. Supp. 586 (S.D.N.Y. 1990) ............................ 19

*Victorinox AG v. B&F Sys., Inc.*, 709 F. App'x 44 (2d Cir. 2017) ........................................... 8, 23

*Walker Digit., LLC v. Axis Commc'ns AB*, No. 1:11-cv-558, 2012 WL 5878668
   (D. Del. Nov. 21, 2012) ................................................................................ 18

*Wyeth v. Abbott Lab'ys*, 692 F. Supp. 2d 453 (D.N.J. 2010) ...................................... 24

## Other Authorities

ABA Comm. on Pro. Ethics & Grievances, Formal Op. 436 (2005) ......................................... 12

N.Y. City Bar Ass'n Formal Op. 2006-1 (2006) ............................................................ 11, 15, 17

N.Y. Comm. on Pro. Ethics, Op. 990 (2013) ................................................................ 11, 14, 15, 16

## Rules

Model Rules of Pro. Conduct r. 1.0 ................................................................................ 13

Model Rules of Pro. Conduct r. 1.7 ................................................................................ 10

Del. Rules of Pro. Conduct r. 1.7 ................................................................................ 10, 12, 14, 15

Del. Rules of Pro. Conduct r. 1.9 ................................................................................ 17

N.Y. Rules of Pro. Conduct r. 1.7 ................................................................................ 10, 14, 15, 16

N.Y. Rules of Pro. Conduct r. 1.9 ................................................................................ 17

N.Y. Rules of Pro. Conduct r. 3.7 ................................................................................ 22

## INTRODUCTION

Nowhere in its lengthy motion to disqualify Kirkland & Ellis does Micro Focus even mention that it *expressly consented* to Kirkland representing other clients directly adverse to it in litigation.  The heavily negotiated engagement letters between Kirkland and Micro Focus contain robust "advance waivers" specifically agreeing that such representations are permissible if they are not "substantially related" to Kirkland's Micro Focus work.  As part of the advance waivers, Micro Focus also promised not to assert that matters are substantially related simply because Kirkland "came to possess confidential information" during its work for Micro Focus.  Micro Focus was represented by in-house counsel when it negotiated and agreed to these waivers.

Micro Focus cannot disavow this contract.  The ethics rules, authorities, and caselaw confirm that advance waivers are permissible when the client gave informed consent.  As a highly sophisticated consumer of legal services, Micro Focus negotiated the waiver terms— down to the names of specific Kirkland lawyers who were not permitted to work on adverse matters—and agreed to those terms with a full understanding of the risks and in consultation with in-house lawyers.  Nor can Micro Focus's counsel, Venable LLP, dispute these principles: A prominent case sustaining an advance waiver concerns a Venable engagement letter.

Micro Focus also cannot argue that this lawsuit is "substantially related" to Kirkland's representations of Micro Focus.  That seems to be Micro Focus's position, though it does not say so because it does not acknowledge the advance waivers.  "Substantially related" is a term of art derived from the former-client conflict-of-interest rule, and requires a close factual connection between the two matters.  Kirkland's (mostly concluded) matters for Micro Focus are not substantially related to this matter because they did not concern the same intellectual property at issue here and Kirkland would not have received confidential information during its work on those matters that it could use in this case.  Merely receiving confidential information about a

1

client's business and the way it approaches litigation is not sufficient.  And although Micro Focus does not allege that Kirkland received any of its confidential information about the relevant intellectual property, even if it had, Micro Focus agreed that it "will not assert" that a matter is "substantially related" merely because Kirkland received confidential information.

Finally, and equally importantly, the Court need not even confront these issues to deny Micro Focus's motion.  Disqualification is an extraordinary and disfavored remedy even where there is an unconsented-to conflict of interest.  Authorities in both Delaware—the law that applies pursuant to the engagement letter—and New York make clear that counsel should be disqualified only when a conflict of interest prejudices the movant and taints the trial.  Here, Micro Focus will suffer no prejudice if Kirkland remains IBM's counsel because the matters are unrelated and an ethical screen is in place.  In contrast, IBM would be severely prejudiced if it is deprived of its chosen counsel in this lawsuit, which requires highly specialized expertise.

Included with Kirkland's opposition are declarations from recognized legal ethics experts in New York and Delaware.  *See* Decl. of Bruce Green, Fordham University Law School; Decl. of Luke W. Mette, former Chief Disciplinary Counsel, Supreme Court of Delaware.  Both experts confirm that Kirkland's representation of IBM is ethically proper and there is no basis for disqualification.

## BACKGROUND

### A.    Micro Focus Retains Kirkland and Consents to Future Conflicts.

It is undisputed that the relationship between Micro Focus and Kirkland is governed by two, heavily-negotiated engagement letters, both signed by sophisticated Micro Focus executives, one of them a lawyer.  Micro Focus's motion affirmatively relies on those engagement letters, Mot. 5, which are not merely form agreements.  But Micro Focus does not mention that the letters contain detailed waivers that expressly permit Kirkland, while

representing Micro Focus, to represent other clients in litigation directly adverse to Micro Focus. They specifically state that Micro Focus (1) "will not assert" that Kirkland's work for Micro Focus is a basis for disqualification from any "Allowed Adverse Representation," defined as a matter not "substantially related" to Kirkland's work for Micro Focus; and (2) "will not assert that any matter is substantially related . . . simply because during our work we came to possess confidential information."  Micro Focus now asserts precisely the propositions it promised it "will not assert," and without even mentioning the advance waivers.

*      *      *      *      *

In August 2016, Kirkland and Micro Focus signed a detailed engagement letter that contained the following waivers:

> We may be requested to act for other current or future clients on other matters where the interest of those other clients may be adverse to you.  And we may currently be involved in such representations.  ***You agree that we may represent such other clients in any existing or future matters that are directly adverse to you provided such matters are not substantially related to the legal services that we are rendering or will render to you in the Engagement;*** and provided further that none of William Sorabella, David Feirstein, Dean Shulman, Ian John or Chris Butler would be involved in any way with regard to such matters (an "Allowed Adverse Representation").  By way of example, such Allowed Adverse Representations might take the form of, among other contexts: litigation (including arbitration, mediation and other forms of dispute resolution); transactional work (including consensual and non-consensual M&A transactions); counselling (including advising direct adversaries and competitors); and restructuring (including bankruptcy, insolvency, financial distress, recapitalization, equity and debt workouts, and other transactions or adversarial adjudicative proceedings related to any of the foregoing and similar matters).

> You will not assert that our representation of you is a basis to disqualify us from an Allowed Adverse Representation or that our work for another client breaches any duties to you.  ***Nor will you assert that a matter is substantially related, and thus not an Allowed Adverse Representation, simply because during our work we came to possess confidential information*** (recognizing, of course, that we will abide by our legal and ethical duties to protect your confidences).

> You have considered the pros and cons of waiving conflicts of interests and recognize the inherent uncertainty about the array of potential matters and clients

3

we might take on, but nonetheless have decided, with the opportunity to consult other counsel, that to secure our services instead of another firm, it is in your interest to waive conflicts of interest as described above.

Decl. of Dean S. Shulman, Ex. A [hereinafter "Ex. A"]; *see id.* ¶ 2.  The letter was negotiated by Micro Focus's Group General Counsel, Jane Smithard, who specifically requested that the waiver include the names of lawyers who could not be involved with an adverse matter.  *Id.* ¶¶ 3–4.[1]  The letter was signed by Kevin Loosemore, then-Executive Chairman of Micro Focus International PLC.  *Id.* ¶ 3.

In November 2021, Micro Focus and Kirkland signed a 17-page Master Retention Agreement (MRA), which Micro Focus prepared on its letterhead.  This letter too was negotiated.  *See* Decl. of Matthew Solum, ¶ 3.  At Kirkland's request, the agreement provided that "[t]he terms of the 2016 Agreement shall govern regarding conflicts of interest . . . and shall supersede [the applicable conflict-of-interest provisions in the MRA] to the extent there is any conflict."  Solum Decl., Ex. B [hereinafter "Ex. B"]; *see id.* ¶ 3.  The parties thereby reaffirmed the terms of the conflict-of-interest waiver in the parties' August 2016 agreement.  The MRA was signed by Courtney Wood, a lawyer and Associate General Counsel for Micro Focus International.  *Id.* ¶ 3.  It provides that disputes are to be resolved in Delaware Courts under Delaware law.  Ex. B.

Micro Focus's motion acknowledges that both engagement letters "remain in effect" and recognizes that Delaware law controls this dispute.  Mot. 2 & n.3, 5.  Yet, just as Micro Focus fails to mention the advance waiver, it also ignores the choice-of-forum clause that required it to

---

[1] The five named Kirkland lawyers are not involved in this lawsuit on behalf of IBM.

resolve this dispute in a Delaware court.  Ex. B.[2]

**B.    Kirkland Represents Micro Focus in Matters that Are Not Substantially Related to the Present Dispute.**

Micro Focus is one of Kirkland's many clients and Kirkland is one of many law firms that Micro Focus has retained over the years.  *See* Decl. of Aaron Lorber, ¶ 4.  Although Micro Focus does not acknowledge that it consented to Kirkland's adverse representation in litigation not "substantially related" to its work for Micro Focus, it points to several matters that Kirkland handled for Micro Focus and implies they may be related to this case.  They are not.  *See infra* pp. 16–22.  These matters are:

- Kirkland represented Micro Focus in 2016 as transaction counsel in acquiring Hewlett Packard Enterprise's software business.  *See* Lorber Decl., ¶¶ 2, 5.  Micro Focus has not suggested (and Kirkland is without knowledge) that any of the same intellectual property is at issue in this case.  *Id.* ¶¶ 5–6.

- Kirkland attorneys have advised Micro Focus on credit facilities. ███████████████████████████████████████████████████████  Decl. of Norman Christopher Butler, ¶ 2.  Again, the disqualification motion does not suggest that any of this work involved the same intellectual property at issue in this case, and Kirkland has no knowledge of any possible connection.  *Id.* ¶¶ 5–7.

- Kirkland represented Micro Focus in three litigations.  *See* Solum Decl., ¶¶ 5, 8.  Two of these matters, *In re Micro Focus International PLC*, No. 1:18-cv-06763 (S.D.N.Y.), and *In re Micro Focus International PLC Securities Litigation*, No. 18-cv-1549 (Cal. Sup. Ct.), were securities fraud cases stemming from Micro Focus's issuance of American Depositary Receipts.  Solum Decl., ¶ 5.  Micro Focus does not allege that these cases involved the same software that is the subject of IBM's complaint, or that technical details about any software were relevant to that representation.  *Id.* ¶ 8.  Micro Focus replaced Kirkland as its counsel in May/June 2022.  *Id.* ¶ 7.

- In the third case, *Wapp Tech Ltd. Partnership v. Micro Focus International PLC*, No. 4:18-cv-469 (E.D. Tex.), Kirkland assisted with Micro Focus's post-trial motion after a jury verdict.  Solum Decl., ¶ 9.  Again, Micro Focus does not allege that the *Wapp*

---

[2] Kirkland has no objection to this Court resolving the present motion in this forum.  Nor would it object if this Court were to have a Delaware court resolve this motion.

litigation had anything to do with the software at issue here.  The matter settled before an appeal was taken.  *Id.*

Micro Focus has not hired Kirkland for new matters since turning to another firm in the securities litigation.  *See* Lorber Decl., ¶ 9.  Kirkland's recent Micro Focus work has been largely related to legacy matters.  *Id.* ███████████████████████ *Id.*  And it has responded to a discrete question from Micro Focus ████████████████████████████████ ████████████████  *See* Butler Decl., ¶ 4.  Micro Focus characterizes this work as "integral" to the Open Text deal, Mot. 4, but in fact, Kirkland's lead attorney on that matter only learned of the Open Text transaction after it became public, Butler Decl., ¶ 4.  Regardless, none of this work remotely relates to the inner workings of any software, much less that at issue here. *Id.* ¶¶ 5–6.

## C.    Kirkland's Representation of IBM

IBM Corporation (IBM) has been a Kirkland client for decades.  Decl. of Joshua L. Simmons, ¶ 2.  Simmons, and fellow Kirkland partner Dale Cendali, have represented IBM on numerous matters before representing IBM in this litigation.  *Id.*  In the fall of 2022, Kirkland began representing IBM in connection with a then-potential copyright and breach of contract action against Micro Focus.  *Id.* ¶¶ 3–4.

The Complaint here was filed on November 21, 2022, and the operative Amended Complaint ("Complaint") was filed on January 6, 2023.  *Id.* ¶¶ 5–6.  Both pleadings are limited to specific IBM intellectual property that Micro Focus copied.  Am. Compl., ¶ 38, ECF No. 39. The Complaint alleges Micro Focus Enterprise Server and Micro Focus Enterprise Developer (collectively, "Micro Focus Enterprise Suite") copied aspects of IBM's "CICS® TS" programs, which enable IBM customers to "work online and across various platforms."  *Id.* ¶¶ 21–26, 37- 39; *see* Simmons Decl., ¶ 5.

Although none of Kirkland's work for Micro Focus bears any relationship to this matter, Kirkland has erected an ethical screen to ensure that there is no information exchanged between the lawyers representing Micro Focus and IBM's counsel in this case.  Lorber Decl., ¶ 13.

On November 27, 2022, Micro Focus's counsel sent Kirkland a letter that alleged Kirkland had "a conflict of interest problem" and demanded that Kirkland explain by December 14, 2022, why it should not be disqualified.  Simmons Decl., ¶ 7.  On December 8, 2022, Kirkland informed Micro Focus's counsel that it would respond by the December 14 "deadline." *Id.* ¶ 8.  Nonetheless, on December 9, 2022, five days before Micro Focus's "deadline" and before Kirkland had responded, Micro Focus filed the present motion.  *Id.*

IBM has informed Kirkland that it wants Kirkland to continue representing it in this matter, as it would be prejudiced by losing its longtime and chosen counsel.  *Id.* ¶ 13.

## ARGUMENT

Disqualification motions "are subject to particularly strict scrutiny" because of their "potential for abuse as a litigation tactic," *Scantek Med., Inc. v. Sabella*, 693 F. Supp. 2d 235, 238 (S.D.N.Y. 2008), and because there is "an immediate adverse effect on the client by separating him from counsel of his choice," *Indig v. Village of Pomona*, No. 18 CV 10204 (VB), 2019 WL 2482202, at *2 (S.D.N.Y. June 14, 2019) (quoting *Bd. of Educ. of N.Y. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)).  Accordingly, "the movant must meet a high standard of proof." *Id.* (citation omitted).  "Disqualification is warranted only if an 'attorney's conduct tends to taint the underlying trial,'" *id.* (quoting *Nyquist*, 590 F.2d at 1246), that is, "where an attorney's conflict of interests . . . undermines the court's confidence in the vigor of the attorney's representation," or puts the attorney "in a position to use privileged information concerning the other side through prior representation," *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764–65 (2d Cir. 1990) (cleaned up).

7

The standard for disqualification is, if anything, even higher in Delaware, the jurisdiction whose law governs pursuant to the engagement letter.[3]  Disqualification in Delaware is inappropriate "unless the challenged conduct prejudices the fairness of the proceedings." *In re Appeal of Infotechnology, Inc.*, 582 A.2d 215, 216 (Del. 1990).  It is "an extreme remedy" that is "never automatic." *In re Boy Scouts*, 630 B.R. 122, 134 (D. Del. 2021) (cleaned up); *see End of Rd. Tr. v. Terex Corp.*, No. 99-477, 2002 WL 242464, at *2 (D. Del. Feb. 20, 2002).  Courts evaluate disqualification motions with "'cautious scrutiny,' mindful of a litigant's right to the counsel of its choice." *In re Boy Scouts*, 630 B.R. at 134 (citation omitted).  There is thus an "overwhelming body of caselaw" in which courts have denied such motions in cases where, unlike this one, there "appear[ed] to be obvious conflicts." *Id.* at 135 (citation omitted).  Courts are afforded "wide discretion" when ruling on disqualification motions. *Id.* at 134 (citation omitted); *see Victorinox AG v. B&F Sys., Inc.*, 709 F. App'x 44, 53 (2d Cir. 2017).

Micro Focus's motion should be denied for two reasons.  *First*, Micro Focus consented to this representation.  Micro Focus is a highly sophisticated user of legal services with its own in-house counsel.  It entered into two separate, extensively negotiated agreements that expressly permitted Kirkland to represent adverse parties in litigation.  Pertinent ethics authorities and numerous courts have found such waivers appropriate—particularly where, as here, the client was fully informed and sophisticated.  In fact, Micro Focus agreed not to "assert" what it argues

---

[3] Micro Focus does not dispute that Delaware law governs this motion.  Mot. 2 n.3.  A contractual choice of law provision is binding on the parties, *see Nestor v. Putney Twombly Hall & Hirson, LLP*, 153 A.D.3d 840, 842 (N.Y. App. Div. 2017), and there should be no dispute that the provision applies to this disqualification motion, where the contract specifically discusses the terms under which Micro Focus "will not assert" that Kirkland's representation is a basis for disqualification, Ex. A; *see also Abdo v. Fitzsimmons*, No. 17-CV-00851, 2017 WL 6997936, at *3 (N.D. Cal. July 7, 2017) ("parties may stipulate to the application of another forum's law" for disqualification motions).

here:  that Kirkland's representation is impermissible simply because Kirkland received Micro

Focus's confidential information.  The attached opinions from leading ethics experts confirm that

Kirkland's conduct was entirely proper.

*Second*, Micro Focus has not come close to making the showing required to disqualify

counsel even in cases where (unlike here) a conflict exists.  Nothing about Kirkland's prior

matters will even remotely "taint" this proceeding or cause any unfair prejudice to Micro Focus.

In contrast, IBM would be severely prejudiced—for no good reason—by losing its chosen

counsel who have prepared and filed this complex litigation.

## I.      Micro Focus Consented to Kirkland Representing Direct Adversaries in Litigation.

This Court can resolve this motion based solely on the detailed and carefully negotiated

waiver that Micro Focus agreed to on two separate occasions.  Ethics rules in Delaware and New

York approve of advance-waiver agreements.  Indeed, Micro Focus's counsel Venable LLP uses

such waivers and the Eastern District of New York recently enforced one.

### A.      Advance Waivers Are Ethically Permissible and Routinely Upheld.

Ethics rules and opinions—including formal opinions by the American Bar Association,

the New York State Bar Association, and the New York City Bar Association—recognize that

advance waivers are enforceable when the client understands the risks.  Courts throughout the

country have thus routinely upheld such waivers as to sophisticated signatories like Micro Focus.

1.      Both New York and Delaware have adopted Rule of Professional Conduct 1.7,

which permits attorneys to represent concurrent clients if (1) the lawyer "reasonably believes that

[he] will be able to provide competent and diligent representation to each affected client,"

(2) "the representation is not prohibited by law," (3) "the representation does not involve the

assertion of a claim by one client against another client represented by the lawyer in the same

litigation," and (4) "each affected client gives informed consent, confirmed in writing."  N.Y.

Rules of Pro. Conduct r. 1.7(b); Del. Rules of Pro. Conduct r. 1.7(b); *see* Model Rules of Pro.

Conduct r. 1.7(b).  Only the final requirement—informed consent—is potentially at issue here.

Like many other states and the ABA Model Rules, New York and Delaware permit

attorneys to waive conflicts before they arise.  Comment 22 to Rule 1.7 explains:

> Whether a lawyer may properly request a client to waive conflicts that might arise
> in the future is subject to the conditions set forth in paragraph (b). ***The effectiveness
> of advance waivers is generally determined by the extent to which the client
> reasonably understands the material risks that the waiver entails****.  At a minimum,
> the client should be advised generally of the types of possible future adverse
> representations that the lawyer envisions, as well as the types of clients and matters
> that may present such conflicts.  The more comprehensive the explanation and
> disclosure of the types of future representations that might arise and the actual and
> reasonably foreseeable adverse consequences of those representations, the greater
> the likelihood that the client will have the understanding necessary to make the
> consent "informed" and the waiver effective.  *See* Rule 1.0(j).  The lawyer should
> also disclose the measures that will be taken to protect the client should a conflict
> arise, including procedures such as screening that would be put in place.  *See* Rule
> 1.0(t) for the definition of "screening."  ***The adequacy of the disclosure necessary
> to obtain valid advance consent to conflicts may also depend on the sophistication
> and experience of the client.***  For example, if the client is unsophisticated about
> legal matters generally or about the particular type of matter at hand, the lawyer
> should provide more detailed information about both the nature of the anticipated
> conflict and the adverse consequences to the client that may ensue should the
> potential conflict become an actual one.  In other instances, such as where the client
> is a child or an incapacitated or impaired person, it may be impossible to inform the
> client sufficiently, and the lawyer should not seek an advance waiver.  ***On the other
> hand, if the client is an experienced user of the legal services involved and is
> reasonably informed regarding the risk that a conflict may arise, an advance
> waiver is more likely to be effective, particularly if, for example, the client is
> independently represented or advised by in-house or other counsel in giving
> consent.  Thus, in some circumstances, even general and open-ended waivers by
> experienced users of legal services may be effective.***

N.Y. Rules of Pro. Conduct r. 1.7 cmt. 22 (emphases added); Del. Rules of Pro. Conduct r. 1.7

cmt. 22 (substantially similar); *see* Model Rules of Pro. Conduct r. 1.7 cmt. 22 (substantially

similar).

The New York City Bar Association has opined that a law firm may request an advance

waiver if "the law firm makes appropriate disclosure of, and the client is in a position to

understand, the relevant implications, advantages, and risks, so that the client may make an informed decision whether to consent."  N.Y. City Bar Ass'n Formal Op. 2006-1 (2006), at 1 [hereinafter "NYCBA Op. 2006-1"].  The opinion recognized that some of the information that might be disclosed to a client in other circumstances "is typically not known at the time the advance waiver is sought."  *Id.* at 9.  But that does not mean an advance waiver is ineffective, particularly when the client is sophisticated.  A sophisticated client is one that "readily appreciates the implications of conflicts and waivers" and that "regularly engage[s] outside counsel for legal services, or that [has] access to independent or inside counsel for advice on conflicts."  *Id.* at 2 n.1.  For sophisticated clients, even "blanket or open-ended advanced waivers that are accompanied by *relatively limited disclosure about the prospective conflicting matters* should . . . be enforceable."  *Id.* at 10 (emphasis added).  The New York State Bar Association has reasoned similarly.  *See* N.Y. Comm. on Pro. Ethics, Op. 990, at 4 (2013) [hereinafter "NYSBA Op. 990"] ("[T]he effectiveness of advance conflict waivers is generally determined by the extent to which the client reasonably understands the material risks," which "depends on the [client's] sophistication.").  Bruce Green, a leading New York ethicist, thus concludes that "in the case of sophisticated clients," a waiver may "be given in general terms at the time of the engagement, even before a conflict of interest specifically emerges."  Green Decl., ¶ 11.

Delaware's rules are materially identical to New York's—and, as discussed below, one of the leading cases enforcing an advance waiver is from Delaware.  The attached opinion by Luke Mette, a leading Delaware ethicist, states unequivocally that in Delaware "[i]nformed consent, confirmed in writing, can take the form of an 'advance waiver.'"  Mette Decl., ¶ 29.  He further states, "if the client agrees to consent to a particular type of conflict with which the client is already familiar, then the consent ordinarily will be effective with regard to that type of

conflict.". *Id.* ¶ 30 (quoting Del. Rules of Pro. Conduct r. 1.7 cmt. 22).[4]

2.      A growing number of courts have upheld advance waivers against sophisticated clients like Micro Focus.  That includes courts in Delaware and New York.

In *In re Fisker Automotive Holdings, Inc. Shareholder Litigation*, a Delaware district court interpreting the ABA Model Rules upheld an advance waiver in Gibson, Dunn & Crutcher LLP's engagement letter.  No. 13-2100, 2018 WL 3991470, at *1 (D. Del. Aug. 20, 2018).  That provision, like the one at issue here, allowed Gibson to "represent any 'existing or new' client in any litigation or other matter adverse to [Atlas's] interests, so long as the matter was not substantially related to Gibson Dunn's representation of Atlas." *Id.* at *1–2.  The waiver was valid because the client had given its informed consent.  It (a) "identifie[d] a course of conduct for the parties" by making clear that Gibson could represent clients adverse to Atlas; (b) "explain[ed] the material risk to Atlas;" and (c) identified reasonably available alternatives. *Id.* at *4.  These facts, combined with the fact that the client was "experienced in hiring large national law firms," led the court to uphold the waiver.  *Id.*

*Fisker* relied heavily on *Galderma Laboratories, L.P. v. Actavis Mid Atlantic LLC*, the seminal advance waiver case.  927 F. Supp. 2d 390, 393 (N.D. Tex. 2013).  In that patent infringement case, the court declined to disqualify Vinson & Elkins LLP (V&E) based on a concurrent conflict because of an advance waiver.  *Id.* at 406.  The court stressed three points: *First*, the waiver expressly gave V&E "wide ranging freedom to represent other clients,

_____

[4] The American Bar Association's position is in accord:  "[A] lawyer in appropriate circumstances may obtain the effective informed consent of a client to future conflicts of interest."  ABA Comm. on Pro. Ethics & Grievances, Formal Op. 436 (2005) [hereinafter ABA Op. 5-436].  The ABA recognizes that "[g]eneral and open-ended consent is more likely to be effective when given by a client that is an experienced user of legal services, particularly if, for example, the client is independently represented by other counsel in giving consent and the consent is limited to future conflicts unrelated to the subject of the representation." *Id.*

including those whose interests conflict with Galderma." *Id.* at 399. *Second*, the waiver explained the material risks to Galderma by explaining "that agreeing to the waiver risk[ed] V&E advocating for another client directly against Galderma,"—precisely "the risk of which Galderma . . . claim[ed] they were not informed." *Id.* at 400. *Third*, the waiver explained the reasonably available alternatives, namely that Galderma could seek other counsel if it did not wish to consent. *Id.* The court separately stressed that Galderma was a sophisticated client that had its own legal department and an experienced general counsel. The court quoted ABA Model Rule 1.0, which provides that "a client . . . who is independently represented by other counsel in giving the consent *should be assumed* to have given informed consent." *Id.* at 403 (emphasis in original) (quoting Model Rules of Pro. Conduct r. 1.0 cmt. 6).

New York courts have likewise found advance waivers effective. *See Fisons Corp. v. Atochem N. Am., Inc.*, No. 90 civ. 1080, 1990 WL 180551, at *6 (S.D.N.Y. Nov. 14, 1990); *Kennecott Copper Corp. v. Curtiss-Wright Corp.*, No. 78-cv-1295, slip op. at 6–7 (S.D.N.Y. Apr. 11, 1978).[5] In *United States v. Hatfield*, the court enforced the advance waiver in Venable LLC's engagement letter and thus rejected the defendant's argument that Venable—Micro Focus's counsel here—was "hopelessly conflicted." No. 06-CR-0550, 2009 WL 3806300, at *13 (E.D.N.Y. Nov. 13, 2009). The court observed that the client "was a sophisticated businessman (who presumably understood that individuals can, by contract, agree to waive their rights)" and "had every opportunity to have his prospective waiver reviewed by counsel." *Id.*

### B.    The Waiver Here Easily Satisfies the Ethical Requirements.

The Micro Focus conflict-of-interest waiver fully complies with the Delaware and New

---

[5] So have courts elsewhere. *See United States v. Abdelaziz*, No. CR 19-10080, 2020 WL 618697, at *6 (D. Mass. Feb. 10, 2020) (enforcing advance waiver); *Gen. Cigar Holdings, Inc. v. Altadis, S.A.*, 144 F. Supp. 2d 1334, 1339 (S.D. Fla. 2001) (same).

York Rules and the various ethical opinions discussing advance waivers.

*First*, Micro Focus is a sophisticated user of legal services that understood the waiver and its implications.  *See* NYSBA Op. 990, at 1; N.Y. Rules of Pro. Conduct r. 1.7 cmt. 22; Del. Rules of Pro. Conduct r. 1.7 cmt. 22.  The Micro Focus organization is a multi-billion-dollar enterprise with over 11,000 employees in 48 countries.  *See* Mette Decl., ¶ 15; *see also Why Micro Focus*, Micro Focus International PLC (last visited January 13, 2023), www.microfocus.com.  Micro Focus regularly contracts for legal services with top-tier law firms.[6]  The engagement letters here were negotiated by Micro Focus's in-house lawyers and signed by sophisticated corporate representatives—the former Executive Chairman of Micro Focus International and Micro Focus's Associate General Counsel.  *See* Shulman Decl., ¶ 3; Solum Decl., ¶ 3.

*Second*, the waiver was specifically negotiated and not simply boilerplate.  The waiver expressly names five specific Kirkland attorneys who Micro Focus insisted could not work on any matter directly adverse to Micro Focus, showing that Micro Focus gave careful thought to the waiver.  *See* Shulman Decl., ¶ 4.  It then was incorporated by reference in the MRA, which was prepared by Micro Focus on its own letterhead.  Ex. B; *see* NYSBA Op. 990, at 4.  In both instances, there were significant negotiations between Kirkland and Micro Focus's in-house attorneys.  *See* Shulman Decl., ¶ 3; Solum Decl., ¶ 3.   In particular, Kirkland insisted on reaffirming the advance waiver from the 2016 engagement letter survived, and rejected Micro Focus's original draft that included different conflicts provisions.  *See* Solum Decl., ¶ 3.

---

[6] *See Micro Focus (US), Inc. v. Thryv, Inc.*, No. 8:21-cv-01908 (D. Md.) (**Venable**); *In re Trinity Millennium Grp., Inc.*, No. 416-00827-2021 (Tex. Dist. Ct.) (**DLA Piper**); *COX Commc'ns, Inc. v. Micro Focus (US), Inc.*, No. 2020CV342616 (Ga. Super. Ct.) (**Holland & Knight**); *Micro Focus's $6 Billion Acquisition by Open Text*, Cravath (last visited Jan. 10, 2023), https://tinyurl.com/5cs2d6xz (**Cravath**).

*Third*, the waiver is thorough and specific.  It provides that Micro Focus was consenting to Kirkland representing adverse parties, and explicitly extends to adverse "*litigation* (including arbitration, mediation and other forms of dispute resolution)."  Ex. A (emphasis added); *see* NYSBA Op. 990, at 1; N.Y. Rules of Pro. Conduct r. 1.7 cmt. 22; Del. Rules of Pro. Conduct r. 1.7 cmt. 22.  The waiver is limited to matters that are "not substantially related to the legal services that we are rendering or will render to you in the Engagement," Ex A, which makes it "particularly likely to be effective," *Galderma*, 927 F. Supp. 2d at 397 ("consent is particularly likely to be effective when . . . limited to future conflicts unrelated to the subject of the representation"); NYCBA Op. 2006-1; *see* Green Decl., ¶ 14.

*Fourth*, the waiver advised Micro Focus of the material risks.  *See In re Fisker*, 2018 WL 3991470, at *4.  It states that Kirkland may represent parties directly adverse to Micro Focus, including in litigation.  Ex. A.  The waiver states that Micro Focus forgoes the right to disqualify Kirkland based merely on the existence of confidential information.  *Id.*  And by signing, Micro Focus acknowledged that it "considered the pros and cons of waiving conflicts" and "recognize[d] the inherent uncertainty about the array of potential matters and clients [Kirkland] might take on" in the future.  *Id.*  "There is [thus] no reason to question the adequacy of Micro Focus's understanding [of the waiver's] risks and implications."  Green Decl., ¶ 14.

*Fifth*, Micro Focus was expressly given "the opportunity to consult other counsel" before signing.  Ex. A; *see Galderma*, 927 F. Supp. 2d at 403 ("When the client has the benefit of its own lawyer, who is bound by and familiar with the same ethical obligations of the lawyers seeking a waiver, less disclosure is needed").  Micro Focus regularly hires large firms and has a sizeable legal department.  Lorber Decl., ¶ 4.  Its lawyers plainly understood the import of the waiver.  Indeed, in-house lawyers routinely negotiate engagement letters, meaning Micro

15

Focus's attorneys likely had extensive experience with advance waivers.

*Sixth*, the waiver adequately explained the available alternatives.  Just like in *Galderma*, the waiver here advised Micro Focus that "the alternative course of conduct is for [Micro Focus] to hire other counsel."  927 F. Supp. 2d at 400.  That is, Micro Focus agreed "that to secure [Kirkland's] services instead of another firm, it [was] in [its] interest to waive conflicts of interest."  Ex. A.  It should be held to that agreement now.

*Finally*, the waiver states that Micro Focus's confidences will be respected in any adverse representation.  Ex. A; *see* NYSBA Op. 990, at 1.  There has been no misuse of Micro Focus's confidential information (which is immaterial to this dispute in any event), and "Kirkland is preserving Micro Focus's confidential information by implementing a screening process" so that confidential information "from Micro Focus will not be disclosed."  Green Decl., ¶ 16; N.Y. Rules of Pro. Conduct r. 1.7 cmt. 22; *see* Lorber Decl., ¶ 13 (describing Kirkland's screen).

In sum, the waiver here should be enforced for the same reasons as the waivers in *Galderma*, *In re Fisker*, and *Hatfield*.  Micro Focus is a sophisticated party.  It fully understood the risks, and Kirkland made clear that it would not take Micro Focus as a client without the waiver.  Having secured Kirkland's services through that promise, it would be inequitable to permit Micro Focus to back away from its agreement.

### C.    This Matter is Not "Substantially Related" to Kirkland's Representation of Micro Focus.

The advance waiver allows Kirkland to represent clients adverse to Micro Focus provided the matter is not "substantially related" to its work for Micro Focus.  *See* Green Decl., ¶ 15. Micro Focus's motion does not mention the advance waiver, but it does focus on Kirkland's prior work for Micro Focus, thus suggesting it may claim that this case is "substantially related" to Kirkland's prior work.  If so, that argument fails:  "[T]here is no basis to conclude that

Kirkland's representation of IBM . . . is 'substantially related' to its work for Micro Focus." *Id.*

"Substantially related" is an ethics term of art borrowed from Rule 1.9 of the ABA Model Rules as enacted in Delaware, New York, and elsewhere. *See* Mette Decl., ¶ 38. The commentary to New York's rule states that "[m]atters are 'substantially related' . . . if they involve the same transaction or legal dispute or if, under the circumstances, a reasonable lawyer would conclude that there is otherwise a substantial risk that confidential factual information that would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." N.Y. Rules of Pro. Conduct r. 1.9 cmt. 3.[7]

Importantly, however, the engagement letter narrowed the typical definition of "substantially related" by providing that Kirkland's receipt of confidential information would not be sufficient to create a substantial relationship or disqualify Kirkland from a representation:

> You will not assert that our representation of you is a basis to disqualify us from an Allowed Adverse Representation or that our work for another client breaches any duties to you. Nor will you assert that a matter is substantially related, and thus not an Allowed Adverse Representation, simply because during our work we came to possess confidential information (recognizing, of course, that we will abide by our legal and ethical duties to protect your confidences).

Ex. A; *see* Green Decl., ¶ 16.[8]

This agreement is clear on its face, but it is also consistent with how courts in this District and elsewhere approach questions of "substantial relationship," which looks to the factual similarity of the matters. Matters are "substantially related" if "the relationship between the . . . matters is patently clear," meaning they are "identical" or "essentially the same." *Streichert v.*

---

[7] Delaware's rule is materially similar. *See* Del. Rules of Pro. Conduct r. 1.9 cmt. 3.

[8] The N.Y. City Bar Association *recommends* including such language in advance waivers. *See* NYCBA Formal Opinion 2006-01 ("[The client] also agrees that it will not . . . assert that . . . this firm's actual, or possible, possession of confidential information . . . is a basis [for disqualification].").

*Town of Chester*, No. 19-CV-7133, 2021 WL 735475, at *12 (S.D.N.Y. Feb. 25, 2021) (cleaned

up) (citing *Government of India v. Cook Indus., Inc.*, 569 F.2d 737, 740 (2d Cir. 1978)); *see*

Green Decl., ¶ 15 (discussing this standard).

Importantly, "information from [a] prior representation with only some relevance to the

current issue, is insufficient to demonstrate an identity of issues." *Med. Diagnostic Imaging,*

*PLLC v. CareCore Nat'l, LLC*, 542 F. Supp. 2d 296, 314 (S.D.N.Y. 2008) (cleaned up); *see NRT*

*Tech. Corp. v. Everi Holdings Inc.*, No. 19-804, 2021 WL 765758, at *7 (D. Del. Feb. 26, 2021).

It also is not enough if the "*legal* claims or underlying theories are similar." *Olajide v. Palisades*

*Collection, LLC*, No. 15-CV-7673, 2016 WL 1448859, at *3 (S.D.N.Y. Apr. 12, 2016) (cleaned

up). Instead, the matters must "share common material *factual* issues." *Id.* (cleaned up); *see*

*Walker Digit., LLC v. Axis Commc'ns AB*, No. 1:11-cv-558, 2012 WL 5878668, at *3 (D. Del.

Nov. 21, 2012).

"[T]he party seeking disqualification bears the burden of" both "establishing the

existence of a substantial relationship," *Sonos, Inc. v. D & M Holdings Inc.*, No. 14-1330, 2015

WL 5277194, at *2 (D. Del. Sept. 9, 2015), and "demonstrat[ing] that continued representation

would be impermissible," *Regalo Int'l, LLC v. Munchkin, Inc.*, 211 F. Supp. 3d 682, 687 (D. Del.

2016) (cleaned up). Even in the absence of an agreement regarding confidential information,

like here, a movant cannot meet its burden based on "[s]peculation regarding the divulging of

client confidences." *Hickman v. Burlington Bio-Med. Corp.*, 371 F. Supp. 2d 225, 229

(E.D.N.Y. 2005). Courts do not "deal with ethical principles by painting with broad strokes."

*Med. Diagnostic Imaging*, 542 F. Supp. 2d at 314 (cleaned up). Instead, they "approach such

problems with a keen sense of practicality as well as a precise picture of the underlying facts."

*Sonos*, 2015 WL 5277194, at *3 (citation omitted).

Here, none of Kirkland's prior work for Micro Focus is related, much less "substantially related," to this litigation.  Green Decl., ¶ 15.  Micro Focus proffers a laundry list of projects Kirkland worked on, repeatedly complains about Kirkland's possession of confidential information, and makes conclusory assertions of relatedness, but Micro Focus never claims that any of Kirkland's representations concerned the same intellectual property at issue here.  Nor does it claim that Kirkland received (or would have received) any confidences pertaining to that intellectual property that could "materially advance" IBM's case—which is fatal to Micro Focus's motion under the "substantial relationship" test even before considering Micro Focus's agreement regarding confidential information.  That should be the end of the matter.

Micro Focus relies on the virtually universally rejected "playbook theory" to argue that any general insight Kirkland gleaned into how Micro Focus handles litigation requires disqualification.  That is wrong.  "General 'litigation thinking'—the general strategic plan or hopes of the lawyer and client on how best to pursue or defend claims—does not satisfy, without more, the substantial relationship test."  *Emps. Ins. Co. of Wausau v. Munich Reinsurance Am., Inc.*, No. 10 Civ. 3558, 2011 WL 1873123, at *5 (S.D.N.Y. May 16, 2011).  Otherwise, "disqualification would be mandated in virtually every instance of successive representation," which "is not the law."  *Vestron, Inc. v. Nat'l Geographic Soc'y*, 750 F. Supp. 586, 595 (S.D.N.Y. 1990); *see also Regalo*, 211 F. Supp. 3d at 692 ("[I]f . . . counsel's knowledge of a prior client's litigation philosophies, strategies and risk tolerances' [were enough], the floodgates for disqualification would open wide.");  Mette Decl., ¶ 41.  For the same reasons, Micro Focus's claim that its "state of mind, its good faith efforts, and corporate culture [are] at issue," Mot. 14, is plainly insufficient.  *See Olajide*, 2016 WL 1448859, at *4 (attorney "may have had general knowledge of [movant's] policies and practices, but that is not enough" (cleaned up)).

1. **The *Wapp* litigation is not substantially related to this litigation.**

Micro Focus complains that Kirkland's minor involvement in the *Wapp* litigation—a post-trial appeal in patent litigation involving entirely different technology, *see* Solum Decl., ¶¶ 9-10—gave the firm "confidential business and technical information relating to Micro Focus's technology, IP-practices, and related financial and business matters."  Mot. 7 (cleaned up).  Whatever information Kirkland could have learned in its limited role is irrelevant to this case.  That two matters involve intellectual property hardly makes them "identical" or "essentially the same."  *Streichert*, 2021 WL 735475, at *12 (citation omitted).  Disqualification motions in this context generally "turn on whether there is an understandable connection between prior patent work . . . and the patents or technology areas at issue in the current litigation."  *Network Apps, LLC v. AT&T Mobility LLC*, 598 F. Supp. 3d 118, 130 (S.D.N.Y. 2022) (citation omitted); *see also Sonos*, 2015 WL 5277194, at *4.  Here, that is not the case.  The *Wapp* case involved intellectual property that pertained to the testing of mobile phone applications.  Solum Decl., ¶ 9.  It "involved different patents and different products from those at issue" here, so the matters are not substantially related.  *Network Apps*, 598 F. Supp. 3d at 130 (cleaned up); *see also Scienton Technologies, Inc. v. Comput. Assocs. Int'l, Inc.*, No. CV 04-2652, 2007 WL 9724689, at *4 (E.D.N.Y. May 23, 2007).

2. **The prior securities litigation is not substantially related to this litigation.**

Micro Focus complains that Kirkland's work in two securities fraud cases gave the firm "a behind-the-scenes look into [the] company's structure" and "familiarity with [Micro Focus's] financial documents."  Mot. 8.  It highlights that Kirkland "filed a motion to transfer."  *Id.*  But as Micro Focus acknowledges, Kirkland used entirely public information for that motion.  Swiss Decl., Ex. E; Solum Decl., ¶¶ 5–6.  Regardless, under the "substantially related" test, "background information [on a client] does not disqualify [a] lawyer from subsequently

20

representing an adverse party unless that information is *central to the claims in the later matter*."

*Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381, 394 (S.D.N.Y. 2010) (emphasis added).  Here, as in *Revise*, "information about [Micro Focus's] business infrastructure is extraneous to the narrow [copyright and breach] claims in this lawsuit."  *Id.*

      Micro Focus complains that its financial information is relevant to damages, but general financial information is insufficient.  *See Scantek*, 693 F. Supp. 2d at 240.  Finding a substantial relationship between two matters because they both involve financial information relevant to damages or ability-to-pay "would mandate disqualification in virtually every instance of successive representation which clearly is not the law."  *Id.* (cleaned up).[9]

### 3.    Kirkland's prior transactional, debt and restructuring work is not substantially related to this litigation.

      Micro Focus claims that Kirkland "provided [it] with advice relating to debt and credit facilities, and related IP transactions, as well as on tax matters," thereby affording the firm "access to Micro Focus's highly-sensitive business information."  Mot. 4.  This work, vaguely described in the motion, does not at all relate to the intellectual property involved here, *see* Butler Decl., ¶¶ 5–6, and Micro Focus does not suggest that the alleged "highly-sensitive business information" had anything to do with the relevant intellectual property either, *see Streichert*, 2021 WL 735475, at *12.  And importantly, even if Micro Focus had alleged that Kirkland's transactional work had touched on the same intellectual property, that still would not be enough to satisfy its burden to show a substantial relationship to the copyright infringement

---

[9] Micro Focus's motion also contends that information gained through Kirkland's work was relevant to personal jurisdiction arguments.  The same discussion above about damages would answer that argument; but in any event the only entity that challenged personal jurisdiction—Micro Focus International PLC—did not move to disqualify and is no longer part of this case after the filing of the Amended Complaint.  *See* Mot. 14.

and breach of contract issues in this case.  *See id.* (matters are substantially related if they are

"*essentially the same.*" (emphasis added)).

       **4.**       **Kirkland's collateral advice about the effect of a pending merger on existing financing is not substantially related to this litigation.**

Finally, Micro Focus highlights its pending transaction with Open Text, but Kirkland is

not transaction counsel there; the firm's involvement is limited to answering a specific question

from Micro Focus about discrete aspects of Kirkland's prior work.  *See* Butler Decl., ¶ 4.  Micro

Focus now argues that Kirkland "gained access to significant confidential information," that it

"scrutinized Micro Focus's IP in order to value it for agreements secured by IP," and that it is

"integral" to the transaction.  Mot. 4, 13.  But the lead attorney on that matter only learned of the

Open Text transaction after it became public.  Butler Decl., ¶ 4.  And more to the point, Micro

Focus does not contend that Kirkland's work had anything to do with the intellectual property at

issue here.  Beyond conclusory statements that the "confidential information" allegedly is

relevant to "damages, good faith and discovery," Mot. 13, Micro Focus does not explain how

that general type of background information is relevant to this case, any more than the

information every lawyer might learn in a representation of any client.[10]

**II.**      **Even in the Absence of an Advance Waiver, Disqualification Is Unwarranted.**

Delaware authorities are clear:  "[D]isqualification is a severe sanction," *Unanue v.*

*Unanue*, No. CIV.A. 204-N, 2004 WL 602096, at *8 (Del. Ch. Mar. 25, 2004), that "is never

---

[10] Micro Focus also argues that Kirkland attorneys may have to serve as witnesses, thus running afoul of the witness-advocate rule.  *See* N.Y. Rules of Pro. Conduct r. 3.7.  But Rule 3.7 typically applies only to the individual lawyers who would testify, not to the firm.  No lawyer who allegedly might need to testify about a Micro Focus matter is trial counsel here.  In any event, "[d]isqualification under this rule is warranted only where the testimony . . . is 'necessary.'" *Indig*, 2019 WL 2482202, at *3 (quoting *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994)). Here, Micro Focus does not even suggest that Kirkland attorneys are *likely* to serve as witnesses, much less *necessary* witnesses.  *See* Green Decl., ¶ 17 (reasoning similarly).

automatic," *Elonex I.P. Holdings, Ltd. v. Apple Comput., Inc.*, 142 F. Supp. 2d 579, 583 (D. Del. 2001); *see* Mette Decl., ¶¶ 48-49.[11]  "A motion to disqualify must contain *clear and convincing evidence* establishing a violation of the Delaware Rules of Professional Conduct *so extreme that it calls into question the fairness or the efficiency of the administration of justice.*"  *Dunlap v. State Farm Fire & Cas. Co.*, No. 504, 2008 WL 2415043, at *1 (Del. May 6, 2008) (emphases added).  A district court has "wide discretion" in ruling on disqualification motions, and "should disqualify an attorney only when it determines, on the facts of a particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule."  *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980).

Prejudice to the client "being disposed of its chosen counsel," *In re Boy Scouts*, 630 B.R. at 134, and any prejudice to the movant are paramount concerns, *Unanue*, 2004 WL 602096, at *7.  "To justify disqualification, the Court must find that allowing the representation to continue would threaten the fair and efficient administration of justice, a threat that is greatly reduced by a credible representation to the Court that the firm will ensure that the attorneys working on [the present] matter do not have access to [the movant's] confidences."  *Rohm & Haas Co. v. Dow Chem. Co.*, No. CIV.A. 4309, 2009 WL 445609, at *3 (Del. Ch. Feb. 12, 2009).

Here, disqualification is not required or warranted.  *First*, there is absolutely no risk that Micro Focus's confidential information will be used against it.  This case is entirely unrelated to Kirkland's prior work for Micro Focus, there is no evidence to suggest confidential information obtained through Kirkland's prior work is relevant to the present dispute, and an ethical screen is

---

[11] Delaware law governs, *see* Ex. B, but courts in New York also recognize that disqualification is not automatic even if there is a conflict, *see, e.g.*, *Victorinox AG*, 709 F. App'x at 53 (denying disqualification despite concurrent representation); *HLP Properties, LLC v. Consol. Edison Co.*, No. 14 Civ. 01383, 2014 WL 5285926, at *5 (S.D.N.Y. Oct. 16, 2014) (same).

in place to protect confidences. *Bos. Sci. Corp. v. Johnson & Johnson Inc.*, 647 F. Supp. 2d 369, 374 (D. Del. 2009); *see* Solum Decl., ¶ 4; Lorber Decl., ¶ 6; Butler Decl., ¶ 6; *see also* Green Decl., ¶ 15 ("There is nothing to suggest that Kirkland has provided legal advice, litigation assistance, or other legal assistance to Micro Focus regarding the intellectual property in issue in this infringement action or regarding any other disputed issue central to this action."); Mette Decl., ¶43. Kirkland is an international law firm of over 3,000 attorneys, and the handful of attorneys who are currently working for Micro Focus on any legacy matters are not representing (and are screened from) this IBM case. Lorber Decl., ¶¶ 11, 13.

*Second*, the prejudice to IBM from disqualification cannot be overstated. *See End of Rd. Tr.*, 2002 WL 242464, at *3; *Unanue*, 2004 WL 602096, at *8. IBM is a long-time Kirkland client and its choice of counsel should be afforded great weight. *See* Simmons Decl., ¶ 2; *Macheca Transp. Co. v. Phila. Indem. Co.*, 463 F.3d 827, 833 (8th Cir. 2006) ("A party's right to select its own counsel is an important public right and a vital freedom that should be preserved."). That is especially the case here, as this copyright case "involve[s] intensely complex, specialized issues that require experienced, knowledgeable counsel." *Wyeth v. Abbott Lab'ys*, 692 F. Supp. 2d 453, 458 (D.N.J. 2010). Kirkland has extensive experience litigating these disputes, which is true of very few lawyers. Simmons Decl., ¶ 6. Micro Focus ignores these realities and instead asserts there is no prejudice because this case is in its infancy. *See* Mot. 14. In fact, Kirkland began working on the matter several months ago and has devoted substantial time to this matter. Simmons Decl., ¶¶ 3–4. If IBM is required to retain separate counsel, substitute counsel will surely take just as long to get up to speed, if not longer, which would be costly and would delay proceedings in this case. *See TQ Delta, LLC v. 2WIRE, Inc.*, No. CV 13-1835, 2016 WL 5402180, at *6 (D. Del. Sept. 26, 2016).

*Third*, disqualification is especially inappropriate here "because of the potential for abuse as a litigation tactic." *In re Boy Scouts*, 630 B.R. at 134. Micro Focus filed this motion before it gave Kirkland an opportunity to address Micro Focus's concerns and it did so without even mentioning the advance waiver. Simmons Decl., ¶ 8. And as Micro Focus knows, Kirkland is one of only a handful of firms with knowledgeable attorneys who handle software copyright cases. *Id.* ¶ 6. For that reason, IBM carefully selected Kirkland to represent it in this case. *Id.* ¶ 13. Given these realities, Micro Focus has an obvious incentive to strip IBM of its counsel.

The parties' engagement letters embody the same principles applied in disqualification cases in Delaware, New York, and elsewhere. As the above cases demonstrate, courts should not disqualify counsel from representing a litigation adversary unless it amounts to side-switching that threatens the integrity of the proceeding. *Streichert*, 2021 WL 735475, at *12. Nothing like that has occurred here. Kirkland never worked on the technology at issue and would not have received any confidential information that could be used to Micro Focus's disadvantage. In contrast, IBM suffers obvious prejudice if its counsel is disqualified. And Micro Focus's promise not to assert that a matter is substantially related merely because Kirkland lawyers became aware of its confidential information confirms that Micro Focus suffers no prejudice as long as Kirkland protects its confidences—which Kirkland has done and will continue to do.

## CONCLUSION

Micro Focus's disqualification motion should be denied.


Dated: January 13, 2023                              Respectfully submitted,


                                                     /s/ *John S. Williams*
                                                     John S. Williams
                                                     WILLIAMS & CONNOLLY LLP

650 5th Ave, Suite #1500
New York, NY 10019

John K. Villa (*pro hac vice forthcoming*)
Craig D. Singer (*pro hac vice pending*)
680 Maine Avenue, S.W.
Washington, DC 20024

Tel. (202) 434-5000
Fax (202) 434-5029
Email: jvilla@wc.com
        csinger@wc.com
        jwilliams@wc.com


*Of Counsel for Kirkland & Ellis LLP*

## CERTIFICATE OF SERVICE

On January 13, 2023, a copy of the foregoing was filed via the Court's Electronic Filing System.  Copies will be served upon counsel of record for Micro Focus by, and may be obtained through, the Court's CM/ECF Systems.

Respectfully submitted,

/s/ *John S. Williams*

John S. Williams