Dale M. Cendali
Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-6460
dale.cendali@kirkland.com
joshua.simmons@kirkland.com

James John Lomeo (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
Telephone:  (512) 678-9100
Facsimile:  (512) 678-9101
james.lomeo@kirkland.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IBM CORPORATION,<br><br>                    Plaintiff,<br><br>      - against -<br><br>MICRO FOCUS (US), INC.<br><br>                    Defendant. | Case No.  22-cv-9910<br><br>ECF Case |

## PLAINTIFF IBM CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT MICRO FOCUS (US), INC.'S MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

**PRELIMINARY STATEMENT** ................................................................ **1**

**FACTUAL BACKGROUND** ................................................................... **2**

      A.    IBM invests in its mainframe ecosystem and CICS® TS ........................ 2

      B.    IBM collaborates with Micro Focus. ......................................... 4

      C.    Micro Focus copies CICS® TS and breaches its contractual promises. ........................................................................ 5

**ARGUMENT** ................................................................................. **6**

   **I.**    **IBM's breach of contract claim is not preempted by the Copyright Act.** .............................................................................. **6**

   **II.**   **IBM has pleaded its claims properly** .................................... **12**

      A.    IBM has stated a claim for breach of contract. ....................... 12

      B.    IBM has stated a claim for copyright infringement ................... 16

   **III.**  **Micro Focus's alternative request for a more definite statement is disfavored and unnecessary.** ............................................ **21**

**CONCLUSION** ............................................................................. **23**

# TABLE OF AUTHORITIES

**Cases**

**Page(s)**

*ACCD Glob. Agric. Inc. v. Perry*,
   No. 12 Civ. 6286, 2013 WL 840706 (S.D.N.Y. Mar. 1, 2013) .........................................15, 16

*Adidas Am., Inc. v. Thom Browne Inc.*,
   599 F. Supp. 3d 151 (S.D.N.Y. 2022)..........................................................................................22

*Adlife Mktg. & Commc'ns Co. v. Buckingham Bros., LLC*,
   No. 19 Civ. 796, 2020 WL 4795287 (N.D.N.Y. Aug. 18, 2020)............................................21

*Alpha Media Works, Inc. v. Perception Rsch. Servs., Inc.*,
   No. 09 Civ. 9563, 2012 WL 406914 (S.D.N.Y. Feb. 9, 2012)................................................11

*Altera Corp. v. Clear Logic, Inc.*,
   424 F.3d 1079 (9th Cir. 2005) .............................................................................................8, 9

*Am. Infertility of N.Y., P.C. v. CNY Fertility, PLLC*,
   No. 21 Civ. 5566, 2021 WL 4803539 (S.D.N.Y. Oct. 13, 2021) .............................................7

*Am. Movie Classics Co. v. Turner Ent. Co.*,
   922 F. Supp. 926 (S.D.N.Y. 1996) ...........................................................................................10

*Assoc. Press v. Meltwater U.S. Holdings, Inc.*,
   931 F. Supp. 2d 537 (S.D.N.Y. 2013)........................................................................................17

*Atl. Recording Corp. v. XM Satellite Radio, Inc.*,
   No. 06 Civ. 3733, 2007 WL 136186 (S.D.N.Y. Jan. 19, 2007)................................................12

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
   No. 18 Civ. 933, 2020 WL 1877707 (N.D. Cal. Apr. 15, 2020) ..............................................21

*Belair v. MGA Ent., Inc.*,
   503 Fed. App'x 65 (2d Cir. 2012)..............................................................................................19

*Bernstein v. Citibank, N.A.*,
   No. 06 Civ. 15203, 2008 WL 11516014 (S.D.N.Y. Dec. 1, 2008)...........................................14

*Blagman v. Apple Inc.*,
   No. 12 Civ. 5453, 2013 WL 2181709 (S.D.N.Y. May 20, 2013)..............................................20

*Bowers v. Baystate Techs., Inc.*,
   320 F.3d 1317 (Fed. Cir. 2003)..............................................................................................8, 9

*BroadVision Inc. v. Gen. Elec. Co.*,
No. 08 Civ. 1478, 2008 WL 4684114 (S.D.N.Y. Oct. 15, 2008) ...........................................10

*Cassway v. Chelsea Historic Props. I*,
No. 92 Civ. 4124, 1993 WL 64633 (E.D. Pa. Mar. 4, 1993) ..................................................10

*Castle Rock Ent., Inc. v. Carol Publ'g Grp., Inc.*,
150 F.3d 132 (2d Cir. 1998).................................................................................................18

*Comfort Inn Oceanside v. Hertz Corp.*,
No. 11 Civ. 1534, 2011 WL 5238658 (E.D.N.Y. Nov. 1, 2011) ...........................................15

*Compulife Software Inc. v. Newman*,
959 F.3d 1288 (11th Cir. 2020) ...........................................................................................19

*Comput. Assocs. Int'l, Inc. v. Altai, Inc.*,
982 F.2d 693 (2d Cir. 1992).............................................................................................7, 8

*Conn. Bar Ass'n v. United States*,
620 F.3d 81 (2d Cir. 2010).....................................................................................................7

*Craft v. Kobler*,
667 F. Supp. 120 (S.D.N.Y. 1987) .......................................................................................18

*DeLumeau v. Pfizer Inc.*,
No. 20 Civ. 2469, 2021 WL 5086381 (D. Colo. Jan. 11, 2021).......................................21, 22

*Dupont Flooring Sys., Inc. v. Discovery Zone, Inc.*,
No. 98 Civ. 5101, 2004 WL 1574629 (S.D.N.Y. July 14, 2004) ..........................................16

*Elektra Ent. Grp., Inc. v. Santangelo*,
No. 05 Civ. 2414, 2005 WL 3199841 (S.D.N.Y. Nov. 28, 2005) .........................................20

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991)........................................................................................................16, 17

*Forest Park Pictures v. Universal Television*,
683 F.3d 424 (2d Cir. 2012)..............................................................................................7, 8

*Framework MI, Inc. v. CVS Health Corp.*,
No. 20 Civ. 907, 2021 WL 2403365 (S.D.N.Y. June 11, 2021).......................................10, 14

*Galland v. Johnston*,
No. 14 Civ. 4411, 2015 WL 1290775 (S.D.N.Y. Mar. 19, 2015) ....................................12, 13

*Genesys Software Systems, Inc. v. Comerica Bank*,
No. 12 Civ. 2682, 2013 WL 12126264 (N.D. Tex. Apr. 9, 2013)....................................10, 11

*Genius Media Grp. Inc. v. Google LLC*,
No. 19 Civ. 7279, 2020 WL 5553639 (E.D.N.Y. Aug. 10, 2020) ...........................................11

*Gusler v. Fischer*,
580 F. Supp. 2d 309 (S.D.N.Y. 2008) .....................................................................................10

*Hodges v. Sloan Const.*,
No. 13 Civ. 1799, 2013 WL 6903755 (D. S.C. Dec. 31, 2013) ...............................................23

*Integrated3d, Inc. v. Aveva, Inc.*,
No. 17 Civ. 159, 2017 WL 10185175 (E.D. Tex. Nov. 16, 2017) ...........................................10

*Island Two LLC v. Island One, Inc.*,
No. 13 Civ. 2121, 2013 WL 5380216 (S.D.N.Y. Sept. 26, 2013) ....................................12, 14

*Kelly v. L.L. Cool J.*,
145 F.R.D. 32 (S.D.N.Y. 1992) ...............................................................................................22

*LaChapelle v. Fenty*,
812 F. Supp. 2d 434 (S.D.N.Y. 2011) .....................................................................................19

*Lavazza Premium Coffees Corp. v. Prime Line Distribs. Inc.*,
575 F. Supp. 3d 445 (S.D.N.Y. 2021) ...............................................................................14, 15

*Lennon v. Seaman*,
No. 99 Civ. 2664, 2002 WL 109525 (S.D.N.Y. Jan. 28, 2002) ...............................................19

*Lewis Tree Serv., Inc. v. Lucent Techs., Inc.*,
No. 99 Civ. 8556, 2000 WL 1277303 (S.D.N.Y. Sept. 8, 2000) .............................................14

*Lickerish, Inc. v. Alpha Media Grp.*,
No. 13 Civ. 377, 2014 WL 12589641 (C.D. Cal. Jan. 2, 2014) ..............................................21

*Lincoln Ben. Life Co. v. AEI Life, LLC*,
800 F.3d 99 (3d Cir. 2015) .......................................................................................................20

*Lumetrics, Inc. v. Blalock*,
23 F. Supp. 3d 138 (W.D.N.Y. 2014) ......................................................................................19

*Manes v. JPMorgan Chase Bank, N.A.*,
No. 20 Civ. 11059, 2022 WL 671631 (S.D.N.Y. Mar. 7, 2022) .............................................14

*McCoy v. Canterbury*,
No. 10 Civ. 368, 2010 WL 4272493 (S.D. W. Va. Oct. 25, 2010) ..........................................23

*Meridian Project Sys., Inc. v. Hardin Const. Co.*,
No. 04 Civ. 2728, 2006 WL 1062070 (E.D. Cal. Apr. 21, 2006) ............................................10

*In re Methyl Tertiary Butyl Ether ("MTB") Prods. Liab. Litig.*,
    233 F.R.D. 133 (S.D.N.Y. 2005) ...................................................................22

*Michael Aram, Inc. v. Laurey*,
    No. 05 Civ. 8380, 2006 WL 510527 (S.D.N.Y. Mar. 1, 2006) ...............................12

*Nat'l Car Rental Sys., Inc. v. Comput. Assocs. Int'l, Inc.*,
    991 F.2d 426 (8th Cir. 1993) .......................................................................9

*Negrete v. Citibank, NA*,
    187 F. Supp. 3d 454 (S.D.N.Y. 2016)............................................................14

*PDS Pathology Data Sys. Ltd. v. Zoetis Inc.*,
    No. 16 Civ. 2072, 2018 WL 5033751 (D.N.J. Oct. 17, 2018).................................17

*Peter F. Gaito Arch., LLC v. Simone Dev. Corp.*,
    602 F.3d 57 (2d Cir. 2010).........................................................................19

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    572 U.S. 663 (2014)............................................................................20, 23

*Recursion Software, Inc. v. Interactive Intel., Inc.*,
    425 F. Supp. 2d 756 (N.D. Tex. 2006) ............................................................9

*Ritani, LLC v. Aghjayan*,
    880 F. Supp. 2d 425 (S.D.N.Y. 2012)............................................................19

*Robin Bay Assocs., LLC v. Merrill Lynch & Co.*,
    No. 07 Civ. 376, 2008 WL 2275902 (S.D.N.Y. June 3, 2008).................................15

*Ross v. FSG PrivatAir Inc.*,
    No. 03 Civ. 7292, 2004 WL 1837366 (S.D.N.Y. Aug. 17, 2004) ............................14

*SAS Inst., Inc. v. World Programming Ltd.*,
    874 F.3d 370 (4th Cir. 2017) .......................................................................8

*Scholz Design, Inc. v. Sard Custom Homes, LLC*,
    691 F.3d 182 (2d Cir. 2012)........................................................................17

*Schonfeld v. Hilliard*,
    218 F.3d 164 (2d Cir. 2000)........................................................................16

*Sharp v. Patterson*,
    No. 03 Civ. 8772, 2004 WL 2480426 (S.D.N.Y. Nov. 3, 2004) ............................10

*Sullivan v. Flora, Inc.*,
    936 F.3d 562 (7th Cir. 2019) .....................................................................21

*Swierkiewicz v. Sorema N. A.*,
    534 U.S. 506 (2002).....................................................................................................22

*Taboola, Inc. v. Ezoic Inc.*,
    No. 17 Civ. 9909, 2019 WL 465003 (S.D.N.Y. Feb. 6, 2019) .................................14

*Taquino v. Teledyne Monarch Rubber*,
    893 F.2d 1488 (5th Cir. 1990) ...............................................................................11

*Tegg Corp. v. Beckstrom Elec. Co.*,
    No. 08 Civ. 435, 2008 WL 2682602 (W.D. Pa. July 1, 2008)................................19

*Tetris Holding, LLC v. Xio Interactive, Inc.*,
    863 F. Supp. 2d 394 (D.N.J. 2012) ........................................................................18

*Thomson Reuters Enter. Ctr. GmbH v. ROSS Intel. Inc.*,
    529 F. Supp. 3d 303 (D. Del. 2021)..................................................................18, 20

*Torah Soft Ltd. v. Drosnin*,
    224 F. Supp. 2d 704 (S.D.N.Y. 2002).......................................................................9

*Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*,
    996 F.2d 1366 (2d Cir. 1993).................................................................................18

*Wainwright Secs. Inc. v. Wall St. Transcript Corp.*,
    558 F.2d 91 (2d Cir. 1977).....................................................................................18

*Warner Bros. Ent. Inc. v. RDR Books*,
    575 F. Supp. 2d 513 (S.D.N.Y. 2008).....................................................................18

*Wellness Publ'g. v. Barefoot*,
    No. 02 Civ. 3773, 2008 WL 108889 (D.N.J. Jan. 9, 2008) ...................................10

*Wolff v. Rare Medium, Inc.*,
    171 F. Supp. 2d 354 (S.D.N.Y. 2001).....................................................................14

*Yeda Rsch. & Dev. Co. v. iCAD, Inc.*,
    No. 18 Civ. 8083, 2019 WL 4562409 (S.D.N.Y. Sept. 5, 2019)............................10

**Statutes**

17 U.S.C. § 106(2) ...........................................................................................................11

17 U.S.C. § 410(c) ......................................................................................................17, 19

17 U.S.C. § 411(a) ...........................................................................................................19

17 U.S.C. § 412.........................................................................................................20, 21

**Rules**

Fed. R. Civ. P. 8......................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6)...........................................................................................12, 22

Fed. R. Civ. P. 12(e) ...............................................................................................2, 22

**Other Authorities**

U.S. Copyright Office, Compendium of U.S. Copyright Office Practices §
     721.9(I) (3d ed. 2021) ............................................................................................23

Plaintiff IBM Corporation ("IBM") submits this memorandum of law in opposition to Defendant Micro Focus (US), Inc.'s ("Micro Focus") motion to dismiss IBM's First Amended Complaint, Dkt. 39 (the "Complaint"), or for a more definite statement.  Dkt. 57 ("Def.'s Br.").

## PRELIMINARY STATEMENT

IBM brought this lawsuit to put an end to Micro Focus's infringement of IBM's copyrights and breach of IBM's agreements.  After years of working together, Micro Focus decided to copy IBM's software and to use IBM's technology to the detriment of IBM and its customers.  Instead of taking responsibility for its actions, Micro Focus's motion repeatedly misrepresents the law and the Complaint's factual allegations.  It also uses blame-the-victim rhetoric, attempting to prevent IBM from seeking relief from this Court by hiding relevant information about Micro Focus's copying of IBM's CICS Transaction Server for z/OS ("CICS® TS") and breach, and then blaming IBM for not having that information.  As Micro Focus's motion is unsupported by the law or the facts, each of its arguments fail.

First, IBM's breach of contract claim is not preempted by the Copyright Act as neither required prong is met here.  As to the subject-matter requirement, Micro Focus failed to address that IBM's agreements apply to both software and hardware, the latter of which is not within the subject matter of copyright.  Thus, the claim is not preempted for that reason alone.  As to the general-scope requirement, IBM's claim is based on breaches of reverse-engineering, use-restriction, and ecosystem provisions in the parties' agreements that go beyond mere reproduction, distribution, performance, or display of IBM's software.  Under well-established case law, this too establishes that the claim is not preempted.

Second, IBM's claims more than satisfy Federal Rule of Civil Procedure 8's notice-pleading requirements.  As to breach of contract, IBM's Complaint identifies the breached agreements and the specific provisions violated, details IBM's performance under them, explains

1

the nature of Micro Focus's breach (including by quoting verbatim from the parties' agreements), and asserts that IBM has been damaged as a result.  Nothing more is necessary. Instead of addressing the Complaint's allegations, Micro Focus wrongly claims that IBM did not identify the breached obligations or assert that the contracts provided for lost profits damages. Faced with the Complaint's actual allegations, Micro Focus's gambit is unavailing.

Similarly, as to copyright infringement, IBM's Complaint alleges that IBM owned the CICS® TS program and that Micro Focus copied its WSBIND file design, as well as other related components of the program.  Although Micro Focus concedes that IBM sufficiently pleaded ownership of a valid copyright, it argues that IBM's allegations do not sufficiently articulate what Micro Focus copied or when.  That argument too does not square with the Complaint's actual allegations, nor with the fact that Micro Focus alone knows when it began copying IBM's software.  As both claims are properly pleaded, Micro Focus's motion should be denied.

Finally, Micro Focus asks, in the alternative, that if IBM's Complaint is dismissed with leave to amend, this Court order IBM to provide a more definite statement.  As IBM's Complaint should not be dismissed, the Court need not reach this argument.  Moreover, Micro Focus has not and cannot show that IBM's Complaint is "unintelligible" as required to satisfy the requirements under Rule 12(e) or that the information that it requests is not better sought through the discovery process.  Accordingly, IBM requests that Micro Focus's motion be denied.

## FACTUAL BACKGROUND

### A.    IBM invests in its mainframe ecosystem and CICS® TS.

IBM is "one of the world's leading technology companies," consistently "revolutioniz[ing] the way in which enterprises, organizations, and people operate and thrive." Compl. ¶ 16.  One of the many ways it has been a pioneer in the field of information technology

is through its mainframe systems. *Id.* ¶¶ 16, 18.  Its mainframe systems offer innovative

hardware and software. *Id.* ¶ 20.  One piece of its software is IBM's general-purpose application

server and transaction processing subsystem: CICS® TS. *Id.* ¶ 20.

 "A CICS® TS application is a collection of related programs that together perform a

business operation, such as processing a travel request or preparing a company payroll." *Id.* ¶

21.  "As mobile and networked devices became ubiquitous, the need for cross-platform

capabilities grew." *Id.* ¶ 22.  "CICS® TS enables CICS® TS applications to communicate with

these non-CICS® systems." *Id.*  "This innovation enables IBM's customers' applications to

work online and across various platforms—protecting IBM's customers' investment in their IBM

mainframe systems." *Id.*

 "CICS® TS Web Services and related components are part of the CICS® TS computer

program and enable IBM's mainframe system customers to provide access to their existing

CICS® TS applications from other platforms over a network." *Id.* ¶ 23.  "CICS® TS Web

Services uses a 'web service binding file,' known as WSBIND file, to expose CICS® TS

programs as web services and maps data received or sent by the networked device to the

application data structures that reside on the mainframe." *Id.* ¶ 24.  "Simply put, IBM's

WSBIND file enables CICS® TS application service access via a network." *Id.*

 "IBM holds the copyrights for CICS® TS (the 'Works')." *Id.* ¶ 27; Dkt. 39-1 (copyright

registrations).  "The Works—which feature uniquely expressed source code, object code,

structure, architecture, modules, algorithms, data structures, and control instructions—are

creative computer programs that were the product of engineering discretion and substantial

skills, resources, and creative energies." Compl. ¶ 28. They also "are of great value to IBM" and

"integral to the daily business operations of much of its mainframe system customer base." *Id.*

**B.      IBM collaborates with Micro Focus.**

"Over the years, IBM has created a number of opportunities for third parties—large and small—to collaborate with IBM to help improve, promote, and expand the digital products and services available to their mutual customers."  Compl. ¶ 30.  "IBM offers a number of valuable benefits to [these] partners," including "substantially discounted access to IBM products and software programs," "education and training, and personalized support."  *Id.*  "Given the significant time, effort, energy, and resources that IBM has invested in the development of its software and these developer relationships, IBM takes care to provide contractual limitations on those developers' access and use of its technology."  *Id.* ¶ 31.

Four agreements are relevant here: (1) The IBM PartnerWorld Agreement and Value Package Attachment (the "PartnerWorld Agreement"); (2) IBM's Client Relationship Agreement (the "CRA"); (3) Attachment for Developer Discount – IBM Z (the "CRA Attachment"); and (4) Addendum to the Attachment for Developer Discount for IBM Z (the "CRA Addendum") (together, the "Agreements").  *Id.* ¶¶ 32–33.

"Micro Focus agreed to the terms in the [Agreements]."  *Id.* ¶ 35.  For example, Micro Focus agreed to "not us[e] any of the elements of the Program or related licensed material separately from the Program."  *Id.* ¶ 34.[1]  Micro Focus also was prohibited from "reverse assembling, reverse compiling, translating, or reverse engineering" IBM's software.  *Id.*  Further, Micro Focus promised not to use its preferred access and the IBM software licensed to it under the Developer Discount Program to undermine IBM's mainframe systems, and instead use its

---

[1]      Micro Focus disputes that the cited sections contain this language and "believes IBM's FAC contains a typographical error."  Def's Br. 3, nn.4, 5.  That is not true as IBM accurately quoted from the Agreements, and Micro Focus's argument is inappropriate on a motion to dismiss.  Moreover, it is telling that Micro Focus does not dispute that the Agreements contain the quoted language, evidently making its incorrect argument one of form, not substance.

access solely to develop or enhance software that runs on IBM's mainframe platform and otherwise only for the mutual benefit of the parties and their customers.  *Id.* ¶¶ 34–35.

**C.     Micro Focus copies CICS® TS and breaches its contractual promises.**

Despite these promises, Micro Focus Enterprise Server and Micro Focus Enterprise Developer (collectively, "Micro Focus Enterprise Suite" or the "Accused Works") include a WSBIND file that is "strikingly similar[]" to IBM's WSBIND file.  Compl. ¶ 38.  "Moreover, the numerous similarities in the file indicate that other portions" of the "Micro Focus Enterprise Suite were copied from IBM as well."  *Id.*   "The similarities contained in the parties' WSBIND files include at least the following:

- Micro Focus's WSBIND file contains near identical architecture and design to IBM's CICS® TS WSBIND file.

- Micro Focus's WSBIND file uses IBM internal structures that are not available outside of IBM.

- For a given input schema or data structure, the log file generated from the Micro Focus Enterprise LS2WS utility is nearly identical to the log file generated by IBM's CICS® TS LS2WS utility.

- The Micro Focus utility processing reflected in the log file exhibits the same configuration, program sequence, program elements, program optimizations, defects and missing features as the corresponding CICS® TS utility programs.

- Micro Focus's WSBIND file is encoded in EBCDIC—like IBM's—yet, Micro Focus has no need for using that encoding as it uses an ASCII environment."

*Id.*  As alleged in the Complaint, "There is no way such extensive similarity could arise through attempts to meet similar functional requirements, or as a result of coincidence."  *Id.*  "These

similarities also indicate that Micro Focus reverse engineered at least a portion of the CICS® TS software . . . ."  *Id.* ¶ 39.

As a result of its failure to abide by its promises, Micro Focus has violated at least the Agreements detailed in the Complaint.  *Id.* ¶¶ 32–34.  "Micro Focus then used and promoted" the Accused Works "to gain financially at IBM's expense."  *Id.* ¶ 36.  Micro Focus's use and promotion of its infringing software "occurred while the aforementioned [A]greements, or predecessor agreements not materially different from these [A]greements, to which Micro Focus agreed as a developer in IBM's programs were in effect, and such actions violate these [A]greements."  *Id.* ¶ 42.  Moreover, "Micro Focus misused its [preferred] access" to IBM's software "to undermine IBM's mainframe systems in direct contravention of its contractual obligations."  *Id.* ¶ 43.

"IBM has been harmed, and continues to be harmed, by Micro Focus's [actions]."  *Id.* ¶¶ 47–48.  In particular, "[a]s a direct and proximate result of [Micro Focus's] breaches [of the aforementioned agreements], IBM has sustained damages, including but not limited to the value of the software taken and the loss of business."  *Id.* ¶ 68.  "The agreements permit IBM to recover these damages under the circumstances alleged [in the Complaint]."  *Id.*

## **ARGUMENT**

## I.  **IBM'S BREACH OF CONTRACT CLAIM IS NOT PREEMPTED BY THE COPYRIGHT ACT.**

Micro Focus's first argument that IBM's breach of contract claim is the equivalent of a copyright claim does not hold water.  As the Second Circuit explained in a case upon which Micro Focus relies, although the Copyright Act preempts some state law claims, such preemption is limited to state law rights that "'may be abridged by an act which, in and of itself, would infringe one of the exclusive rights' provided by federal copyright law."  *Comput. Assocs.*

*Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992) (trade secret claim not preempted). Thus, Micro Focus's argument can succeed "only if (i) the work at issue 'come[s] within the subject matter of copyright' and (ii) the right being asserted is 'equivalent to any of the exclusive rights within the general scope of copyright.'" *Forest Park Pictures v. Universal Television*, 683 F.3d 424, 429 (2d Cir. 2012) (breach of contract claim not preempted; alteration omitted).

    As to the first prong, although Micro Focus argues that computer programs are within the subject matter of copyright, Def.'s Br. 6, it fails to address the fact that the contracts that it signed do not merely involve computer programs.  For example, Micro Focus agreed not to undermine IBM's mainframe systems, and those mainframes involve cutting-edge **hardware**. Compl. ¶¶ 19 ("[T]he new IBM z16 server uses on-chip AI inferencing and industry-first quantum safe technologies . . . [and also] include[s] simplified compliance, flexible capacity, and a smaller energy footprint that reduces costs."), 34, 65 ("IBM's developers promise not . . . to undermine IBM's mainframe systems.").  Given that Micro Focus failed to address the hardware-based component of IBM's breach of contract claim, Def.'s Br. 6 ("IBM's allegations merely claim Micro Focus exceeded the scope of its copyright license"), this issue is waived. *See Am. Infertility of N.Y., P.C. v. CNY Fertility, PLLC*, No. 21 Civ. 5566, 2021 WL 4803539, at *1 (S.D.N.Y. Oct. 13, 2021) (citing *Conn. Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010) ("Issues raised for the first time in a reply brief are generally deemed waived.")). Thus, as the contracts address issues beyond the computer programs, Micro Focus' motion can be denied for this reason alone.

    As to the second prong, "if an 'extra element' is 'required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie 'within the general scope of copyright,' and there is no

preemption." *Altai*, 982 F.2d at 716.  As the Second Circuit explained in *Forest Park*, numerous courts have found "contract claims involving the subject matter of copyright" that "do not contest rights that are the equivalent of rights under the Copyright Act . . . are not preempted." 683 F.3d at 431 (collecting cases); *see Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005) (typically "the Copyright Act does not preempt the enforcement of contractual rights").  Thus, for example, when a contract involves a promise to pay, it is not preempted. *Altai*, 683 F.3d at 431.  Likewise, "most courts to examine this issue have found that the Copyright Act does not preempt contractual constraints on copyrighted articles." *Bowers v. Baystate Techs., Inc.*, 320 F.3d 1317, 1324 (Fed. Cir. 2003).  As the Federal Circuit explained, this means that "private parties are free to contractually forego the limited ability to reverse engineer a software product." *Id.* at 1325–26.

Here, there can be no question that IBM's contract claim is not equivalent to copyright infringement as none of the contractual provisions that form the basis of that claim are equivalent to reproduction, distribution, performance, or display of a copyrighted work.  ***First***, Micro Focus violated provisions that prohibit "reverse engineering," Compl. ¶¶ 34, 64, which means "any attempt 'to analyze a product to learn the details of its design, construction, or production in order to produce a copy or improved version.'"  *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 381 (4th Cir. 2017) (adopting broad interpretation of "reverse engineering").  Micro Focus violated this provision by using "its access to IBM's CICS® TS software to study or analyze IBM's CICS® TS software to learn the details of its design, construction, and operation."  Compl. ¶ 67; *see also id.* ¶¶ 3, 39.  In doing so, "Micro Focus' analysis included observations of the operation of IBM's CICS® TS software that did not include acts of copying the software." *Id.* ¶ 67.  A contract claim based on this violation, which as pleaded in the

Complaint include acts beyond copying, is not preempted.  *Bowers*, 320 F.3d at 1324.[2]

**Second**, Micro Focus violated contractual provisions restricting its use of IBM's software.  For example, Micro Focus agreed not to use "the Program or related licensed material separately from the Program."  Compl. ¶¶ 63, 67.  It also agreed to use its "access solely to develop or enhance software that runs on IBM's mainframe platform."  *Id.* ¶¶ 65, 67.  As explained in *Torah Soft Ltd. v. Drosnin*, when a software user makes promises with regard to "future use of the Software," breach of those promises is not preempted.  224 F. Supp. 2d 704, 716 (S.D.N.Y. 2002).  Consistent with this reasoning, courts across the country have held that contractual claims based on use restrictions are not preempted.  *See Altera*, 424 F.3d at 1090 (prohibition on specific use of software was an extra element); *Nat'l Car Rental Sys., Inc. v. Comput. Assocs. Int'l, Inc.*, 991 F.2d 426 (8th Cir. 1993) (restriction on use of licensed program for processing of data for third parties was an extra element); *Recursion Software, Inc. v. Interactive Intel., Inc.*, 425 F. Supp. 2d 756, 766 (N.D. Tex. 2006) (breach of contract claim not preempted that prohibited using software to be "distributed as part of a competing class library; distributed as part of certain software technology; documented in any distributed materials; embedded in hardware; or 'packaged with, embedded in, distributed as part of, or publicly associated with any software that is marketed or sold.'").  The same is true here.

**Third**, Micro Focus violated its promise to use IBM's technology only to promote and support IBM's mainframe ecosystem.  For example, Micro Focus agreed not to use its "preferred access" to "undermine IBM's mainframe systems."  Compl. ¶ 65.  It also agreed to use its access "for the mutual benefit of the parties and their customers."  *Id.*  Contract claims based on duties beyond refraining from copying a plaintiff's work are not preempted.  *See Gusler v. Fischer*, 580

---

[2]  It is remarkable that Micro Focus again ignores *Bowers* in its motion given that IBM has twice identified that decision to Micro Focus.  Dkt. 37 (12/27/2022 IBM Ltr.).

F. Supp. 2d 309, 319 (S.D.N.Y. 2008) (contractual claim based on breach of duties under NDA not preempted); *Sharp v. Patterson*, No. 03 Civ. 8772, 2004 WL 2480426, at *8 (S.D.N.Y. Nov. 3, 2004) (breach of agreement to work on novel not preempted); *see also Wellness Publ'g. v. Barefoot*, No. 02 Civ. 3773, 2008 WL 108889, at *18 (D.N.J. Jan. 9, 2008) (no preemption where claim was directed to part of the contract involving an agreement not to compete); *Cassway v. Chelsea Historic Props. I*, No. 92 Civ. 4124, 1993 WL 64633, at *5 (E.D. Pa. Mar. 4, 1993) (no preemption of claim that involved a "contractual matter different" from copyright).

Faced with the foregoing, Micro Focus misconstrues IBM's allegations as "merely claim[ing] Micro Focus exceeded the scope of its copyright license" and that such a claim would be preempted.  Def.'s Br. 6–7.  As discussed above, given that the contractual promises Micro Focus breached are not merely promises not to reproduce, distribute, perform, or display, IBM's breach of contract claim is not preempted.[3]  To the extent that Micro Focus claims that ***any*** breach of contract claim based on a license agreement would be preempted, that is inconsistent with the cases on which it relies that look to the specific terms of the contract, not whether it is a "license."  Indeed, *Genesys Software Systems, Inc. v. Comerica Bank*, an out-of-Circuit district court case on which Micro Focus relies, recognized that there are situations where "a breach of contract claim was not preempted when a specific use of the plaintiff's ***license*** was prohibited by

---

[3]   As a result, the preemption cases on which Micro Focus relies are distinguishable.  *See Framework MI, Inc. v. CVS Health Corp.*, No. 20 Civ. 907, 2021 WL 2403365, at *4 (S.D.N.Y. June 11, 2021) (vague non-disclosure claim would be preempted if it involved merely copying copyrighted work); *Yeda Rsch. & Dev. Co. v. iCAD, Inc.*, No. 18 Civ. 8083, 2019 WL 4562409, at *5 (S.D.N.Y. Sept. 5, 2019) (breach of promise not to sell, transfer, or sublicense preempted); *BroadVision Inc. v. Gen. Elec. Co.*, No. 08 Civ. 1478, 2008 WL 4684114, at *4 (S.D.N.Y. Oct. 15, 2008) (claim based on "making copies" preempted); *Am. Movie Classics Co. v. Turner Ent. Co.*, 922 F. Supp. 926, 928 (S.D.N.Y. 1996) (claims based on "exclusive right to exhibit these films," i.e., performance right, preempted).  Indeed, several of Micro Focus's out-of-Circuit cases do not even involve breach of contract claims.  *See Integrated3d, Inc. v. Aveva, Inc.*, No. 17 Civ. 159, 2017 WL 10185175, at *5 (E.D. Tex. Nov. 16, 2017) (conspiracy claim preempted where it rested on allegation defendant "misappropriated" plaintiff's "property"); *Meridian Project Sys., Inc. v. Hardin Const. Co.*, No. 04 Civ. 2728, 2006 WL 1062070, at *4 (E.D. Cal. Apr. 21, 2006) (conversion claim preempted where defendant "wrongfully reproduced aspects of [plaintiff's software] into [defendant's] projects").

a contract with the defendant."  No. 12 Civ. 2682, 2013 WL 12126264, at *2 (N.D. Tex. Apr. 9,

2013) (discussing *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488 (5th Cir. 1990);

emphasis added).  *Genesys* is otherwise distinguishable as the court found there was no

allegation of "any specific promise made to" the plaintiff by the defendant.  *Id.*  Micro Focus, by

contrast, made explicit promises to IBM and then violated them.  *See supra* 4.

  Similarly, Micro Focus's attempt to recast IBM's breach of contract claim as "involving

creating 'derivative' works," Def.'s Br. 8, is inconsistent with the Complaint's breach

allegations, none of which turn on whether a derivative work was created.  *See supra* 8.  As a

result, the cases on which Micro Focus relies are inapposite.  *See Genius Media Grp. Inc. v.

Google LLC*, No. 19 Civ. 7279, 2020 WL 5553639, at *9 (E.D.N.Y. Aug. 10, 2020) ("Plaintiff's

allegations that Defendants 'scraped' and used their lyrics for profit amount to allegations that

Defendants made unauthorized reproductions . . . ."); *Alpha Media Works, Inc. v. Perception

Rsch. Servs., Inc.*, No. 09 Civ. 9563, 2012 WL 406914, at *2 (S.D.N.Y. Feb. 9, 2012) (finding

breach of contract claim is indistinguishable from that of its copyright claim).  Micro Focus also

raises an argument concerning the original complaint's use of the phrase "derivative works,"

Def.'s Br. 8, but that entire paragraph was removed from the Complaint, not rephrased as Micro

Focus asserts; Micro Focus cannot argue that the other paragraphs in the original complaint

rested on such an allegation; and although no longer relevant to IBM's breach of contract claim,

the factual allegation remains true.[4]  To be clear: IBM's breach of contract claim concerns Micro

Focus' violation of the reverse-engineering, use-restriction, and ecosystem provisions discussed

---

[4] Micro Focus *did* create a derivative work, which separately violated IBM's copyrights.  17 U.S.C. § 106(2).  As
the factual allegation in the original complaint is consistent with IBM's amended factual allegations, the cases
on which Micro Focus relies in which a factual allegation was changed, Def.'s Br. 9, are inapposite.  Micro
Focus also intentionally misreads the Complaint by pointing to allegations concerning the copyright claim to
support its preemption analysis.  Def.'s Br. 10 & n.13, n.14; *id.* at 11.

above, not creation of a derivative work.  Thus, IBM's breach of contract claim is not preempted.

## II.   IBM HAS PLEADED ITS CLAIMS PROPERLY.

Micro Focus next argues that the Complaint fails to state a claim.  Yet, in deciding a Rule 12(b)(6) motion to dismiss, the "Court accepts as true all well-pleaded factual allegations in the Complaint and draws all reasonable inferences in favor of the non-moving party." *Island Two LLC v. Island One, Inc.*, No. 13 Civ. 2121, 2013 WL 5380216, at *1 (S.D.N.Y. Sept. 26, 2013). "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Michael Aram, Inc. v. Laurey*, No. 05 Civ. 8380, 2006 WL 510527, at *1 (S.D.N.Y. Mar. 1, 2006). "A court should grant dismissal only if, after considering plaintiff's allegations in this most generous light, 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Atl. Recording Corp. v. XM Satellite Radio, Inc.*, No. 06 Civ. 3733, 2007 WL 136186, at *4 (S.D.N.Y. Jan. 19, 2007). Here, IBM has pleaded both of its claims.

### A.   IBM has stated a claim for breach of contract.

As to breach of contract, "a complaint need only state: (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of the contract by the defendant; and (4) damages." *Galland v. Johnston*, No. 14 Civ. 4411, 2015 WL 1290775, at *11 (S.D.N.Y. Mar. 19, 2015). Here, IBM has done just that. It has identified the existence of Agreements between the parties. Compl. ¶¶ 32–33; *id.* ¶¶ 34 (describing relevant contractual provisions), 35 ("Micro Focus agreed to the terms"). IBM performed under the Agreements by, among other things, "provid[ing] Micro Focus with discounts" and "access to at least the CICS® TS software." *Id.* ¶ 66. As discussed above with regard to preemption, IBM then identified three sets of breaches by Micro Focus that occurred "while these provisions were in force": violation of the reverse-engineering, use-restriction, and ecosystem provisions. *See* Compl. ¶ 67;

*supra* 8.  IBM even quoted directly from the relevant provisions.  Compl. ¶¶ 63–65.  Finally, IBM alleged that Micro Focus's breaches caused IBM "damages, including but not limited to the value of the software taken and the loss of business."  *Id.* ¶ 68.  At the motion to dismiss stage, no more is necessary.  *Galland*, 2015 WL 1290775, at *11.

Instead of the notice-pleading standard provided in the Federal Rules, Micro Focus essentially demands that IBM plead each and every fact related to its breach of the Agreements at the pleading stage.  That is not the law, and each of its arguments necessarily fails.

***First***, Micro Focus argues that IBM failed to allege "which provisions of which contracts were breached."  Def.'s Br. 13.  That is demonstrably untrue.  The Complaint identifies the Agreements that form the basis for IBM's claim and the obligations breached, and even quotes several of the breached provisions verbatim.  Specifically, Micro Focus agreed:

- "to comply with the terms of the limited license granted to them, and 'not us[e] any of the elements of the Program or related licensed material separately from the Program,'" Compl. ¶ 63;

- "not to 'reverse assembl[e], reverse compil[e], translat[e], or reverse engineer[] the Program,'" *id.* ¶ 64; and

- "not to use their preferred access and the IBM software licensed to them under the Developer Discount Program to undermine IBM's mainframe systems, and instead use their access solely to develop or enhance software that runs on IBM's mainframe platform and otherwise for the mutual benefit of the parties and their customers," *id.* ¶ 65.

IBM then alleged that "Micro Focus breached at least these provisions of these agreements," and explained why.  *Id.* ¶ 67.  This goes well beyond what was found sufficient in *Taboola, Inc. v. Ezoic Inc.*, where the plaintiff did not even provide the text of the breached contracts.  No. 17

13

Civ. 9909, 2019 WL 465003, at *14 (S.D.N.Y. Feb. 6, 2019) (denying motion to dismiss breach

of contract claim as plaintiff not required to plead contract "terms verbatim").  It also stands in

stark contrast to *Bernstein v. Citibank, N.A.*, on which Micro Focus relies, Def.'s Br. 13, where

the plaintiff had "not set forth the terms of the agreement upon which liability is based."  No. 06

Civ. 15203, 2008 WL 11516014, at *3 (S.D.N.Y. Dec. 1, 2008).[5]  Likewise, Micro Focus's

argument that the quoted provisions of the Agreements contain typographical errors is both

wrong as IBM quoted provisions verbatim from the contracts, and inconsistent with the pleading

standard.  *Island Two*, 2013 WL 5380216, at *1 (factual allegations must be taken as true).

Contrary to Micro Focus's argument that it is not on notice of IBM's claim, Def.'s Br. 15, IBM's

allegations clearly satisfy Rule 8's requirements.

   ***Second***, Micro Focus vaguely asserts that IBM's allegation that Micro Focus breached

these contracts "during the period of the Partner World Agreement" is insufficient at the

pleadings stage.  Def.'s Br. 14.  It, however, identifies no legal support for that proposition.  Nor

can it.  *See Lavazza Premium Coffees Corp. v. Prime Line Distribs. Inc.*, 575 F. Supp. 3d 445,

469 (S.D.N.Y. 2021) (denying motion to dismiss based on lack of allegation as to when breach

occurred and citing *Comfort Inn Oceanside v. Hertz Corp.*, No. 11 Civ. 1534, 2011 WL

5238658, at *6 n.10 (E.D.N.Y. Nov. 1, 2011) (stating that plaintiff "need not allege the exact

---

[5]   Indeed, none of Micro Focus's cited cases involved pleadings approaching the clarity of IBM's.  *See Manes v. JPMorgan Chase Bank, N.A.*, No. 20 Civ. 11059, 2022 WL 671631, at *7 (S.D.N.Y. Mar. 7, 2022) (plaintiff "failed entirely to identify the specific contract term or terms that [defendant] allegedly breached"); *Framework MI*, 2021 WL 2403365, at *4 (nondisclosure obligation contradicted by factual allegations that defendant was permitted access and so vague that, when asked at oral argument, plaintiff could not "name the third party to whom CVS had allegedly disclosed the Copyrighted Work"); *Negrete v. Citibank, NA*, 187 F. Supp. 3d 454, 468 (S.D.N.Y. 2016) (complaint "failed to plead the essential terms of the alleged agreement between the parties and which provisions, if any, were breached"); *Ross v. FSG PrivatAir Inc.*, No. 03 Civ. 7292, 2004 WL 1837366, at *3 (S.D.N.Y. Aug. 17, 2004) (contract claim not reduced to writing and claims unclear as to demarcation of implied contract); *Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001) (plaintiff did not identify language in parties' agreement that created the alleged obligation); *Lewis Tree Serv., Inc. v. Lucent Techs., Inc.*, No. 99 Civ. 8556, 2000 WL 1277303, at *5 (S.D.N.Y. Sept. 8, 2000) (plaintiffs failed "to identify any particular contractual provision" that defendants breached and "to specify any particular conduct that allegedly breached the duty of good faith and fair dealing").

date of the breach" at motion to dismiss stage)).  In any case, Micro Focus alone knows when it

first breached its agreements.  It cannot move to dismiss based on information it alone holds and

has chosen to hide.

**Third**, Micro Focus moves to preclude IBM from seeking "lost profits" damages.  Def.'s

Br. 15.  The Court need not consider this argument as a "motion to dismiss is addressed to a

'claim'—not to a form of damages." *Lavazza*, 575 F. Supp. 3d at 468.  Thus, in *Lavazza*, the

court denied such a motion as "the form of damages" is "not an element of [the] claim." *Id.*

Moreover, contrary to Micro Focus's argument, lost profits are hardly speculative based on the

allegations in the Complaint.  IBM sells mainframe systems, including CICS® TS.  Compl. ¶¶

16–20.  Given the "time, effort, energy, and resources that IBM has invested in the development

of its software," IBM "takes care to provide contractual limitations on those developers" to

whom it permits "access and use of its technology." *Id.* ¶ 31.  Here, Micro Focus "has been a

member of PartnerWorld," was "a member of the Developer Discount Program," and "agreed to

the terms" of the Agreements. *Id.* ¶ 35.  Those Agreements "permit IBM to recover" damages

such as "the value of the software taken and the loss of business." *Id.* ¶ 68.  Thus, as Micro

Focus disregarded its contractual obligations "to undermine IBM's mainframe systems" and line

Micro Focus's own pockets, *id.* ¶¶ 43, 48, IBM is entitled to recoup the damages it lost.[6]  Micro

Focus may raise this argument at summary judgment, as was the situation in the cases it cites.

*See Schonfeld v. Hilliard*, 218 F.3d 164, 173 (2d Cir. 2000) (affirming grant of summary

---

[6]   IBM is not in the same position as the plaintiff in *ACCD Glob. Agric. Inc. v. Perry*, on which Micro Focus relies
(at 15), as that was a new business that did not allege profitability in a new market.  No. 12 Civ. 6286, 2013 WL
840706, at *6 (S.D.N.Y. Mar. 1, 2013); *see Robin Bay Assocs., LLC v. Merrill Lynch & Co.*, No. 07 Civ. 376,
2008 WL 2275902, at *8 (S.D.N.Y. June 3, 2008) (dismissal of lost profits claim as plaintiff had no past
business to form the basis for a lost profits claim).  Moreover, contrary to Micro Focus's argument that "IBM
does not claim that the Alleged Agreements contemplated any loss of business or profits as damages," Def.'s
Br. 16, and unlike the allegations in *Perry*, 2013 Wl 840706, at *5, IBM ***explicitly asserted*** that the agreements
contemplated these damages.  Compl. ¶ 68.

judgment as plaintiff's expert could not establish "the existence nor the amount of lost profits");

*Dupont Flooring Sys., Inc. v. Discovery Zone, Inc.*, No. 98 Civ. 5101, 2004 WL 1574629, at \*7

(S.D.N.Y. July 14, 2004) (granting summary judgment as plaintiff could not support lost profit

calculation).  At the pleadings stage, Micro Focus's argument should be rejected, and its motion

denied.

      **B.**    **IBM has stated a claim for copyright infringement.**

      IBM also has pleaded a claim for copyright infringement.  To state such a claim, IBM

need allege only "(1) ownership of a valid copyright, and (2) copying of constituent elements of

the work that are original."  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

Here, "IBM holds the copyrights for CICS® TS," Compl. ¶ 27, and those copyrights have been

registered with the Copyright Office.  *Id.* Ex. A.  IBM also has alleged that "Micro Focus created

the Micro Focus Enterprise Suite by copying" those works.  *Id.* ¶ 37.  Specifically, IBM alleged

that Micro Focus's Enterprise Suite includes a "web services implementation" that "includes a

WSBIND file for mapping data."  *Id.* ¶ 38.  That file design was copied from IBM's WSBIND

file implementation contained in CICS® TS.  *Id.*  The copying also indicates that other portions

of the Micro Focus Enterprise Suite were copied from IBM.  *Id.*  As indicated in the Complaint,

the similarities include at least the following:

- "Micro Focus's WSBIND file contains near identical architecture and design to IBM's
  CICS® TS WSBIND file."

- "Micro Focus's WSBIND file uses IBM internal structures that are not available
  outside of IBM."

- "For a given input schema or data structure, the log file generated from the Micro Focus
  Enterprise LS2WS utility is nearly identical to the log file generated by IBM's CICS®

TS LS2WS utility."

- "The Micro Focus utility processing reflected in the log file exhibits the same configuration, program sequence, program elements, program optimizations, defects and missing features as the corresponding CICS® TS utility programs."

- "Micro Focus's WSBIND file is encoded in EBCDIC—like IBM's—yet, Micro Focus has no need for using that encoding as it uses an ASCII environment."

*Id.* ¶ 38.

Despite these detailed allegations, Micro Focus argues that "IBM's allegations are unclear." Def.'s Br. 17. Not so. As to the first element, Micro Focus "does not contest IBM's allegation that it owns the copyright registrations," Def.'s Br. 17, but it fails to acknowledge that those registrations "constitute *prima facie* evidence of the validity of the copyright," 17 U.S.C. § 410(c), including "both valid ownership of copyright and originality." *Assoc. Press v. Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d 537, 549 (S.D.N.Y. 2013); *Scholz Design, Inc. v. Sard Custom Homes, LLC*, 691 F.3d 182, 186 (2d Cir. 2012). This alone is "sufficient to meet the first prong." *PDS Pathology Data Sys. Ltd. v. Zoetis Inc.*, No. 16 Civ. 2072, 2018 WL 5033751, at *2 (D.N.J. Oct. 17, 2018). The Complaint, however, goes further by alleging that IBM owns the software and that it is a creative work resulting from IBM's numerous choices. Compl. ¶¶ 21–25, *see also id.* ¶¶ 26–28. This too more than satisfies *Feist*'s "extremely low" standard for creativity and independent creation. 499 U.S. at 345.

As to the second element, Micro Focus argues that it is unclear "what IBM is claiming is infringed," Def.'s Br. 17, but clearly IBM alleges that Micro Focus infringed the CICS® TS computer program. *See supra* 5. Although Micro Focus complains that IBM holds multiple Copyright Office registrations for each version of the program and discusses them in the

17

Complaint together, Def.'s Br. 18, it is common practice for even ***distinct*** works to be aggregated

when analyzing a copyright claim.  See *Castle Rock Ent., Inc. v. Carol Publ'g Grp., Inc.*, 150

F.3d 132, 138 (2d Cir. 1998) (treating 82 separate episodes of *Seinfeld* television series "as a

single work"); *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1372–73, 1381 (2d

Cir. 1993) (comparing infringing book to 8 episodes of *Twin Peaks* that were treated as a whole);

*Wainwright Secs. Inc. v. Wall St. Transcript Corp.*, 558 F.2d 91, 94 (2d Cir. 1977) (addressing

abstracts of research reports cumulatively); *Tetris Holding, LLC v. Xio Interactive, Inc.*, 863 F.

Supp. 2d 394, 396 (D.N.J. 2012) (discussing different versions of *Tetris* electronic game in the

aggregate as Tetris); *Warner Bros. Ent. Inc. v. RDR Books*, 575 F. Supp. 2d 513, 535 (S.D.N.Y.

2008) (discussing infringement of seven Harry Potter novels and two companion books in the

aggregate); *Craft v. Kobler*, 667 F. Supp. 120, 124–25 (S.D.N.Y. 1987) (passages from 15 books

treated cumulatively).

Here, all of the registrations are for different versions of the ***same*** CICS® TS program, of

which the WSBIND file design is a component.  Compl. ¶¶ 37–38 (Micro Focus copied "IBM's

CICS® TS WSBIND file"), Ex. A.  This is sufficient at the pleading stage.  *See Thomson*

*Reuters Enter. Ctr. GmbH v. ROSS Intel. Inc.*, 529 F. Supp. 3d 303, 312 (D. Del. 2021) (where

each version of Westlaw was separately registered, allegations common to all versions

"satisfie[d] Rule 8's requirement of a short and plain statement giving Defendant notice").  It

also is unlike the case on which Micro Focus relies where the plaintiff had "not included the

copyright registration numbers at issue in its Amended Complaint," and the registrations may

have covered different software components separately.  *Compare Tegg Corp. v. Beckstrom*

*Elec. Co.*, No. 08 Civ. 435, 2008 WL 2682602, at \*7–8 (W.D. Pa. July 1, 2008) *with* Compl. ¶

27 (registration certificates attached to Complaint "show the date upon which IBM applied for

the Certificate of Registration, the date on which the certificate was issued, and the registration number assigned").[7]  And, to the extent that Micro Focus argues that IBM should more specifically identify the protectable elements of the CICS® TS program, that again ignores the presumption of originality afforded by IBM's copyright registrations, 17 U.S.C. § 410(c), and that it is Micro Focus's burden to prove that all of the elements that it copied are unprotectable. *See Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1305 (11th Cir. 2020) ("[T]he *defendant* bears the burden of proving—as part of the filtration analysis—that the elements he copied from a copyrighted work are *unprotectable*.").  Nowhere has Micro Focus attempted to identify any unprotectable elements.[8]

As to when the infringement occurred, it takes *chutzpah* for Micro Focus to argue that, after surreptitiously copying IBM's program and being caught, IBM's copyright claim should be dismissed because Micro Focus did not tell IBM when it started infringing.  In any case, IBM's Complaint alleges, upon information and belief, that "Micro Focus copied at least the IBM CICS® TS software sometime within" the period after it received access to IBM's software and today.  Compl. ¶ 35.  It also alleges that Micro Focus "continues to make and distribute copies of at least the IBM CICS® TS software today as part of its Accused Works."  *Id.*  As copyright follows a separate-accrual rule, Micro Focus's ongoing infringement is itself a violation of the

---

[7]   *LaChapelle v. Fenty*, on which Micro Focus also relies (at 17), **denied** the defendant's motion to dismiss. 812 F. Supp. 2d 434, 449 (S.D.N.Y. 2011).  Further, *Lennon v. Seaman* is distinguishable as the plaintiff "used only generic and imprecise language" without providing "particular instances of impermissible use."  No. 99 Civ. 2664, 2002 WL 109525, at *6 (S.D.N.Y. Jan. 28, 2002).  And *Lumetrics, Inc. v. Blalock* dismissed the complaint because not all of the copyrights were registered as is required by 17 U.S.C. § 411(a).  23 F. Supp. 3d 138 (W.D.N.Y. 2014).  IBM has registered its asserted works, and Micro Focus does not argue otherwise.

[8]   This distinguishes Micro Focus's motion from the cases on which it relies, in which the defendants established that the only copied material was unprotectable.  *See Peter F. Gaito Arch., LLC v. Simone Dev. Corp.*, 602 F.3d 57, 68 (2d Cir. 2010) (only ideas copied); *Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 443 (S.D.N.Y. 2012) (insufficient allegations that jewelry shared protectable elements given that copyright protection for jewelry is limited).  Micro Focus also, again, relies on summary judgment cases, which apply a different standard.  *See Belair v. MGA Ent., Inc.*, 503 Fed. App'x 65 (2d Cir. 2012) (affirming summary judgment where dolls were not substantially similar).

statute.  *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014) ("Under that rule, when a defendant commits successive violations, the statute of limitations runs separately from each violation.").  Thus, IBM's allegation of continuing infringement alone is sufficient to state a claim.  *See Blagman v. Apple Inc.*, No. 12 Civ. 5453, 2013 WL 2181709, at *3 (S.D.N.Y. May 20, 2013) (finding allegation of "continued infringement" is "satisfactory to survive a motion to dismiss" and collecting cases); *Elektra Ent. Grp., Inc. v. Santangelo*, No. 05 Civ. 2414, 2005 WL 3199841, at *3 (S.D.N.Y. Nov. 28, 2005) ("Plaintiffs' allegation of continuous and ongoing infringement satisfies Rule 8's pleading requirements.").  Moreover, as Micro Focus alone knows when the infringement began, its motion cannot be granted on this ground.  *See Thomson Reuters*, 529 F. Supp. 3d at 313 (finding that, where the facts concerning the infringement "are peculiarly within the defendant's possession," no identification beyond allegations upon information and belief is necessary (quoting *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 n.31 (3d Cir. 2015))).

Micro Focus similarly argues that IBM's requests for statutory damages and attorney's fees should be dismissed because Micro Focus claims to be "unaware if the alleged infringement occurred prior to the registration of any of IBM's alleged 'Works.'"  Def.'s Br. 19.  That is nonsensical for three independent reasons.  ***First***, under 17 U.S.C. § 412, statutory damages and attorney's fees are unavailable only if the infringement commenced "after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work."  All but one version of CICS® TS was registered within the three-month window.  Compl. Ex. A.  Thus, Micro Focus's argument necessarily fails for those versions.[9]  And as to Version 3.2, even if Micro Focus did commence

---

[9]   By contrast, in *Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, on which Micro Focus relies (at 19), the plaintiff did not register its work until 16 years after the first publication, making the date of the infringement

its infringement between that version's publication and registration, it would not change the fact that IBM is entitled to this relief for all of the other versions, making it inappropriate to wholesale dismiss IBM's requested relief.  In any case, once Micro Focus reveals during discovery its date of first infringement, the parties and the Court will be able to assess Micro Focus's argument as to that version.  **Second**, as stated in *DeLumeau v. Pfizer, Inc.*, on which Micro Focus relies, plaintiffs are "not obliged to anticipate and plead around affirmative defenses."  No. 1:20 Civ. 2469, 2021 WL 5086381, at *2 (D. Col. Jan. 11, 2001).  And "§ 412 operates akin to an affirmative defense."  *Sullivan v. Flora, Inc.*, 936 F.3d 562, 573 (7th Cir. 2019).  It simply does not make sense to dismiss IBM's requested relief at this stage.  **Third**, Micro Focus knows when its copying occurred but has chosen not to share that date with IBM or the Court.  It would be prejudicial to dismiss IBM's requested relief because of Micro Focus's lack of candor, particularly when, as discussed above, it is clear that whenever Micro Focus commenced infringement of IBM's work, IBM registered works within the three-month window and is entitled to its requested relief.  Accordingly, Micro Focus's motion should be denied.

## III.    MICRO FOCUS'S ALTERNATIVE REQUEST FOR A MORE DEFINITE STATEMENT IS DISFAVORED AND UNNECESSARY.

As Micro Focus's motion to dismiss should be denied, the Court need not reach its alternative request for a more definite statement in the event that the Court were to "dismiss IBM's FAC with leave to re-plead."  Def.'s Br. 20.  In any case, to grant a Rule 12(e) motion, the Court must find that "a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading."  *In re*

---

material to determining whether statutory damages and attorney's fees were available.  No. 18 Civ. 933, 2020 WL 1877707, at *7 (N.D. Cal. Apr. 15, 2020); *see Adlife Mktg. & Commc'ns Co. v. Buckingham Bros., LLC*, No. 19 Civ. 796, 2020 WL 4795287, at *3 (N.D.N.Y. Aug. 18, 2020) (requiring allegations as to timing as it would determine whether relief was available); *Lickerish, Inc. v. Alpha Media Grp.*, No. 13 Civ. 377, 2014 WL 12589641, at *5 (C.D. Cal. Jan. 2, 2014) (no registrations filed within three-months of publication).

*Methyl Tertiary Butyl Ether ("MTB") Prods. Liab. Litig.*, 233 F.R.D. 133, 134–35 (S.D.N.Y. 2005).  As Judge Scheindlin explained, such motions "are generally disfavored because of their dilatory effect" and "should not be granted 'unless the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it.'"  *Id.*  The Rule is not designed "to correct for lack of detail" as the "preferred course is to encourage the use of discovery procedures to apprise the parties of the factual basis of the claims made in the pleadings."  *Id.*; *see Adidas Am., Inc. v. Thom Browne Inc.*, 599 F. Supp. 3d 151, 157 (S.D.N.Y. 2022) ("In view of Rule 8(a)'s liberal pleading requirements, and the availability of discovery to provide additional factual detail for the parties' claims, motions under Rule 12(e) are generally disfavored because of their dilatory effect." (collecting cases)). [10]

Micro Focus cannot satisfy this standard as it does not and cannot argue that IBM's Complaint is "unintelligible."  Instead, Micro Focus repeats the same arguments that it raised in support of its Rule 12(b)(6) motion.  Def.'s Br. 23–24.  Such requests for more detail do not satisfy the Rule 12(e) standard.  *See Methyl Tertiary*, 233 F.R.D. at 134–35.  Instead, Micro Focus can seek such information through the discovery process.  Moreover, as even Micro Focus's own case makes clear, such requests make sense only when the information "is within the knowledge of the plaintiff but not the defendant."  *DeLumeau v. Pfizer Inc.*, No. 20 Civ. 2469, 2021 WL 5086381, at *2 (D. Colo. Jan. 11, 2021).  Here, the opposite is true: Micro Focus knows when it breached its agreements with IBM, when it infringed IBM's copyrights, and what it copied from CICS® TS.  None of the largely out-of-Circuit cases on which Micro Focus relies involved a situation where the information requested was uniquely in the defendant's possession.

---

[10]  Micro Focus's own cases are in accord.  *See Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 35 (S.D.N.Y. 1992) ("Rule 12(e) is designed to remedy unintelligible pleadings, not merely to correct for lack of detail."); *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 (2002) (only a "short and plain statement" is required under Rule 8).

Def.'s Br. 20–22.  And, contrary to Micro Focus's timing-based arguments, the information

sought would not be dispositive as nowhere does Micro Focus argue that IBM's copyright claim

would be time-barred.  Nor can it given Micro Focus's continuing infringement.  *See Petrella*,

572 U.S. at 671.[11]

     Likewise, although Micro Focus claims not to know whether the "related components"

referenced in the Complaint are part of CICS® TS, Def.'s Br. 23, the Complaint is clear:

"CICS® TS Web Services and related components are part of the CICS® TS computer program

and enable IBM's mainframe system customers to provide access to their existing CICS® TS

applications from other platforms over a network."  Compl. ¶¶ 23, 27.  And contrary to Micro

Focus's argument that the terminology used in the certificates of registration issued by the

Copyright Office is unclear based on the Copyright Office Compendium, Def.'s Br. 24, the

Copyright Office issued the certificates.  Compl. Ex. A.  Clearly it did not believe that

terminology to be unclear, which makes sense as they plainly cover the CICS® TS computer

program.  Nor does the disputed term, "entire program text," appear in the Compendium.  *See*

U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 721.9(I) (3d ed.

2021).[12]

## CONCLUSION

     For the foregoing reasons, IBM respectfully requests that Micro Focus's motion be

denied in its entirety.  If, however, the Court is inclined to grant any of Micro Focus's motion,

---

[11]    Separately, Micro Focus's breach of contract arguments are self-contradictory.  Micro Focus both argues that IBM's knowledge is irrelevant, Def.'s Br. 22, and that it needs to know "when IBM first learned of the alleged breach."  *Id.* at 23.  In any case, it is IBM that is entitled to know when Micro Focus first breached the parties' agreements, which IBM will do through the discovery process.

[12]    The *pro se*, discrimination cases on which Micro Focus relies (at 24) are clearly inapposite.  *See McCoy v. Canterbury*, No. 10 Civ. 368, 2010 WL 4272493 (S.D. W. Va. Oct. 25, 2010); *Hodges v. Sloan Const.*, No. 13 Civ. 1799, 2013 WL 6903755 (D. S.C. Dec. 31, 2013) (same).

given that it largely turns on IBM's pleaded allegations which could be addressed in an amended

complaint, IBM requests that the order be with leave to amend.

Dated:  February 10, 2023

/s/ Joshua L. Simmons

Dale M. Cendali
Joshua L. Simmons
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-6460
dale.cendali@kirkland.com
joshua.simmons@kirkland.com

James John Lomeo (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
Telephone:  512) 678-9100
Facsimile: (512) 678-9101
james.lomeo@kirkland.com

*Attorneys for Plaintiff*