UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

IBM CORPORATION,

                            Plaintiff,

             -against-

MICRO FOCUS (US) INC.

                           Defendant.
------------------------------------------------------------------X

22-cv-9910 (VB)(VR)

**<ins>OPINION & ORDER</ins>**

VICTORIA REZNIK, United States Magistrate Judge:

Currently before the Court is Micro Focus's motion to exclude IBM's allegedly untimely disclosures. (ECF Nos. 208 – 214). For the reasons below, Micro Focus's motion is **DENIED**. Although certain of IBM's disclosures were untimely, the Court finds preclusion unwarranted. Instead, the Court will give Micro Focus the opportunity to take additional discovery, as discussed below.

Also, since the parties briefed this motion to strike, the United States Supreme Court issued a decision in *Warner Chappell Music, Inc. v. Nealy*, No. 22-1078, 2024 WL 2061137 (U.S. May 9, 2024). As a result of this decision, IBM filed a request for additional discovery into Micro Focus's financials starting from the date Micro Focus allegedly copied CICS® TS in 2014 to the present. (ECF No. 234). For the reasons below, this request is **GRANTED.**

**<ins>BACKGROUND</ins>[1]**

On January 6, 2023, IBM filed an amended complaint alleging copyright infringement of certain "Works" and attaching nine copyright registrations associated with them. (ECF No. 39 at

---

[1] The Court assumes familiarity with the underlying facts and procedural history of this case, and only summarizes them to the extent necessary to resolve this motion.

1

¶ 27).  The attached registrations identify versions and subversions 2.3 to 5.2 of a product called CICS® TS.  (ECF No. 211 at 7).[2]  Micro Focus notes that paragraph 38 of the amended complaint also specifies three features in "Micro Focus' Enterprise Developer and Server," that were copied from IBM.  (*Id.*)[3]

Fact discovery concluded on December 15, 2023, and the parties are in the middle of expert discovery.  (ECF No. 104 at 1).  Micro Focus's opening motion accuses IBM of producing new documents and information with its expert reports over two months after fact discovery closed, including financial data and boxes of printed source code.  (ECF No. 211 at 10).  Micro Focus also accuses IBM of expanding its case theory to include a fourth copied feature, as disclosed in IBM's Fourth Supplemental Interrogatory Responses, served after the close of fact discovery.  (*Id.* at 7).  At first, Micro Focus's argument focused on the need to exclude this late produced evidence because Micro Focus did not have a fair opportunity to cross-examine it during fact discovery.  (*Id.* at 17 – 18).  But over the course of the parties' briefing, it became clear that Micro Focus's central concern is IBM's use of this evidence to expand its infringement and damages theories to include "never-identified, never-asserted, never-litigated" later versions of CICS TS (versions 5.3 – 6).  (ECF No. 222 at 4).  Indeed, although IBM may have disclosed some documents that refer to later versions, Micro Focus asserts that "[u]ntil now, IBM never once suggested, let alone '***made clear*** that this case is about Micro Focus's use of that copied material in competition with ***all of the versions*** of CICS® TS.'"  (*Id*. at 4) (quoting ECF No. 217 at 6).  Thus, Micro Focus's motion seeks to exclude these disclosures

---

[2] All page numbers refer to ECF pagination.  In addition, unless otherwise stated, all references to internal quotations/citations are omitted.
[3] Paragraph 38 of the amended complaint contains what appears to be a bullet-point list of five features, not three. But if the Court interprets Micro Focus's motion correctly, they appear to be consolidating some of these bullet points.

but also specifically requests "[a]n order limiting the trial record to evidence tied to the specific Asserted Works [defined as v. 2.3 to 5.2] and accused functionality that IBM identified in its pleadings and disclosed before fact discovery closed on December 15, 2023." (ECF No. 211 at 5).

      IBM counters that its disclosures were "not untimely." (ECF No. 217 at 8). IBM claims that "in late October and early November, IBM produced nine detailed financial documents," which included data relating to later versions of CICS TS. (*Id.* at 12). IBM also asserts that the new financial data produced with its expert report was produced in response to a request made by Micro Focus after the close of discovery. IBM explains that "[o]n December 21, 2023, after the close of fact discovery, Micro Focus reached out to IBM asking for the first time that IBM provide it with information related to IBM's expenses for CICS® TS." (*Id.* at 14). Following a meet and confer, IBM searched for and disclosed the additional financial documents Micro Focus requested. (*Id.*) As for the late-produced source code, IBM explains that it was producing in hard copy form the same source code made available to Micro Focus during in-person source code reviews earlier in discovery. (*Id.* at 16). And, according to IBM, the new accused functionality that Micro Focus complains about was first discovered during a November 28 deposition, which IBM then included in its supplemental responses to Micro Focus's contention interrogatories due January 15. (*Id.* at n. 1, 11 – 12). IBM claims that Micro Focus had a chance to ask questions about these supplemental interrogatories at the deposition of one of its witnesses but did not. (*Id.* at 12).

      In response to Micro Focus's key assertion that IBM is trying to expand its infringement and damages case to include later undisclosed versions of CICS TS, IBM asserts that "[a]lthough the copyright registrations attached to the First Amended Complaint as Exhibit A reflect the

3

versions of CICS TS in which the components Micro Focus copied were added, IBM's claims have never been limited to those versions." (*Id.* at 10). Indeed, IBM asserts that it "identified numerous detailed financials it produced during discovery," produced technical documents relating to the later versions of CICS TS, and consistently "corrected" Micro Focus's attempts to narrowly define its "asserted works." (*Id.* at 6, 10 – 14; 229 at 5).

On May 3, 2024, this Court conducted a hearing and heard arguments from the parties. Of particular note, IBM clarified that it only intends to use information relating to later versions of CICS TS to prove damages, not infringement. In addition, shortly after the hearing, the Court issued an order staying expert depositions pending the Court's ruling on this motion.

## **DISCUSSION**

Rule 37(c)(1) of the Federal Rules of Civil Procedure states that if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party may not use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1). "The purpose of Rule 37(c) is to prevent the practice of sandbagging an adversary with new evidence." *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 156 (S.D.N.Y. 2012). Untimely disclosures are "substantially justified" when a reasonable person could be satisfied that the "parties could differ as to whether the party was required to comply with the disclosure request, or if there exists a genuine dispute concerning compliance." *AIG Global Asset Management Holdings v. Branch et al.*, No. 04Civ.8803(RMB)(THK), 2005 WL 425494, at *1 (S.D.N.Y. Feb. 18, 2005). Untimely disclosures are "harmless" if there is "an absence of prejudice to the defendant." *Ritchie Risk-Linked Strategies Trading*, 280 F.R.D. at 159.

Ultimately, even when there has been an unjustified, prejudicial violation of Rule 26, the Second Circuit has cautioned against automatic preclusion and, instead, looks to four factors to determine whether preclusion is appropriate. *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 – 299 (2d Cir. 2006). The four factors are: (1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the precluded evidence; (3) the prejudice suffered by the opposing party; and (4) the possibility of a continuance. *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006); *Ritchie Risk-Linked Strategies Trading*, 280 F.R.D. at 157. Importantly, courts have broad discretion to determine the nature of any sanction imposed under Rule 37, and "preclusion of evidence is a harsh remedy" that "should be imposed only in rare situations." *Ritchie Risk-Linked Strategies Trading,* 280 F.R.D. at 156.

### A. Untimeliness

At first, Micro Focus's motion focused on the untimely disclosure of financial documents, source code, and new accused functionality. (ECF No. 211 at 6 – 12, 17 – 18). But Micro Focus now seems to deemphasize this point. For its part, IBM does appear to provide "substantial justifications" for its late production of the specific evidence Micro Focus identified in its motion. It appears that IBM did produce financial documents during fact discovery, including information about the later versions of CICS TS. (ECF No. 217 at 7 – 8, 17). Its supplement of financial documents after the close of discovery responded to a request from Micro Focus for additional documents. (*Id.* at 7 – 8). The seemingly late-produced source code was not "new" but hard copies of what Micro Focus already reviewed. (*Id.* at 16). And the new functionality disclosed in IBM's supplemental interrogatory response did not come to light until a deposition late in discovery. (*Id.* at n. 1, 11 – 12). Thus, if this dispute were only about the

5

untimeliness of these specific documents, the Court would find that IBM provided substantial justifications for its untimeliness in producing them.

But Micro Focus's argument now focuses on a larger disclosure issue – the untimely disclosure of IBM's case theory that relies on later versions of CICS TS as part of its damages. Micro Focus argues that "[r]ather than concede its significantly changed infringement theory and seek leave to amend its claim, IBM instead gaslights Micro Focus, suggesting that all CICS TS versions were always asserted." (ECF No. 222 at 4).[4] According to Micro Focus, IBM was asked repeatedly to disclose the scope of its "asserted works" throughout discovery and consistently identified only versions 2.3 to 5.2. (*See Id.*; 211 at 8 – 9). IBM counters that "[c]onsistent with precedents from courts in this District and Copyright Office practice, IBM named in its First Amended Complaint ("FAC") the registrations in which the copied material first appeared," and "IBM always has made clear that this case is about Micro Focus's use of that copied material in competition with all of the versions of CICS® TS." (ECF No. 217 at 6).

The truth is somewhere in the middle. On the one hand, IBM did produce data during fact discovery about its later versions of CICS TS, including financial data and technical operational documents. (*Id.* at 7 – 8, 13 – 14, 17). Thus, Micro Focus arguably had notice that later versions of CICS TS were somehow relevant here. Yet, IBM was vague (perhaps intentionally) about how these later versions of CICS TS were relevant and, in particular, how these later versions formed part of the basis of its damages claim. To be sure, IBM points to various statements made during discovery about how its claims were not limited to the nine

---

[4] Although Micro Focus refers to IBM's expanded infringement theory, IBM clarified at the May 3 hearing that its infringement theory is limited to Micro Focus's alleged copying of the material in registered versions 2.3 to 5.2 of CICS TS. But because Micro Focus's use of the copied material competes with later versions of CICS TS that incorporate the same copied elements, IBM notes in its sur-reply that these later versions are relevant to its damages. (ECF No. 229 at 8 – 10). Even so, IBM's damages theory still requires it to show that later versions incorporate the allegedly copied elements of the earlier versions.

6

stand-alone versions of CICS TS in the FAC. (*Id.* at 7 – 17). But IBM cannot point to any disclosures or contentions during fact discovery that fairly put Micro Focus on notice that these later versions allegedly incorporated the copied elements of versions 2.3 to 5.2 and thus would be relevant to its damages. And although it appears that Micro Focus noticed that IBM produced data about later versions of CICS TS during discovery, it never directly asked IBM why they were relevant; Micro Focus just seemed to assume they were not.

On balance, the Court believes that IBM should have made the scope of its claim clearer during fact discovery to give Micro Focus sufficient time to develop facts in response. IBM does not provide sufficient justification for failing to make these disclosures during fact discovery. And the Court believes these failures are not "harmless," as Micro Focus did not have the opportunity to cross-examine this evidence fully during fact discovery.

### B. Preclusion under the *Patterson* factors

As noted above, when a party's untimely disclosures cannot be substantially justified or are found to be prejudicial, courts look to four factors to determine whether preclusion or some other sanction is warranted: (1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the precluded evidence; (3) the prejudice suffered by the opposing party; and (4) the possibility of a continuance. *Patterson*, 440 F.3d at 117; *Ritchie Risk*, 280 F.R.D. at 157. Here, the question is whether IBM's late disclosure of its damages theory relating to the later versions of CICS TS should be precluded.

Turning to factor one, as discussed above, IBM has not provided a sufficient justification for its failure to disclose that later versions of CICS TS were relevant to its damages claim. IBM points to language and documents they disclosed that refer to the later versions, but – as explained above – these disclosures were vague at best. Thus, this factor favors Micro Focus.

Factor two, the importance of the evidence, weighs in favor of IBM. The disputed evidence relates to the scope of IBM's damages – specifically how the later versions of CICS TS affect the market value of the copied elements of CICS TS – and thus affects the ultimate amount of money that a jury could award. *See* ECF No. 217 at 23. As IBM notes, "[e]xcluding those documents would be incredibly prejudicial to IBM and unnecessarily hinder its ability to seek proper relief." (*Id.*).

Factor three requires the Court to consider whether Micro Focus has been prejudiced by IBM's belated disclosure. *Patterson*, 440 F.3d at 117. Micro Focus notes that because they lacked the belatedly disclosed information earlier in the case, they had "to depose IBM's witnesses on key issues" with limited revenue data. (ECF No. 211 at 15). Micro Focus adds that IBM's late disclosure deprived them of opportunities to "conduct an investigation into how the data was collected," "depose the persons responsible for the data," "cross examine IBM witnesses using the material," and "incorporate the material into its own experts' analysis." (*Id.* at 17 – 18) (cleaned up). Micro Focus also argues that the expansion of IBM's case to include later versions of CICS TS requires "re-opening fact discovery," "re-depos[ing] fact witnesses," and "prepar[ing] entirely new technical, fair use and damages expert opinions which address the new works." (ECF No. 222 at 5). Although Micro Focus may be overstating the extent to which "entirely new" expert reports will be necessary, the Court agrees that IBM's belated disclosures deprived Micro Focus of a full and fair opportunity to develop and cross-examine the evidence.

But the Court disagrees with Micro Focus that the prejudice suffered cannot be cured with a continuance (under factor four) and additional discovery. (ECF No. 211 at 18 – 19). The "high-stakes nature of this case and the complexity of the issues to be tried" make it appropriate to consider the option of a continuance to allow Micro Focus the opportunity to develop the

8

factual record. *Ritchie Risk*, 280 F.R.D. at 162. As in *Ritchie Risk*, "[w]ith no trial date set yet, this Court sees no reason why a continuance would not be feasible here." *Id.*

On balance, the *Patterson* factors weigh against preclusion of IBM's untimely disclosures. Although IBM's belated disclosures were prejudicial to Micro Focus, there are remedies short of preclusion that can address it. And, as noted above, preclusion of evidence is a harsh remedy that should be imposed only in rare situations. As a result, the Court will order additional fact discovery and any necessary supplementation of expert reports that Micro Focus reasonably requires to respond to IBM's reliance on later versions of CICS TS and the new accused functionality in IBM's 4th supplemental interrogatory response.[5]

\*   \*   \*

Since the parties briefed this motion to strike, the United States Supreme Court issued a decision in *Warner Chappell Music, Inc. v. Nealy*, No. 22-1078, 2024 WL 2061137 (U.S. May 9, 2024). In this opinion, the Court held that a "copyright owner possessing a timely claim is entitled to damages for infringement, no matter when the infringement occurred." *Id.* at \*1. Based on *Warner*, if IBM's claims were timely filed, then it can now recover for damages no matter how long ago the infringement occurred. During a December 7, 2023, hearing, IBM brought the pending *Warner* case to the Court's attention in hopes of getting revenue data from Micro Focus going back to when the alleged infringement occurred. The Court denied IBM's request (given the current state of the law) but noted that if the law changed during the case, the issue could be revisited.

---

[5] Although the Court believes that IBM was substantially justified for its late disclosure of the new accused functionality in its 4th supplemental interrogatory response (see Section A above), the Court nevertheless believes that the timing of the disclosure limited Micro Focus's ability to fully develop the record about it.

As a result of *Warner*, IBM now requests that "discovery be permitted into Micro Focus's financials relating to Micro Focus Enterprise Server and Micro Focus Enterprise Developer starting from the date Micro Focus copied CICS® TS in 2014 to the present."  (ECF No. 234).  In response, Micro Focus raises some concerns about "the feasibility of producing revenue information dating back almost a decade." (ECF No. 236 at 2).  But Micro Focus does not dispute that this data is relevant to damages. Instead, it argues that the Supreme Court may eventually issue a ruling that impacts the viability of IBM's case altogether.  (*Id.* at 1).

Yet, this Court must address discovery based on the current state of the law, and not speculation about how that law might change again.  In light of *Warner*, IBM is now entitled to discovery into Micro Focus's financials relating to Micro Focus Enterprise Server and Micro Focus Enterprise Developer starting from the date Micro Focus allegedly copied CICS® TS in 2014 to the present.  Thus, the parties shall meet and confer to discuss a schedule for production of this discovery, alongside their discussions about the other discovery ordered by this Opinion.  Any concerns raised by Micro Focus about the feasibility of producing revenue information dating to 2014 should be addressed during meet and confers between the parties.  And any resulting disputes should be submitted to the Court promptly.

## CONCLUSION

For the reasons outlined above, Micro Focus's motion is **DENIED**.  Although this Court finds that IBM's disclosures were untimely, the harsh and rare remedy of preclusion is inappropriate.  Instead, as described above, the parties are directed to meet and confer in good faith regarding the added fact discovery – and any necessary supplementation of expert reports – that Micro Focus reasonably requires to respond to IBM's belated disclosures. Those discussions should also address the added discovery that IBM requests related to damages.  The parties must

jointly propose to the Court a schedule for the completion of this added fact and supplemental expert discovery.

By May 31, 2024, the parties should submit a proposed schedule for the Court's review and approval. If the parties cannot agree on a reasonable schedule to complete the additional discovery, or if they cannot agree on the scope of additional fact discovery (and any additional expert discovery that it may require), then the parties are directed to submit these disputes to the Court for prompt resolution.

The Clerk of Court is respectfully requested to close out the gavels on ECF Nos. 204, 205, 209, and 214.[6]

**SO ORDERED.**

DATED:   White Plains, New York
         May 17, 2024

_____
VICTORIA REZNIK
United States Magistrate Judge

---

[6] Separately, the Court will issue an order addressing the parties' sealing requests related to this motion.