# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

IBM CORPORATION,

      Plaintiff,

v.

MICRO FOCUS (US), INC.,

      Defendant.

Case No. 7:22-cv-9910

# DEFENDANT'S RULE 72 OBJECTIONS TO
# MAY 17, 2024 OPINION AND ORDER (ECF NO. 238)

## TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................... 1

II.   PROCEDURAL BACKGROUND.......................................................................... 3

    A.    IBM's Pleadings Specifically Identify the Asserted "Works"................................ 3

    B.    IBM Repeatedly Refuses to Explain Its Liability and Damages Claims ................ 4

    C.    Months After Discovery Closes and Without Explanation, IBM Produces
          Long-Sought Financial Data and Boxes of Printed Source Code........................... 5

    D.    Opposing a Motion to Exclude Untimely Produced Data, IBM Newly Asserts
          Unalleged "Derivative" Works. .............................................................................. 5

    E.    The Order Allows IBM to Newly Assert Copying of Unalleged Works................ 6

III.  LEGAL ARGUMENT............................................................................................. 7

    A.    Allowing an Unrequested Amendment of Claims Constitutes Legal Error .......... 8

        1.    The Order Erred by Permitting IBM to Assert New "Derivative"
              Works Infringement Claims—Without Seeking Leave to Do So.............. 9

        2.    IBM Could Not Show Good Cause for Adding the New Works
              Because It Did Not Act Diligently........................................................... 10

    B.    The Order's *Patterson* Analysis Reflects Clearly Erroneous Findings ............... 12

        1.    An Increased Damages Award Is Not Sufficiently Important to
              Excuse IBM's Untimely Assertion of "Derivative" Works..................... 13

        2.    Extending the Schedule Only Exacerbates the Prejudice Micro Focus
              Has Already Suffered by IBM's Untimely Assertion of New Works. ..... 15

IV.   CONCLUSION...................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*A Star Grp., Inc. v. Manitoba Hydro*,
    621 F. App'x 681 (2d Cir. 2015) ...................................................................... 10

*Accurate Grading Quality Assurance, Inc. v. KGK Jewelry, LLC*,
    No. 12 Civ. 01343 (KPF) (DF), 2014 WL 13113888 (S.D.N.Y. Jan. 10, 2014)............. 10

*Allgaier v. Peterson*,
    No. 13 CV 5112(VB), 2015 WL 5459808 (S.D.N.Y. Aug. 13, 2015) ............................ 10

*Caruso v. Bon Secours Charity Health Sys. Inc.*,
    No. 14 CV 4447 (VB), 2016 WL 8711396 (S.D.N.Y. Aug. 5, 2016),
    *aff'd*, 703 F. App'x 31 (2d Cir. 2017)................................................................ 12

*Codename Enterprises, Inc. v. Fremantlemedia N. Am., Inc.*,
    No. 16 Civ. 1267 (AT) (SN), 2018 WL 3407709 (S.D.N.Y. Jan. 12, 2018) ................... 15

*Design Strategy, Inc. v. Davis*,
    469 F.3d 284 (2d Cir. 2006)................................................................................ 14

*Downey v. Adloox Inc.*,
    No. 16-CV-1689 (JMF), 2018 WL 794592 (S.D.N.Y. Feb. 8, 2018)............................. 15

*Dumbo Moving & Storage, Inc. v. Piece of Cake Moving & Storage LLC*,
    No. 22-cv-5138 (ER), 2023 WL 5352477 (S.D.N.Y. Aug. 21, 2023)............................. 9

*ePlus, Inc. v. Lawson Software, Inc.*,
    700 F.3d 509 (Fed. Cir. 2012)............................................................................. 14

*Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc.*,
    896 F. Supp. 2d 223 (S.D.N.Y. 2012)................................................................... 9

*Ferdman v. CBS Interactive, Inc.*,
    342 F. Supp. 3d 515 (S.D.N.Y. 2018)............................................................ 15, 16

*Fioranelli v. CBS Broadcasting, Inc.*,
    No. 15-CV-952 (VSB), 2019 WL 1059993 (S.D.N.Y. Mar. 6, 2019)....................... 11, 16

*Grant v. Robinson Witherspoon*,
    No. 19-CV-2460 (PGG) (BCM), 2021 WL 12103904 (S.D.N.Y. Mar. 19, 2021).......... 10

*iMedicor, Inc. v. Access Pharms., Inc.*,
    290 F.R.D. 50 (S.D.N.Y. 2013) ......................................................................... 11

*In re Gen. Elec. Co. Securities Litig.*,
    No. 09 Civ.1951 DLC, 2012 WL 2892376 (S.D.N.Y. July 12, 2012) ........................... 11

*In re Gen. Motors LLC Ignition Switch Litig.*,
    No. 14-MC-2543 (JMF), 2016 WL 2766654 (S.D.N.Y. May 12, 2016)........................ 16

*In re World Trade Ctr. Disaster Site Litig.*,
    722 F.3d 483 (2d Cir. 2013)................................................................................... 16

*Kamal v. GER Indus., Inc.*,
    No. 20 CV 5671 (VB), 2023 WL 7184440 (S.D.N.Y. Nov. 1, 2023) ............................ 12

*Koller-Gurgigno v. City of Yonkers*,
    18 CV 98 (VB), 2020 WL 6729182 (S.D.N.Y. Nov. 16, 2020) ...................................... 11

*Mantel v. Microsoft Corp.*,
    No. 16-CV-5277 (AJN), 2018 WL 1602863 (S.D.N.Y. Mar. 29, 2018) ......................... 14

*McCarthy v. Dun & Bradstreet Corp.*,
    482 F.3d 184 (2d Cir. 2007)................................................................................... 11

*MicroStrategy Inc. v. Bus. Objects, S.A.*,
    429 F.3d 1344 (Fed. Cir. 2005)............................................................................... 14

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
    794 F. App'x 951 (Fed. Cir. 2020) .......................................................................... 14

*Palmer Kane LLC v. Scholastic Corp.*,
    No. 12 CV 3890, 2013 WL 709276 (S.D.N.Y. Feb. 27, 2013) ..................................... 9

*Parker v. Columbia Pictures Indus.*,
    204 F.3d 326 (2d Cir. 2000).................................................................................... 8

*Patterson v. Balsamico*,
    440 F.3d 104 (2d Cir. 2006)............................................................................*passim*

*Plunket v. Doyle*,
    No. 99 Civ. 11006(KMW), 2001 WL 175252 (S.D.N.Y. Feb. 22, 2001) ........................ 9

*Ruotolo v. City of N.Y.*,
    514 F.3d 184 (2d Cir. 2008).................................................................................... 16

*Sokol Holdings, Inc. v. BMB Munai, Inc.*,
    No. 05 cv 3749(KMW)(DCF), 2009 WL 3467756 (S.D.N.Y. Oct. 28, 2009) ................ 10

*Spotnana, Inc. v. Am. Talent Agency, Inc.*,
    No. 09 CIV. 3698 LAP, 2010 WL 3341837 (S.D.N.Y. Aug. 17, 2010)........................... 14

*Wu v. Metro-N. Commuter R.R. Commuter R.R. Co.*,
    No. 14CV7015-LTS-FM, 2016 WL 5793971 (S.D.N.Y. Aug. 4, 2016)......................... 15

**Rules**

Fed. R. Civ. P. 15 ........................................................................................................... 12

Fed. R. Civ. P. 15(a) ....................................................................................................... 11

Fed. R. Civ. P. 16(b) ......................................................................................................... 8

Fed. R. Civ. P. 16(b)(4) ................................................................................................... 10

Fed. R. Civ. P. 37 .............................................................................................. 6, 9, 12, 16

Fed. R. Civ. P. 72(a) .......................................................................................................... 7

## I.  INTRODUCTION

Seventeen months after filing suit, eight months after the deadline to amend passed, four months after fact discovery closed, two months after experts served their opening reports, and in the context of opposing a discovery motion, IBM sought to expand its copyright claim to include never-alleged, never-disclosed "derivative" works. And it did so without seeking leave from the Court to amend its claim, sidestepping its burden to show good cause for doing so. The order permitting IBM to add six additional works to the scope of this case without any justification or showing of diligence reflects clear legal error, requiring this Court's correction.

When IBM sued Micro Focus for alleged copyright infringement, it defined the asserted "Works" as nine specific versions of CICS$^{©}$ Transaction Server for z/OS ("CICS TS"). In Exhibit A to its First Amended Complaint, it attached nine separate copyright registrations for those works. During discovery, it identified the same nine versions as asserted "Works," never alleging or even suggesting that other, later CICS TS versions were at issue. For over a year, the parties litigated the nine asserted Works. And after a year of extensive (and expensive) litigation—including written discovery, document productions, discovery disputes over discovery responses and motions to compel, depositions in the U.S. and abroad, and multiple court conferences—fact discovery finally closed.

Months after discovery closed, Micro Focus received—without explanation—financial data unrelated to the asserted "Works." When asked to explain the untimely production, IBM responded that producing such materials with expert reports is "commonplace." Unable to conduct discovery on the newly produced data, Micro Focus moved for its exclusion. IBM then suddenly offered a new explanation for the untimely production—that its case against Micro Focus included "derivative" works never previously alleged or disclosed.

For the first time in the case, IBM asserted that Micro Focus infringed not just the nine specific "Works" (v2.3-v5.2) asserted in its complaint and disclosed during discovery, but five versions (v.5.3-v.62) of CICS Transaction Server as well. IBM did so only after Micro Focus completed discovery into IBM's claims, developed its defenses based on IBM discovery disclosures and witness testimony, and served its expert reports.

This new assertion of works after version 5.2 is no trivial matter bearing just on damages. It requires entirely new analysis of the claims and defenses in this case, and fair use (factor four) in particular. Indeed, the belated assertion of new works follows damaging admissions in deposition testimony conceding that IBM no longer markets or sells the asserted Works.

Although acknowledging that IBM sought to expand the scope of the case, Magistrate Judge Reznik allowed "IBM's reliance on later versions of CICS TS." ECF No. 238 at 9. This Order reflects double error: it granted IBM affirmative relief that it never sought or made the required showing to support, and denied Micro Focus the relief that it *did* seek based on legally and logically flawed findings.

IBM's newly articulated "derivative" claim expanded a simple discovery matter into a substantive dispute as to the scope of the case itself. As the party trying to expand the case to include new "derivative" works, IBM should have moved for leave to amend the pleadings. But it did not do so, and the Order did not so require. Thus, IBM was not required to show good cause, including diligence, before asserting new works in this case. Allowing IBM to sidestep the proper procedure for amending its claim constitutes legal error, reviewed without deference.

Even if reviewed under the *Patterson* framework for untimely discovery disclosures, the Order reflects clearly erroneous findings contrary to law. That "derivative" works may, in theory, impact the "ultimate amount" of a jury award (ECF No. 238 at 8) is not a sufficient basis to

excuse their untimely assertion. Particularly so here, given that IBM's damages model is not based on the market value of its *own* works but rather revenue from the *accused* works.

Moreover, the "high-stakes nature of this case" is precisely why trial should *not* be deferred for still more fact discovery and expert reports. Extending the trial to permit discovery on IBM's unalleged "derivative" works will only exacerbate—not "cure"—the prejudice that Micro Focus now faces. Conducting further fact discovery and supplementing expert reports will not only impose further substantial costs and burdens on Micro Focus, but also delay final adjudication of IBM's claims. It is time for this suit to be resolved—on the "Works" that IBM and its sophisticated counsel chose to assert and clearly identified in November 2022.

Respectfully, the Order should be set aside.

## II. PROCEDURAL BACKGROUND

### A. IBM's Pleadings Specifically Identify the Asserted "Works"

In suing Micro Focus, IBM accused Micro Focus of infringing "copyrights for CICS TS," "including CICS TS Web Services and related components." ECF No. 1 ¶29; ECF No. 39 ¶27. IBM's original and first amended complaints attached "copies of Certificates of Registration … for the Works, including CICS® TS Web Services and related components." ECF No. 1, Ex. A; ECF No. 2, Ex. A. The Certificates covered nine versions and subversions (v2.3 – v5.2) of CICS TS.[1] Throughout its complaints, IBM consistently referred to the nine versions as plural "Works." *See generally* ECF Nos. 1, 39. Thus, as framed by the pleadings, this case involved only CICS TS versions 2.3 through 5.2 of CICS TS; versions 5.3 through 6 were never asserted.

---

[1] The registration certificates identify versions **2.3** (Feb. 18, 2004); **3 1 0** (June 20, 2005); **3.2** (Dec. 3, 2007); **PK45354** (July 28, 2008); **4.1.0** (July 28, 2009); **5.1.0** (Dec. 20, 2012); **4.2.0** (July 15, 2011); **5.1** (July 18, 2013); and **5.2.0** (July 2, 2014). ECF No. 2, Ex. A.

**B.     IBM Repeatedly Refuses to Explain Its Liability and Damages Claims**

Throughout discovery, IBM consistently refused to disclose its damages claim, even in its supplemental interrogatory responses served a month after discovery closed. ECF No. 213-1 at 192-193. IBM also refused to explain its infringement claim. ECF No. 212-5 at 20-21.

Given IBM's refusal to explain its damages and infringement claims, Micro Focus sought confirmation of the Asserted Works at issue before inspecting IBM's source code. To do so, Micro Focus asked IBM: "Please confirm that the above list [of nine CICS TS versions] *represents the totality of the works of which IBM is accusing Micro Focus of copyright infringement* in this case." ECF No. 222-1 (emphasis added). And IBM did so, writing.

IBM also confirms that the IBM works listed in your October 3 e-mail reflects the works IBM has asserted in this case, and these versions will be made available for inspection on October 17-19.

For clarity, we're providing the full list below, which corrects a few transcription errors in your e-mail:
- IBM CICS Transaction Server for z/OS, 5697-E93, Version 2 3
- IBM CICS Transaction Server for z/OS, 5655 M15, Version 3 1 0
- IBM CICS Transaction Server for z/OS 3.x-Post GA P/TFs, 5724-M15, Version PK45354
- IBM CICS Transaction Server for z/OS 5655-M15, Version 3.2
- IBM CICS Transaction Server for z/OS (GA), 5655-S97, Version 4.1.0
- IBM CICS Transaction Server for z/OS, 5655-Y04, Version 5.1.0
- IBM CICS Transaction Server for z/OS, 5655-S97, Version 4.2.0
- IBM CICS Transaction Server for z/OS - 2Q 2013 DTypes, 5655-Y04, Version 5.1
- IBM CICS Transaction Server, 5655-Y04, Version 5.2.0

*Id.* (highlighting added).

Even after discovery closed, IBM reiterated that the "IBM Works asserted in this Litigation" included those specifically identified in the FAC by registration number. Specifically, its *fourth* supplemental interrogatory responses confirmed: "IBM owns valid copyrights in CICS TS (the "IBM Works"). *The registrations for the IBM Works* **asserted in this Litigation**, which are identified in the table below, …." ECF No. 213-1 at 24-25 (emphasis added). The table referenced in the response identified CICS TS versions 2.3 through 5.2—and nothing else. *Id.*

4

In developing its defenses in this case, Micro Focus relied on IBM's pleading allegations and disclosures. It obtained a discovery record, including testimony of IBM deponents, that IBM no longer markets, sells or generally supports the asserted "Works." ECF No. 213-5 at 61:16-84:6. Micro Focus experts relied on IBM deposition testimony relating to the asserted "Works" in developing their opinions. Specifically, expert economist Shirley Webster opined: "[T]here is no currently existing market for the [asserted] CICS TS versions … that could be harmed *because IBM no longer offers licenses to the CICS TS versions related to the asserted Works*." ECF No. 213-11 (Webster Rep.) § 3.1.2; *see also* § 9.2.4 (emphasis added).

### C.    Months After Discovery Closes and Without Explanation, IBM Produces Long-Sought Financial Data and Boxes of Printed Source Code

Faced with damaging testimony on fair use, IBM sought to recreate the factual record through its damages expert. It did so by producing financial data for unasserted works to show an ongoing market for CICS TS. Specifically, two-plus months after discovery closed in December 2023, IBM produced—without any explanation—several excel files with financial data. ECF No. 212-6. One file contained revenue data for unasserted CICS TS versions. ECF No. 213-6. The data was then used by IBM's damages expert to opine: "CICS© TS is still being sold worldwide, … and I understand *the technology allegedly copied by Micro Focus is still present in CICS© TS releases subsequent to versions 3.1 through 5.2.*" ECF No. 213-10 at ¶137 (emphasis added).

### D.    Opposing a Motion to Exclude Untimely Produced Data, IBM Newly Asserts Unalleged "Derivative" Works.

Unable to conduct discovery on IBM's untimely produced data, Micro Focus moved to exclude it under *Patterson*'s four-factored balancing test. ECF No. 211 at 12-19. Micro Focus sought very simple relief: "An order limiting the trial record to evidence tied to the specific Asserted Works … that IBM identified in its pleadings and disclosed before fact discovery closed on December 15, 2023." *Id.* at 5.

At the time, it was not yet evident that IBM's disclosures reflected an attempt to broaden the scope of the case itself. But IBM's opposition soon made that clear, when IBM insisted that its claim covered CICS TS versions post-v.5.2, which it characterized as infringed "derivative" works. *See*, *e.g.*, ECF No. 217 at n.1 ("[I]t is well settled that copying elements of a registered work that appear in a derivative work is itself an infringement of the registered work."); *see also* ECF No. 229 at 8-9 ("[T]hese derivative works are relevant in this litigation . . . because they contain the material that Micro Focus copied . . .").

Following IBM's startling admission that it was trying to assert unalleged "derivative" works, Micro Focus's reply noted that the key issue was no longer a simple matter of addressing untimely produced evidence but rather IBM's attempt to expand the scope of the case itself to assert new CICS TS versions. ECF No. 222 at 10. Micro Focus explained that such an expansion of IBM's claims required leave to amend, which IBM had neither sought nor obtained. *Id*. at 11.

### E.    The Order Allows IBM to Newly Assert Copying of Unalleged Works

After allowing IBM to file a sur-reply and conducting a hearing,[2] Magistrate Judge Reznik issued an Opinion and Order ("Order") allowing IBM to rely on unasserted "derivative" works to support its damages claim. ECF No. 238. The Order failed to address the threshold issue of IBM's failure to seek leave to amend, although noting Micro Focus' position on this point. *Id.* at 6. Instead, it considered *Patterson*'s four factors for addressing discovery failures under Rule 37. *Id.* at 7-9. On the first factor, the Order found that IBM had no valid excuse for failing to timely disclose its assertion of the unalleged "derivative" works.

---

[2] Micro Focus requested a copy of the hearing transcript, but the hearing was not recorded. *See* May 8, 2024 Minute Entry ("The Court is issuing this order to clarify that, due to an error, this [May 3, 2024] conference was not recorded by AT&T Connect.").

> IBM was vague (***perhaps intentionally***) about how these later versions of
> CICS TS were relevant and, in particular, how these later versions formed
> part of the basis of its damages claim. … IBM cannot point to any
> disclosures or contentions during fact discovery that fairly put Micro Focus
> on notice that these later versions allegedly incorporated the copied
> elements of versions 2.3 to 5.2 and thus would be relevant to its damages.
>
> …
>
> IBM does not provide sufficient justification for failing to make these
> disclosures during fact discovery. And the Court believes these failures are
> not "harmless," as Micro Focus did not have the opportunity to cross-
> examine this evidence fully during fact discovery.

ECF No. 238 at 6-7 (emphasis added).

Despite finding no good excuse for IBM's "untimely disclosures," the Order ultimately allowed IBM to "rel[y] on later versions of CICS TS." ECF No. 238 at 9. Applying *Patterson*'s four-factored test, the Order found that two of the four factors favored permitting IBM to do so.

First, the Order found the unalleged "derivative" works to be sufficiently important to allow their untimely assertion because they "relate[] to the scope of IBM's damages – specifically how the later versions of CICS TS affect the market value of the copied elements of CICS TS – and thus affects the ultimate amount of money that a jury could award." *Id.* at 8. Second, noting "the 'high-stakes nature of this case," the Order found that the prejudice to Micro Focus could be "cured" by extending the schedule for "additional discovery." *Id.* at 8-9. These findings reflect clear legal error. Moreover, the Order failed to address other significant factors, such as the impact of delayed adjudication of IBM's claims.

## III.   LEGAL ARGUMENT

A court may modify or set aside a magistrate judge's non-dispositive order if it reflects "clearly erroneous" findings "contrary to law." FED. R. CIV. P. 72(a). As discussed below, the Order reflects clear legal error and should be set aside in its entirety.

### A.    Allowing an Unrequested Amendment of Claims Constitutes Legal Error

When IBM filed its complaint in November 2022, it could have included CICS TS versions 5.3 through 6.2 in the asserted "Works." As Micro Focus pointed out during the hearing (and IBM counsel did not dispute), the unasserted CICS TS versions existed at the time IBM filed suit, as evidenced by their registration certificates.[3] Notably, though, IBM's original and amended complaints did not identify the later versions as asserted "Works." Indeed, it has *still* never credibly explained why it failed to do so. Before being allowed to assert new works in this case, IBM should have been required to obtain leave to do so.

Micro Focus emphasized this point—thrice—in its reply brief:

> [A]t this point the salient issue is not whether IBM should be barred from presenting untimely produced information, but whether it should be allowed to assert "derivative" works never pleaded, never disclosed, and never litigated in this case. On this question, the burden should be on IBM, not Micro Focus, to show good cause for radically changing the scope of the case at this late hour.

> \* \* \*

> [N]ow that IBM has conceded that it is trying to expand the scope of this claim, the issue is no longer a question of what *evidence* IBM will be permitted to offer at trial, but what *claims* it will be permitted to present a jury. And on this issue, Rule 16(b) places the burden squarely on IBM. *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000).

> \* \* \*

> If IBM wanted to expand this case to include new "derivative" works, there was a process for doing so—*seeking leave from the Court and showing good cause for amending its claim*. Instead, IBM tried to shoehorn a new liability theory into the case through an expert report and opposition brief. This disregard for established procedural rules should not be allowed. Indeed, doing so would effectively permit IBM to circumvent the good-cause requirement of Rule 16(b) for amending claims after the deadline to do so.

---

[3]  IBM did not dispute that the later CICS TS versions existed and were registered at the time it filed suit. *See* ECF No. 229 at 10 ("IBM has numerous registrations for subsequent versions of CICS® TS, all of which are recorded in the Copyright Office's publicly available catalog").

ECF No. 222 at 6, 10, 11 (emphasis added). Yet the Order did not address IBM's failure to seek leave to amend, instead analyzing the dispute under Rule 37 discovery case law. By absolving IBM of its burden to show good cause for expanding the case to include "derivative" works not alleged in its complaint, the Order committed clear legal error that should be reviewed de novo.

### 1.    The Order Erred by Permitting IBM to Assert New "Derivative" Works Infringement Claims—Without Seeking Leave to Do So

To state a claim for copyright infringement, a plaintiff must allege, among other things, "which **_specific_** original works are the subject of the copyright claim" and "by what acts during what time the defendant infringed the copyright." _Dumbo Moving & Storage, Inc. v. Piece of Cake Moving & Storage LLC_, No. 22-cv-5138 (ER), 2023 WL 5352477, at *6 (S.D.N.Y. Aug. 21, 2023) (emphasis added); _see also Plunket v. Doyle_, No. 99 Civ. 11006(KMW), 2001 WL 175252, at *4 (S.D.N.Y. Feb. 22, 2001) ("Plaintiff provides … copyright registration numbers for nine of these works, but contends in her Complaint that her copyright claims are not limited to these works. As a result, plaintiff has not provided a list of the works potentially at issue in this case ….") (citations omitted); _Palmer Kane LLC v. Scholastic Corp._, No. 12 CV 3890, 2013 WL 709276, at *3 (S.D.N.Y. Feb. 27, 2013) (finding non-exhaustive list of works asserted in complaint "fails to specify which works are at issue").

It is undisputed that IBM did not identify the newly asserted "derivative" works in its pleadings. If IBM wanted to add new CICS TS versions to this case, then the proper process for doing so was seeking leave to amend, not smuggling newer CICS TS versions into the case through an expert's damages report or discovery brief. _See Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc._, 896 F. Supp. 2d 223, 235 (S.D.N.Y. 2012) (rejecting attempt "to add a completely new theory of copyright infringement to the case" in summary judgment opposition

brief) (emphasis added); *see also A Star Grp., Inc. v. Manitoba Hydro*, 621 F. App'x 681, 683 (2d Cir. 2015) ("[A] party may not amend its pleadings through statements in its briefs.").

## 2. IBM Could Not Show Good Cause for Adding the New Works Because It Did Not Act Diligently

The deadline for IBM to amend its pleadings passed eight months ago in August 2023. *See* ECF No. 104 at 1. Accordingly, IBM would need to demonstrate under Rule 16(b)(4) that "despite its having exercised diligence, the applicable deadline set in the court's scheduling order could not reasonably have been met.'" *Grant v. Robinson Witherspoon*, No. 19-CV-2460 (PGG) (BCM), 2021 WL 12103904, at *5 (S.D.N.Y. Mar. 19, 2021) (quoting *Sokol Holdings, Inc. v. BMB Munai, Inc.*, No. 05 cv 3749(KMW)(DCF), 2009 WL 3467756, at *2 (S.D.N.Y. Oct. 28, 2009)) (alteration in original). Importantly, it is IBM's burden to establish diligence. *See Allgaier v. Peterson*, No. 13 CV 5112(VB), 2015 WL 5459808, at *5 (S.D.N.Y. Aug. 13, 2015). "Examples of a party's failure to act with sufficient diligence include basing a proposed amendment on information that the party knew, or should have known, in advance of the deadline." *Accurate Grading Quality Assurance, Inc. v. KGK Jewelry, LLC*, No. 12 Civ. 01343 (KPF) (DF), 2014 WL 13113888, at *3 (S.D.N.Y. Jan. 10, 2014).

Procedurally, IBM has not moved for leave to amend and thus could not have satisfied its burden to show diligence. Indeed, IBM has not been diligent even in trying to show diligence, which this Court has found to be dispositive. *See Allgaier*, 2015 WL 5459808, at *5 (denying leave to amend where "plaintiff fails to explain why he could not have brought this claim earlier. As noted above, it is plaintiff's burden to establish diligence").

Substantively, the additional CICS TS versions IBM would assert now existed and were registered when IBM first filed suit, long before the deadline to amend passed. IBM's insistence that these works were somehow "always" part of the case—though unalleged—actually proves

10

its lack of diligence in asserting them. Indeed, the argument suggests a bait-and-switch strategy "indicative of bad faith." *In re Gen. Elec. Co. Securities Litig.*, No. 09 Civ.1951 DLC, 2012 WL 2892376, at *5 (S.D.N.Y. July 12, 2012) (denying leave to amend where plaintiff "made a tactical decision" to "remain silent on the prospect of a motion for leave to amend" before "alter[ing] substantially its legal theory").

IBM has no excuse for failing to assert additional works (derivative or otherwise) by the amendment deadline, and its lack of diligence should preclude any attempt to amend now. *See Fioranelli v. CBS Broadcasting, Inc.*, No. 15-CV-952 (VSB), 2019 WL 1059993, at *4 (S.D.N.Y. Mar. 6, 2019) ("Plaintiff cannot demonstrate good cause for belatedly seeking to add the 2004 copyright registration to his complaint."). *See also iMedicor, Inc. v. Access Pharms., Inc.*, 290 F.R.D. 50, 53 (S.D.N.Y. 2013) ("[T]he Court is unpersuaded that any discovery was needed to bring these claims. … [E]ach claim arises out of the same facts upon which plaintiff relies . . .."). As such, IBM cannot show any good cause for its untimely assertion of the new works.

Even under the lenient Rule 15(a) standard,[4] leave would be inappropriate. To start, as detailed further below, Micro Focus has suffered and will continue to suffer unfair prejudice due to IBM's conduct. "An amendment causes undue prejudice where it would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" *In re Gen. Elec. Co.*, 2012 WL 2892376, at *4 (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).

---

[4] Under Rule 15(a), "courts have 'discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *Koller-Gurgigno*, 2020 WL 6729182, at *2 (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)).

The record here is replete with evidence that amending the claims now would require extensive discovery and delay. Indeed, the Order correctly recognized that "IBM's belated disclosures deprived Micro Focus of a full and fair opportunity to develop and cross-examine the evidence." ECF No. 238 at 8. And presently, the parties are briefing a new dispute regarding the scope and manner of the additional discovery permitted by the Order. ECF No. 238 at 11. The prejudice to Micro Focus is substantial and immediate, although a "court may deny leave to amend for lack of diligence even if amendment would not prejudice the non-movant." *Koller-Gurgigno v. City of Yonkers*, No. 18 CV 98 (VB), 2020 WL 6729182, at *2 (S.D.N.Y. Nov. 16, 2020).

Under Rule 15, courts can also consider a movant's bad faith, which is difficult to ignore here. *See Kamal v. GER Indus., Inc.*, No. 20 CV 5671 (VB), 2023 WL 7184440, at *3 (S.D.N.Y. Nov. 1, 2023) ("This reversal in position at a late stage in the proceedings when convenient for defendants' legal theory is indicative of bad faith."). As discussed above, the impetus for IBM's untimely assertion of unalleged "derivative" works is neutralizing damaging testimony regarding Micro Focus's fair use defense and not, as IBM has suggested, to show the "market value" of its "Works." Indeed, the unasserted Works are irrelevant to its damages theory predicated on revenue for the *accused* works, not the commercial value of the *asserted* Works.

## B.    The Order's *Patterson* Analysis Reflects Clearly Erroneous Findings

Even under *Patterson*'s four-factored test,[5] the Order reflects clearly erroneous findings contrary to both fact and law. The Order correctly found that IBM failed to justify its untimely

---

[5] A court considering exclusion of untimely disclosures must consider four factors: (1) any explanation for failing to comply with a disclosure requirement; (2) the importance of the evidence; (3) prejudice caused by the late disclosure; and (4) if such prejudice can be addressed by adjusting the case schedule. *See Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006); *Caruso v. Bon Secours Charity Health Sys. Inc.*, No. 14 CV 4447 (VB), 2016 WL 8711396, at *8 (S.D.N.Y. Aug. 5, 2016), *aff'd*, 703 F. App'x 31 (2d Cir. 2017) (excluding expert testimony under Rule 37).

assertion of "derivative" works (factor one) and that such failure prejudiced Micro Focus (factor three). ECF No. 238 at 8. But it erred in finding the untimely assertion of "derivative" works sufficiently important to IBM's damages claim in this "high-stakes" case that it should be permitted and, further, that the resulting prejudice to Micro Focus could be cured with a trial continuance. Even without the untimely assertion, IBM has and will seek hundreds of millions of dollars in damages if it reaches trial. And far from minimizing prejudice to Micro Focus, the "added fact discovery" and "supplementation of expert reports" (*id.* at 10) impose still more costs and burdens on Micro Focus and further delays adjudication of IBM's claims.

### 1.    An Increased Damages Award Is Not Sufficiently Important to Excuse IBM's Untimely Assertion of "Derivative" Works

Seeking to minimize the significance of its untimely assertion of "derivative" works, IBM insists that the newly asserted CICS TS versions are relevant only to damages. And the Order appears to credit that assertion. ECF No. 238 at 4 ("IBM clarified that it only intends to use information relating to later versions of CICS TS to prove damages, not infringement.").

The Order deemed the unasserted Works sufficiently important to allow their untimely assertion. Specifically, the Order found that the "derivative" works theory "relates to the scope of IBM's damages – specifically how the later versions of CICS TS affect the market value of the copied elements of CICS TS – and thus affects the ultimate amount of money that a jury could award." *Id.* at 8.

It is simply not true that the works are relevant only to damages. IBM cannot seek damages on works on that are not infringed—there would be no legal basis for doing so. Worse, IBM's slippery disavowal of the expanded scope of its infringement claims is designed to thwart the discovery that Micro Focus needs to defend against IBM's newly expanded claims, further compounding the prejudice of the untimely assertion.

But even if the untimely asserted "derivative" works were "essential" to IBM's damages claim (and they are not), IBM should still be precluded from relying on the unalleged versions in this case. *Design Strategy, Inc. v. Davis,* 469 F.3d 284, 296-97 (2d Cir. 2006) (affirming exclusion of evidence even though "essential" to plaintiff's lost profits claim where other *Patterson* factors favored exclusion). Indeed, a court may exclude evidence even if it forecloses "***any*** recovery as a result" where disclosure obligations are disregarded, as here. *Spotnana, Inc. v. Am. Talent Agency, Inc*., No. 09 CIV. 3698 LAP, 2010 WL 3341837, at \*2 (S.D.N.Y. Aug. 17, 2010) (emphasis added).[6]

Even if the untimely asserted "derivative" works are "important [to IBM's case], it would be awarding gamesmanship and a failure to follow the rules if the Court allowed the evidence into the record." *Mantel v. Microsoft Corp*., No. 16-CV-5277 (AJN), 2018 WL 1602863, at \*4 (S.D.N.Y. Mar. 29, 2018). The "high-stakes nature of this case" and its complexity (ECF No. 238 at 8) are simply not valid bases to excuse IBM's untimely assertion of derivative "works." Indeed, given the "high-stakes" in this case, IBM and its sophisticated counsel could have—and should have—asserted any relevant works at the outset of the case, and not after discovery closed and experts served their opening reports.

---

[6] *See also MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 794 F. App'x 951, 952–53 (Fed. Cir. 2020) (affirming the exclusion of damages theories that "leave the plaintiff with no damages case to present at trial"); *ePlus, Inc. v. Lawson Software, Inc*., 700 F.3d 509, 522-523 (Fed. Cir. 2012) (affirming exclusion of plaintiff's damages expert and "ruling that it could not otherwise present any evidence of damages to the jury"); *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1357 (Fed. Cir. 2005) (finding that although exclusion order "admittedly left [plaintiff] without evidence of damages," that factor alone could "not tip the scale in favor of [plaintiff], particularly where [plaintiff] alone is to blame for creating this situation").

14

**2.    Extending the Schedule Only Exacerbates the Prejudice Micro Focus Has Already Suffered by IBM's Untimely Assertion of New Works.**

In addressing *Patterson* factor four, the Order concluded that the prejudice to Micro Focus caused by IBM's untimely assertion of "derivative" works can be cured by extending the schedule to allow for additional fact discovery. ECF No. 238 at 8-9. This finding reflects faulty reasoning. Far from obviating prejudice to Micro Focus, requiring still further expensive fact and expert discovery, and delaying a resolution through summary judgment or trial, only exacerbates the significant burden this litigation has already imposed on Micro Focus. By extending the schedule for additional discovery to "cure" the prejudice Micro Focus faces, the Order flipped the *Patterson* prejudice analysis on its head.

Fact discovery closed over five months ago; this "strongly" counseled against extending the schedule to permit IBM's untimely assertions of new works. *Wu v. Metro-N. Commuter R.R. Commuter R.R. Co*., No. 14CV7015-LTS-FM, 2016 WL 5793971, at *9 (S.D.N.Y. Aug. 4, 2016) (finding "close of discovery counsels strongly against the granting of a continuance"); *Downey v. Adloox Inc*., No. 16-CV-1689 (JMF), 2018 WL 794592, at *2 (S.D.N.Y. Feb. 8, 2018) (finding *Patterson* factors favored preclusion where "fact discovery ha[d] been closed for almost three months"). Yet the Order did not heed such "strong[] counsel." Instead, it reopened fact discovery on the newly asserted "derivative" works.

When untimely disclosures "would require re-opening fact discovery … scheduling new depositions or allowing for additional document production," such factors making a continuance "inappropriate and against the interests of judicial economy." *Codename Enters., Inc. v. Fremantlemedia N. Am., Inc.*, No. 16 Civ. 1267 (AT) (SN), 2018 WL 3407709, at *3 (S.D.N.Y. Jan. 12, 2018); *see also Ferdman v. CBS Interactive, Inc*., 342 F. Supp. 3d 515, 528 (S.D.N.Y. 2018) (noting untimely disclosures would "require Defendants to conduct further discovery" in

excluding evidence under Rule 37). Far from supporting a continuance, the need to reopen discovery made the Order's extension of the schedule "inappropriate."

The Order further disregards that extending the schedule to address new works will not only "'require [Micro Focus] to expend significant additional resources to conduct discovery and prepare for trial' [but also] 'significantly delay the resolution of the dispute.'" *Fioranelli*, 2019 WL 1059993, at *5 (quoting *Ruotolo v. City of N.Y.*, 514 F.3d 184, 192 (2d Cir. 2008)). Indeed, but for IBM's untimely assertion of new works, fact and expert discovery would now be closed and summary judgment motions underway. The Order neglects the significant non-monetary prejudice from delayed adjudication of IBM's claims in this lawsuit.

A continuance to reopen fact discovery would not only delay a final case resolution but disproportionately burden Micro Focus with "additional expenses … difficult to quantify." *Ferdman*, 342 F. Supp. 3d at 529. Indeed, Micro Focus will be forced to not only "conduct further discovery," but reassess its litigation strategy to address IBM's untimely disclosures. *Id.* (noting untimely disclosures may require defendants to "adopt a very different litigation strategy"). Far from ameliorating the potential prejudice Micro Focus faces, a continuance will exacerbate the prejudice it now confronts—and give IBM a do-over on its case.

The Order notes that this is a "high-stakes" case. ECF No. 238 at 8. Indeed, it is. But "deadlines matter – and they matter especially strongly in litigation of this size and complexity." *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 (JMF), 2016 WL 2766654, at *2 (S.D.N.Y. May 12, 2016) (citing *In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d 483, 487 (2d Cir. 2013)). IBM elected to ignore the fact discovery deadline—rewarding it with a continuance was error.

## IV.    CONCLUSION

Without any motion for leave to amend filed or good cause shown, the Order allowed IBM to expand this case to include unalleged "derivative" works asserted after discovery closed and after experts served their initial reports. The Order reflects clear error and should be vacated. This case should proceed to trial on the specific Works that IBM alleged in the pleadings and disclosed in discovery, and the parties then litigated for over a year.

May 31, 2024                                          Respectfully submitted,

                                                     By: /s/ *Timothy J. Carroll*

                                                     Timothy J. Carroll
                                                     ORRICK, HERRINGTON & SUTCLIFFE LLP
                                                     353 N. Clark Street, Suite 3600
                                                     Chicago, IL 60654
                                                     Tel: (312) 924 9800
                                                     Fax: (312) 924 9899
                                                     tim.carroll@orrick.com

                                                     Annette L. Hurst (*pro hac vice*)
                                                     ORRICK, HERRINGTON & SUTCLIFFE LLP
                                                     The Orrick Building
                                                     405 Howard Street
                                                     San Francisco, CA 94105-2669
                                                     Telephone: (415) 773-5700
                                                     wahurst@orrick.com

                                                     Alyssa Caridis (*pro hac vice*)
                                                     Laura A. Wytsma (*pro hac vice*)
                                                     Geoffrey Moss (*pro hac vice*)
                                                     David C. Jonas (*pro hac vice*)
                                                     ORRICK, HERRINGTON & SUTCLIFFE LLP
                                                     355 S. Grand Ave., Ste. 2700
                                                     Los Angeles, CA 90071
                                                     Tel.: (213) 629-2020
                                                     acaridis@orrick.com
                                                     lawytsma@orrick.com
                                                     gmoss@orrick.com
                                                     djonas@orrick.com

                                                     ***Attorneys for Defendant***
                                                     ***Micro Focus (US), Inc.***

17